

F I L E D

APR 1 3 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

E.I. DU PONT DE NEMOURS
AND COMPLANY,

    Plaintiff,

v.                        Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant Kolon Industries, Inc.'s (Kolon) CONSOLIDATED MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFF E.I. du PONT de NEMOURS AND COMPANY AND FROM THIRD PARTY HUNG HAN ("HARRY") YANG (Docket No. 114), and on Kolon's Supplement thereto (Attachment 1 to Docket No. 131).

At the Court's instruction, the documents at issue have been submitted for in camera review. The motion is addressed to seven documents, six of which were emails sent by counsel for the Plaintiff (DuPont) forwarding various attached documents to federal law enforcement officers and an Assistant United States Attorney, all of whom were investigating the theft of DuPont trade secrets and confidential information by a former DuPont employee, Michael Mitchell, allegedly acting on behalf of Kolon. For

1

the reasons set forth below, the Motion to Compel (Docket No. 114) will be denied in part and granted in part.

## BACKGROUND

DuPont filed a Complaint against Kolon, alleging trade secret misappropriation, theft of confidential business information, conspiracy, and other business torts. In sum, as noted in a previous memorandum opinion, "DuPont alleges that Kolon 'used DuPont's confidential information and trade secrets [about DuPont's KEVLAR product] to compete with DuPont . . . [and] to improve its process for producing aramid fiber, with a resulting increase in range of products, production, and quality.'" E.I. Dupont De Nemours & Co. v. Kolon Indus., 2009 U.S. Dist. LEXIS 76795, at *7 (E.D. Va. Aug. 27, 2009). Id.

DuPont's allegations against Kolon stem largely from the activities of Michael Mitchell, a former DuPont employee who allegedly ferried trade secrets from DuPont to Kolon at Kolon's invitation. Mitchell recently pled guilty to a two-count criminal information charging him with trade secret theft in violation of 18 U.S.C. § 1832, and obstruction of justice in violation of 18 U.S.C. § 1512(c). See United States v. Mitchell, Case No. 3:09CR425 (Docket No. 7) (E.D. Va. Dec. 15, 2009).

According to the Statement of Facts accompanying Mitchell's guilty plea, id. (Docket No. 8), Mitchell began communicating with Kolon in early 2006 (while still employed by DuPont; DuPont fired him shortly thereafter), met with Kolon in Korea in March 2007, signed a consulting agreement with Kolon in April 2007, and emailed Kolon a document that constituted a DuPont trade secret on September 5, 2007. On March 12, 2008, federal agents executed a search warrant on Mitchell's residence. "Following the execution of the search warrant, Mitchell agreed to become a cooperator for the government during its ongoing investigation of Kolon." Id. ¶ 9.

Between early 2006 and August 2008, DuPont alleges that Mitchell provided Kolon with various trade secrets and confidential business information, the full extent of which DuPont has sought to determine in discovery. During discovery, Kolon produced approximately 4,500 DuPont documents (including emails) that it had secured from Mitchell during the period in question.

As has become evident during discovery, Kolon defends against the above allegations by contending, among other things, that DuPont failed adequately to protect its trade secrets, which would invalidate DuPont's trade secret misappropriation claim under the Virginia Uniform Trade

3

Secrets Act (VUTSA), Va. Code § 59.1-336 et seq., alleged in Count I of the Complaint. However, Kolon's theory of defense extends well beyond DuPont's alleged failure to maintain the secrecy of its confidential information. Kolon also alleges that DuPont actively transferred documents to Mitchell, leading Mitchell and Kolon to believe that the documents were trade secrets, when, in fact, these documents were merely bait to ensnare Kolon in the present litigation. Kolon Memo. at 2. According to Kolon, this conduct was undertaken by DuPont to assist the government in its investigation of Mitchell and Kolon for trade secret theft. Kolon notes, as circumstantial evidence to support this theory, that the government's criminal case was commenced in response to DuPont's complaints about Mitchell's conduct. See Mitchell, Statement of Facts ¶ 6; see also Kolon Memo. Exh. C, Letter to Special Agent Jereski (indicating that DuPont began informing federal agents of its suspicions about Mitchell at some point before June 1, 2007).[1]

Pursuant to this line of reasoning, Kolon seeks production of the seven documents at issue and all

---

[1]    However, Kolon has identified no evidence to suggest that Mitchell's visit to Kolon's office in Korea in March 2007 was in any way precipitated by DuPont enticing Mitchell to divulge its trade secrets.

documents concerning communications between DuPont and law enforcement agents during the course of the criminal investigation. It appears that this investigation involved, and perhaps required, collaboration between DuPont and the law enforcement agencies that conducted the investigation into Mitchell and Kolon. While DuPont has produced a number of its communications with the government, it has refused to produce, on the ground of work product protection, six emails (hereinafter "the Government Emails")[2] sent by DuPont to various government agents.

Additionally, Kolon seeks production of an entry from the journal of Harry Yang, a retired DuPont employee, who cooperated with the government investigation of Mitchell and Kolon. Yang, who is represented by counsel for DuPont in this action, kept a journal (hereinafter "the Yang Journal") in which he recorded information about his involvement in DuPont's investigation of Mitchell and Kolon. The majority of the Yang Journal has been produced,

---

[2]     This includes the emails and the Yang Journal entry identified in the original motion, filed February 5, 2010, and the additional emails identified in Kolon's Supplemental Memorandum, filed February 25, 2010 that remain in dispute. Although Kolon has identified twelve document numbers for which it seeks production of the corresponding documents, several of the emails are duplicates, such that only seven of the twelve requested emails embody substantively distinct information.

but Kolon seeks production of an entry[3] from December 8, 2008, for which DuPont has claimed work product privilege, because the "entry references a visit and discussion that Michael Clarke, a DuPont in-house attorney, had with Dr. Yang on that date about anticipated civil litigation." Id.

As to both the Government Emails and the Yang Journal, Kolon asserts that DuPont's claims of work product protection are improper for two reasons. First, contends Kolon, DuPont's "communications with the government, undertaken to incite, support and implement these operations designed to ensnare Kolon . . . are not entitled to work product protection." Kolon Memo. at 2-3. Second, even if the documents were covered by the work product protection, Kolon argues that DuPont waived work product protection by disclosing its work product about Mitchell to the government, and its litigation plans to Yang, respectively. DuPont, on the other hand, contends that these limited disclosures to non-adversaries, while DuPont maintained a reasonable expectation of nondisclosure, did not waive the privilege.

---

[3]     Although Kolon made some arguments, on the conference call of February 2, 2010, for production of Yang's computer, Kolon does not seek production of Yang's computer in the present motion, nor is the computer even mentioned in Kolon's briefs.

6

## DISCUSSION

### A. Applicable Law

The work product privilege limits discovery of documents prepared in anticipation of litigation. The application of the work product privilege follows the foundational Supreme Court decision in Hickman v. Taylor, 329 U.S. 495 (1947), as codified in Fed. R. Civ. P. 26(b)(3), and further explained in National Union Fire Insurance Co. v. Murray Sheet Metal Co.:

> Proper application of the work product rule requires recognition and accommodation of two competing policies. On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." On the other hand, our adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client.

967 F.2d 980, 983 (4th Cir. 1992) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)).

It is the burden of the party asserting work product privilege to show that the privilege applies, and to meet this burden, the party asserting privilege must show, "as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and, (2) was prepared in anticipation of litigation."

7

Rambus, Inc. v. Infineon Techs. AG, 220 F.R.D. 264, 272 (E.D. Va. 2004) (citing Hickman, 329 U.S. at 495; In re Grand Jury Proceedings, 102 F.3d 748, 750 (4th Cir. 1996)).

The Court recently has addressed the standard established by National Union and other Fourth Circuit decisions that govern the meaning of "anticipation of litigation." In RLI Insurance Co. v. Conseco, Inc., documents created by or at the direction of lawyers "in the 'ordinary course of business'" were distinguished from documents created in anticipation of litigation. 477 F. Supp. 2d 741, 746 (E.D. Va. 2007) (quoting Sandberg v. Va. Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992)). Unless documents are created "'because of' the prospect of litigation," id. (quoting National Union, 967 F.2d at 984), work product protection does not apply. Id. at 747. The realistic likelihood of litigation, even if the litigation is apt to occur well into the future, must be shown if the protection is to apply. And, a document that would have been developed anyway, even if the litigation had not been anticipated, is not protected from disclosure. Id.

Thus, to show that a document was produced "because of" litigation, the party asserting the protection must show that: (1) the party faces an actual claim, or a

8

potential claim that reasonably could result in litigation,[4] and (2) "the work product 'would not have been prepared in substantially similar form but for the prospect of that litigation.'" Id. at 748 (citations omitted). The party seeking protection must make this showing "'with a specific demonstration of facts supporting the requested protection,' preferably through affidavits from knowledgeable persons." Id. (quoting Suggs v. Whitaker, 152 F.R.D. 501, 505 (M.D.N.C. 1993)).

However, even if work product protection applies, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." United States v. Nobles, 422 U.S. 225, 239 (1975). Waiver may occur through the disclosing party's "testimonial use" (id.) of the privileged material. Testimonial use includes not only use of the material at trial or deposition, but has also been construed to include disclosure to a governmental entity that was in a position adverse to the disclosing party at the time of the disclosure. See In re Martin Marietta Corp., 856 F.2d 619, 625 (4th Cir. 1988) (finding "that disclosure . . . to the

---

[4]     It makes no difference that the anticipated litigation is expected to occur well into the future. Indeed, it is not unusual that lawyers start to work on defending or preparing for anticipated litigation long before the litigation actually occurs. The key is whether litigation, no matter how distant, reasonably can be expected to occur.

9

federal government, the United States Attorney and the DOD, when the government and [the discloser] were adversaries constitutes testimonial use" that waived the privilege). But, when privileged material is shared with a third party who is an ally of the discloser, one who has "common interests" with the disclosing party, such disclosure is not considered "testimonial," and does not waive the work product privilege. See, e.g., In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981) ("Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver."); see also United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (finding common interests between the government and a competitor of AT&T, each of whom were separately prosecuting antitrust claims).

Kolon cites a line of cases from district courts in the Second Circuit in which work product protection was found to have been waived by a plaintiff's "voluntary submission of material to a government agency to incite it to attack the informant's adversary." Info. Res. v. Dun & Bradstreet Corp., 999 F. Supp. 591, 593 (S.D.N.Y. 1998); see also Three Crown Ltd. P'ship v. Salomon Bros., 1993 U.S. Dist. LEXIS 9995, at *6 (S.D.N.Y. July 21, 1993)

("[T]he Court will allow liberal discovery of statements made or documents submitted to a governmental agency *prior to the initiation of an investigation of any defendant* in this litigation concerning the subject matter of this litigation.") (emphasis added). However, later cases in that same district have differentiated "offensive use" (as Kolon characterizes it) of privileged materials to *initiate* an action, from use of privileged materials to assist with an *already initiated* action, finding the latter usage not to waive the privilege. See, e.g., In re Visa Check/ MasterMoney Antitrust Litig., 190 F.R.D. 309, 315 n.4 (E.D.N.Y. 2000) (distinguishing Information Resources, in which no government agency had committed to join its interest with that of the discloser at the time of the disclosure, from Visa, in which the government and private plaintiff already had common antitrust concerns at the time of the disclosure), *abrogated on other grounds by* In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006).

The central concern in determining whether disclosure to a nonparty (governmental or otherwise) waives work product protection was summed up concisely by In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981): "to effect a forfeiture of work product protection by waiver, disclosure

must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." Doe thus established reasonableness of the disclosing party's expectation of confidentiality as the touchstone for determining whether work product privilege was waived.

**B. Whether the Disclosed Material is Work Product**

Kolon does not dispute that all of the Government Emails, and attachments thereto, were prepared by, or at the direction of, attorneys for DuPont. Rather, Kolon argues that the work product privilege does not apply to the Government Emails because "there is no reason to believe that [they were] prepared in anticipation of litigation." Kolon Memo. at 10. Kolon contends that DuPont was not preparing legal theories for its own lawsuit, but instead was instigating the government to proceed against Mitchell in a "sting" operation that would also ensnare Kolon, thereby facilitating the present action.

The descriptions of the Government Emails in DuPont's privilege logs consist mostly of blanket statements that the emails contained information prepared, by (or at the direction of) a lawyer, in anticipation of litigation. DuPont did not describe what "litigation" was anticipated;

it was unclear whether DuPont referred to the present action against Kolon, or to the criminal charges against Mitchell, or to some other litigation. Therefore, DuPont was directed, by Order entered February 25, 2010 (Docket No. 130) to submit the documents for *in camera* review, and to file "a memorandum that explains, for each email, the nature of the privilege claimed, and why DuPont considers the substance of the email and/or the attachments thereto to have been developed in anticipation of litigation, or to be otherwise privileged." The documents were submitted and reviewed *in camera*, and the issue of whether work product protection shields these documents from review has been fully briefed. DuPont has also submitted an affidavit from in-house attorney Michael Clarke containing factual support for DuPont's assertions of privilege, as recommended in RLI Insurance, 477 F. Supp. 2d at 748.

DuPont avers that it "anticipated litigation by late May of 2007." The Court interprets the phrase "anticipated litigation," as used by DuPont, to be anticipated civil action against Kolon and/or Mitchell. DuPont assertedly did not learn that Mitchell had begun working for Kolon until late April or early May 2007. Shortly thereafter, DuPont reports learning that Mitchell may have taken DuPont documents with him when he left, and that Kolon was

recruiting former DuPont employees. On May 21, 2007, DuPont "engaged" the law firm that now represents it in this action. DuPont reports that the government investigation began immediately thereupon in May 2007, and that DuPont delayed filing the present action in deference to this investigation.

Kolon, after reviewing the chronology of events, disputes DuPont's conclusion that the government commenced its investigation in May. However, Kolon does not provide a specific time when it asserts the investigation began. Its timeline, however, attached as Exh. 1 to its Reply Memorandum, shows that, on June 7, 2007, a government agent indicated to DuPont that he would like to meet with its representatives, and that meetings between government agents and DuPont commenced on June 14, 2007, and investigatory activity by the government ramped up quickly from that point forward. Moreover, according to an affidavit submitted by Kolon with its original motion to compel, federal investigators interviewed a DuPont customer on May 1, 2007. See Kolon Memo. of Feb. 5, Exh. E, Affidavit of Special Agent Melissa McRae ¶ 45.[5]

---

[5]     Kolon challenges this evidence, from its own exhibit, by setting forth, in its reply, Exhibit 9, an email from Timothy Heaphy to Agent Jereski, providing him with the contact information for the DuPont customer referenced in Agent McRae's affidavit. This does not, however, suggest that Agent McRae's affidavit was inaccurate, only that

14

The record establishes that, by May 21, 2007, DuPont anticipated litigation with Mitchell and/or Kolon over the trade secrets and confidential information which DuPont thought Mitchell had supplied to Kolon. The in camera review of the seven documents discloses information pertinent to the disputed issues. A brief summary of the documents, therefore, is in order.

**Document No. 964261**

This document consists of a covering email, dated June 6, 2007, by which Clarke sent to an FBI agent: (a) a memorandum dated May 29, 2007 that was prepared by the law firm retained by DuPont in May 2007 to investigate Mitchell's activities on behalf of Kolon with a view to litigation with Mitchell and possibly Kolon; and (b) a letter dated June 1, 2007 sent by the law firm to a law enforcement agent employed by the United States Department of Commerce. The law firm memorandum reports facts learned by counsel in the early stages of the investigation. The letter expresses DuPont's willingness to share information with the government and disclaims any intent to waive attorney-client privilege by so doing. The covering email contains no substantive information.

---

Agent Jereski was not involved in the initial interview with the DuPont customer.

The covering email, although prepared when litigation was anticipated, is neither fact nor opinion work product. The law firm memorandum is fact work product. The letter to Special Agent Jereski contains opinion work product.

The covering email is not protected from disclosure. The law firm memorandum and the law firm letter are covered by work product protection, unless the protection has been waived. The law firm letter dated June 1, 2007 has already been voluntarily disclosed to Kolon (see Kolon Memo., Exh. C), constituting an obvious waiver of work product protection.

**Document 965207**

This is an email dated July 26, 2007 from Yang to James D. Shomper with a copy to Michael Clarke. Shomper and Clarke are both DuPont in-house counsel. The email reports Yang's factual recollections about a 1989 meeting with Mitchell. It was prepared at a time when litigation was anticipated. Thus, it is protected from disclosure unless the protection has been waived.

**Document Nos. 964052, 964106, 964585, 964596, and 965206**

These documents have the same substantive base: a communication from Yang to Shomper, with copies to Clarke and other in-house counsel. The text discloses that Yang is responding to Shomper's request for information known to

16

Yang about Kolon. Yang's communication is dated July 27, 2007 and thus is after DuPont anticipated litigation with Mitchell and Kolon. On August 11, 2008, Clarke sent Yang's response to a federal law enforcement officer. The forwarding email contains no text indicating why it was forwarded.

The documents, except for the forwarding email portions thereof, are protected as fact work product unless the protection has been waived.

**Document Nos. 964084 and 964117**

These documents are copies of an email, dated June 18, 2008, from the law firm to Clarke, with a copy to the Department of Commerce Special Agent, sent on August 11, 2008, reporting the factual results of the law firm's investigation of a specific topic related to potential litigation. The base communication is protected unless the protection has been waived. However, the forwarding email is not work product.

**Document Nos. 64104 and 964091**

This document consists of a covering email, dated August 23, 2008, from Clarke to Earl W. Guertin, a DuPont employee, with a copy to law enforcement officers and an Assistant United States Attorney; and an attached memorandum dated August 23, 2008 that was prepared by

17

Clarke for use by Guertin in assisting the government's investigation of Kolon.

The covering email is not work product. However, the Clarke memorandum is opinion work product which is protected unless the protection has been waived.

**Document No. 964736**

This document consists of a covering email, dated November 21, 2008, from Clarke to a Department of Commerce Special Agent and a copy of a factual presentation, dated October 17, 2008, reporting the results of an investigation into Kolon's activities. The covering email is not work product. The factual presentation is fact work product and is protected unless the protection has been waived.

**The Yang Journal Entry (Not Numbered)**

This is a copy of the personal journal kept by Yang. The first entry is July 23, 2007, and the last entry is January 20, 2010. The dispute here is over the entry for December 8, 2008 wherein Yang reports briefly on a visit he received from Clarke. The substantive entry at issue discloses no fact or opinion work product at all, but it does reflect that Clarke discussed with Yang DuPont's plan to sue Kolon. According to Clarke's affidavit, the discussion with Yang reflected in this entry revealed some facts but no opinion work product. Thus, although the

conversation with Yang might involve disclosure of work product, the entry at issue does not.

As to all of the documents discussed above that Kolon seeks to compel, Kolon makes the overriding argument that the communications do not demonstrate that DuPont anticipated the present litigation at that time. Rather, they only show that DuPont was facilitating the government's investigation of Mitchell. DuPont's protection effort, asserts Kolon, "is not supported by the record and smacks of a *post hoc* attempt to dress up the communications as work product to avoid discovery in this case." Kolon Reply Memo. at 2.

None of the documents submitted for in camera review evidence an effort by DuPont to instigate an investigation of Mitchell or Kolon. Nor, contrary to Kolon's argument, do the documents support the view that DuPont is engaged in *post hoc* rationalization to prevent their disclosure. However, the documents clearly show that, in 2008, DuPont was providing work product documents to the government which, at the time, was investigating Mitchell and Kolon. That brings the inquiry to the waiver issue.

**C. Whether DuPont Waived Work product Protection**

DuPont, having demonstrated that the Government Emails were sent after the government began its investigation, and

having shown that DuPont and the government had a common interest, and having shown that it had a reasonable expectation that confidentiality of the communications would be preserved, has demonstrated that, as to those documents to which the work product protection applies, the protection has not been waived by disclosure to the government.

Unlike Information Resources, the emails for which DuPont claims work product protection were sent well after the commencement of the investigation. The record demonstrates that federal investigators interviewed a DuPont customer in connection with their investigation of Mitchell in May 2007. McRae Affidavit ¶ 45. All of the emails relevant to the issue of waiver were sent on or after June 6, 2007. Thus, while DuPont may well have precipitated the federal investigation of Mitchell, its ex-employee, none of the communications it now seeks to protect were made for the purposes of initiating an investigation, but rather were made in connection with an investigation that the government already had begun undertaking. And, although there is not complete identity of interest between DuPont and the government in the cases (United States v. Mitchell differs in many obvious respects from DuPont v. Kolon), there was substantial overlap such

that DuPont's confidential sharing of information with the government would be of great value to both parties. And, the fundamental undertaking by DuPont and the government was to determine the extent of the industrial espionage and redress it.

Although DuPont failed to include language in many of its email communications that the information was intended to remain privileged, given the confidential nature of government investigations, as exemplified in the law firm letter sent or dated June 1, 2007,[6] it was reasonable for DuPont to act on the belief that the information would not be subject to disclosure by the government.

From another perspective, it is difficult to see how the government could have conducted its case without DuPont's assistance. And, there is no reason why DuPont, in providing such assistance, should lose work product protection for information it provided to the government respecting its own plans for litigation against a party implicated in the investigation. That DuPont achieved a commercial benefit from the investigation does not undermine the fact that DuPont had a right, and, in some sense, an obligation, to report Mitchell's suspicious

---

[6]     See Kolon Memo., Exh. C ("DuPont does not intend by the sharing of this information with you to waive the attorney-client privilege associated with this information or with the subject matter involved.").

activity; his subsequent conviction underscores the legitimacy of DuPont's concerns.

Moreover, the underlying facts of DuPont's activities that Kolon alleges amounted to "ensnaring" Mitchell are not privileged; the privilege covers only the documents themselves. Kolon is free to inquire about the allegedly trade secret or otherwise confidential information that DuPont used to "bait" Mitchell and Kolon to the extent it seeks to demonstrate that the information Kolon received from Mitchell did not constitute trade secrets. DuPont is not trying to shield from production any documents that it allegedly arranged to have the government send to Mitchell as "bait." With but one exception, DuPont is asserting privilege only as to information that it communicated to the government about its own plans for litigation now before the Court. That shared information falls under the work product protection, and was not waived by sharing it with the government, which had a common interest with DuPont in preventing trade secret theft.

However, Documents 64104 and 964091, the latter a copy of the former, are an exception. The base document reflects Clarke's efforts to prepare Guertin for an expected telephone call from Kolon to be arranged by Mitchell. The document contains Clarke's ideas and

22

impressions about what Guertin could say to gather
information that would be useful in DuPont's likely
litigation against Mitchell and Kolon and in the
government's investigation of Mitchell and Kolon.

It is obvious from the text of the base document that,
when Clarke prepared it, he knew that its substance would
be shared with an outside third-party whose interest was
quite adverse to that of his client. Under the settled law
in this circuit, Clarke's mental impressions and opinions,
as reflected in the document, are not protected because the
protection was waived. The forwarding email is not work
product. Thus, Documents 64104 and 964091 are
discoverable.

### CONCLUSION

For the foregoing reasons, Defendant Kolon Industries,
Inc.'s (Kolon) CONSOLIDATED MOTION TO COMPEL PRODUCTION OF
DOCUMENTS FROM PLAINTIFF E.I. du PONT de NEMOURS AND
COMPANY AND FROM THIRD PARTY HUNG HAN ("HARRY") YANG
(Docket No. 114), will be granted in part and denied in
part. The documents, or the parts thereof, described
herein as not constituting work product, as well as those
documents for which DuPont has waived the privilege
(Document Nos. 64104 and 964091, and the law firm letter

portion of Document No. 964261) must be produced.    The

other documents need not be produced.

It is so ORDERED.

/s/            _R E P_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  April 13, 2010