## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| E. I. du PONT de NEMOURS AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KOLON INDUSTRIES, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 3:09CV00058

### PLAINTIFF E.I. du PONT de NEMOURS AND COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEPOSITIONS OF MANAGING AGENTS OF DEFENDANT KOLON INDUSTRIES, INC.

Plaintiff E.I. du Pont de Nemours and Company ("DuPont"), by counsel and pursuant to this Court's Order dated April 9, 2010, respectfully submits this memorandum of law in support of its Motion for an Order compelling Defendant Kolon Industries, Inc. ("Kolon") to produce for deposition eight managing agents involved in Kolon's efforts to obtain trade secrets and confidential information from DuPont.

### INTRODUCTION AND BACKGROUND

For months, DuPont has sought the depositions of key Kolon personnel who orchestrated and were integrally involved in Kolon's efforts to obtain DuPont trade secrets from not only Michael Mitchell ("Mitchell") – who has pled guilty and been sentenced in this Court for his role in the theft of DuPont trade secrets – but also several other former DuPont employees whom Kolon hired as "consultants" from 2006 to 2008.  DuPont's efforts have been met with delay and obfuscation, and the Court's intervention is necessary to end the obstruction and compel Kolon to produce its managing agents for deposition.

To date, DuPont has sought to depose eight individuals – In Sik Han ("Han"), Young Soo Seo ("Seo"), Jong Hyun Choi ("Choi"), Oh Hwan Kim ("O.H. Kim"), Kyeong Hwan Rho[1] ("Rho"), Dae Sik Kang ("Kang"), Juwan Kim ("J. Kim") and Jae Bum Park ("Park").  This Court has the authority to require Kolon to produce them for deposition as managing agents. The fact that Kolon now has placed some of them on "administrative leave," or that two are no longer employed by Kolon, does not preclude the Court from issuing such an Order.  It was not until *after* the lawsuit was filed that their employment status changed, and all of the individuals whose status changed (with the possible exception of one) maintain ties and relationships with Kolon that include, among other things, Kolon's payment of their attorney's fees.  Kolon may not shield these key figures from depositions by changing their status in an effort to place them beyond the Court's reach, and the Court may compel Kolon to produce them for deposition.

## I.      The Individuals at Issue Are Executive and Management Personnel Who Were Integrally Involved in Kolon's Efforts to Obtain DuPont Trade Secrets.

Based on Kolon's disclosures and other documents produced in discovery to date, the individuals held the following executive or managerial positions during the relevant period:

- In Sik Han – Vice President, Director of the Heracron Research Institute.  Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs., at 27.[2]

- Young Soo Seo – General Manager of the Heracron Business Center.  *Id.* at 32.

- Jong Hyun Choi – Vice President and Managing, Senior or Executive Director.  *See, e.g.*, Ex. B, Apr. 11, 2007 e-mail from J.B. Park to Mitchell with attachment (K00033580-85, at K00033584) ; Ex. C, Jun. 4, 2007 e-mail from J. B. Park to K.S. Lee (K00033608); Ex. D, Selected pages from March 2007 meeting schedule (K00041118-20).

---

[1]      Kyeong Hwan Rho is sometimes referred to in documents as Kyeong (or Kyung) Hwan Noh.

[2]      Many documents cited in this brief have been designated by Kolon as "Confidential" or "Confidential – Attorney's Eyes Only" and therefore are being filed under seal.  Also, the original versions of some documents cited in this brief are in Korean – in those cases, the original document is provided with an English translation.

- Kyeong Hwan Rho – General Manager of the Heracron Technology Team.  Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs., at 32.[3]

- Oh Hwan Kim – Deputy General Manager of the Heracron Technology Team, QA Unit.  *Id.* at 29.[4]

- Dae Sik Kang – Section Manager or Manager for the Heracron Business Team.  *See* Ex. F, Mar. 18, 2007 e-mail from J.Y. Kim to D.S. Kang (K00009448); Ex. G, List of 2009 personnel changes (K00905166-69) (see third page of translation).

- Juwan Kim – Manager for the Heracron Business Center.  Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs., at 32.

- Jae Bum Park – Deputy General Manager for the Heracron Business Center.  *Id.*

All of these individuals were deeply involved in and responsible for the actions and events that gave rise to this litigation – namely, Kolon's efforts to obtain DuPont trade secrets about KEVLAR®.  In March of 2007, Park and Seo invited Mitchell to Korea to meet with Kolon representatives.  Before the meeting, Park, copying Seo, sent Mitchell a detailed agenda that included numerous technical topics for discussion during the meeting, including specific topics regarding DuPont's KEVLAR® manufacturing process.  Ex. H, Mar. 7-16, 2007 e-mail chain involving Mitchell, Park and Seo (K00049831-838); *see also* Ex. I, Selected pages of Kolon's Supp. Answers to DuPont's First Reqs. for Adm., at 13-14 (responses to Req. Nos. 10 and 11).  Oh Hwan Kim was responsible for soliciting topics and questions for discussion at the meeting.  Ex. J, Mar. 14, 2007 e-mail from O.H. Kim (K00024293-94).

---

[3]   It also appears that in 2007, Rho was the General Manager of the Heracron Production Team.  Ex. E, Mar. 16, 2007 Organization Chart for Heracron Production Team (K00900487-94, at K00900490) (see fourth page of translation).

[4]   It also appears that in 2007, Oh Hwan Kim held the position of Manager for the Heracron Production Team.  Ex. E, Mar. 16, 2007 Organization Chart for Heracron Production Team (K00900487-94, at K00900490) (see fourth page of translation).

The meeting took place at Kolon's headquarters in Korea on March 19 and 20, 2007, and the attendees included Seo, Han, Choi, Rho, Kang, and Park. Ex. K, Kolon's Resp. to Spec. Interrog., at 6-7. During the meeting, Kolon agents asked Mitchell technical questions about DuPont's technology and manufacturing processes. Ex. I, Selected pages of Kolon's Suppl. Answers to DuPont's First Reqs. for Adm., at 15 (response to Req. No. 13). Also during his visit, Kolon obtained DuPont documents (totaling about 4,500 pages) from Mitchell containing information about DuPont's aramid fiber production. Ex. L, Selected pages of Kolon's Answers to DuPont's Second Reqs. for Adm., at 8 (Resp. to Req. No. 8). To date, Kolon has stated simply that it "obtained" the documents from Mitchell during this visit, and has not explained precisely how it obtained them. *Id.* at 8-11.

In the weeks after the March 2007 meeting, Mitchell and Kolon negotiated and entered into an independent contractor agreement. Park and Seo negotiated the agreement on behalf of Kolon, and Choi was the signatory for Kolon. Ex. M, E-mails between Mitchell, Park and Seo (K00052389-90, K00034932-37, K00034945-50). An objective, if not the primary objective, of the arrangement was the acquisition of DuPont's technology and manufacturing processes. Ex. N, Selected pages of Kolon proposal (K00040748-749). Seo was in charge of this project. *Id.* (translation of K00040748).

Consistent with the agreement's purpose, Kolon repeatedly sought technical information about DuPont's production process from Mitchell. *See, e.g.*, Ex. O, April 18-19, 2007 e-mail chain involving Mitchell, Park, Seo and Rho (K00034967-969); Ex. P, May 25, 2007 e-mail from Mitchell to Park and Seo (K00035058). Internal communications confirm that Kolon's agents knew the sensitive nature of the documents and other information obtained from Mitchell, and that it would cause trouble if their possession of the information became known. *See, e.g.,*

4

Ex. Q, May 25, 2007 e-mail (K00010767); Ex. R, Aug. 1, 2007 e-mail involving Park, Seo, Kang, et al. (K00009039-40).

Kolon agents (including Park, then Juwan Kim, who became Mitchell's primary contact in August of 2007) continued to press Mitchell for technical information and encouraged him to get answers from former DuPont colleagues. *See, e.g.*, Ex. S, Aug. 10, 2007 e-mail from Park to Mitchell (K00033677) ; Ex. T, Aug. 21, 2007 e-mail from J. Kim to Mitchell (with copies to Seo and Park) (K00020520).  Park and Oh Hwan Kim traveled to Virginia to meet with Mitchell in June of 2007, *see* Ex. K, Kolon's Resp. to Spec. Interrog., at 7, and Mitchell visited Korea again in August of 2007 to meet with Kolon personnel, including Han, Seo, Choi, Kang, Oh Hwan Kim, Juwan Kim and Park.  *Id.* at 7-8.  *See also* Ex. U, Aug. 31, 2007 e-mail w/ attached summary from J. Kim to Han, Park, O.H. Kim, Kang, Seo, et al. (K00011620-28).

Beginning in 2007 and continuing into 2008, Kolon agents tried to recruit Dr. Harry Yang, a retired DuPont engineer, to provide confidential DuPont information so Kolon could duplicate DuPont's processes.  In November of 2007, Mitchell sent information to Han (through Juwan Kim) about his recruitment efforts, the topics that Yang would address, and Yang's fees.[5] Ex. V, Nov. 1, 2007 e-mail from Mitchell to J. Kim (K00032044).   In January of 2008, the Heracron Research Institute (of which Han is the Director) decided to proceed with retaining Yang, and approved Yang's fees.  Ex. W, Jan. 10, 2008 e-mail from Jae-Young Lee to J. Kim (copy to Han) (K00029587-88).  In May of 2008, Han, Seo, Rho and Juwan Kim tried to arrange a meeting with Yang in Richmond.  Ex. X, May 23, 2008 e-mail chain involving Han, Seo, Rho

---

[5]   At the time, Yang was cooperating with the FBI in its investigation of Mitchell's activities for DuPont.

and J. Kim (K00032086-87); Ex. V, May 26, 2008 e-mail from Mitchell to J. Kim (K00032044). This meeting never occurred, however, and Kolon focused its efforts elsewhere.

In the summer of 2008, the FBI arranged, through Mitchell, a meeting between Kolon representatives and a DuPont employee, Earl Guertin, as part of its investigation.[6]   Kolon's agents (including several of the individuals at issue) knew that meeting with Guertin could cause legal problems, but they went forward anyway, and intended to consult Kolon's in-house legal department for guidance on contacting Guertin without leaving evidence of their actions.  Ex. Y, July 24, 2008 e-mail from Sung Jung Kim to Rho (copied to Han, Seo and J. Kim) (K00031749). In August of 2008, Seo, Rho and Juwan Kim flew to Richmond to meet with Mitchell and Guertin.  Ex. K, Kolon's Resp. to Spec. Interrog., at 10.

Thus, there can be no question that each of the individuals whom DuPont seeks to depose were involved extensively in Kolon's relationship with Mitchell, and with its successful efforts to obtain DuPont information from him.

In addition, more recent discovery produced by Kolon (only after being ordered to do so during the conference with the Court on February 2, 2010) reveals that Kolon made a concerted effort to seek out and hire other former DuPont employees as "consultants" as part of a broader effort to obtain DuPont technology.  *See, e.g.*, Ex. Z, (K00896552-53).  Choi and Seo were in charge of this effort.  *Id.*  Kolon's Special Interrogatory Response identified three other former DuPont employees, and one former employee of a DuPont joint venture, from whom Kolon obtained DuPont aramid fiber information.  Ex. K, Kolon's Resp. to Spec. Interrog.  The recipients of that information included Han, Seo, Choi, Rho, Oh Hwan Kim, Kang and Park.  *Id.*

---

[6]   As discussed in previous filings, DuPont and its employee, Mr. Guertin, were cooperating with the investigation at the government's request.

**II.    Kolon's Actions and Representations in this Litigation Confirm the Managing Agent Status of These Key Witnesses**

DuPont filed this action in February of 2009.  On August 11, 2009, Kolon served its Initial Disclosures, which identified Han, Seo, Rho, Oh Hwan Kim, Juwan Kim and Park as persons likely to have discoverable information. Ex. AA, Selected pages of Kolon's Init. Discl., at 3-8.  Kolon represented that all of them could be contacted through Kolon's counsel, and did not indicate that any of them had been placed "on leave" or were no longer with the company, or that any of them had separate counsel.  Thus, as of August 2009 – nearly six months after the lawsuit was filed – Kolon continued to represent that it had a relationship with each of these individuals, including a relationship connecting them with Kolon's counsel.

On September 25, 2009, Kolon served its responses to DuPont's First Set of Interrogatories.  In those responses, Kolon disclosed that Park and Kim had been separated from the company over *five months earlier*, in March and April of 2009, after the lawsuit was filed. Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs., at 32.  Kolon also disclosed that Rho had been placed on leave "pending re-assignment," but apparently was still employed by Kolon.  *Id.*  Kolon described Seo as the former General Manager of Kolon's Heracron Business Center, but otherwise did not indicate that he had been placed on leave or that his employment with Kolon had ended.  *Id.*  Finally, Kolon indicated that Han and Oh Hwan Kim remained actively employed in their executive and management positions.  *Id.* at 27 and 29.

On September 28, 2009, DuPont noticed the depositions of Han, Seo, Rho, Park and Juwan Kim, and on November 5, 2009, DuPont noticed the depositions of Choi, Kang and Oh Hwan Kim.  Ex. BB, Deposition Notices.  On December 1, 2009, DuPont also noticed the deposition of Kolon pursuant to Rule 30(b)(6).  Ex. CC, DuPont's Rule 30(b)(6) Notice. Included among the subjects listed by DuPont in its Rule 30(b)(6) notice were various topics

concerning the relationship between Mitchell and Kolon, and Kolon's efforts to obtain information about DuPont's aramid fiber production processes, including any contacts that Kolon had with current or former DuPont employees other than Mitchell. *Id.* at 2-9.

To date, Kolon has not produced a single witness for deposition. Kolon refused to produce the individuals sought by DuPont, claiming that they have separate counsel. In Supplemental Disclosures served on December 1, 2009[7], Kolon provided the names and contact information for counsel (who are being paid for by Kolon) that have been retained for these individuals, except for two – Oh Hwan Kim and Park. Ex. DD, Selected pages of Kolon's Suppl. Discl., at 3-11. Kolon claims not to know where Park is, and has represented that he may no longer live in Korea. As for Oh Hwan Kim, Kolon did not indicate in its December 1, 2009 Supplemental Disclosures that he has separate counsel, and continued to state that he may be contacted through Kolon's counsel.[8] *Id.* at 7. Nevertheless, Kolon has refused to accept service for him or produce him for deposition. While it was, and still is, DuPont's position that the individuals must be produced for deposition as managing agents, DuPont nevertheless also commenced procedures to serve deposition subpoenas under the Hague Convention.[9]

---

[7] While Kolon supplemented its Rule 26(a)(1) disclosures (which provide the names and contact information for individuals likely to have discoverable information) in December of 2009 and February of 2010, it has not supplemented its response to Interrogatory 18 of DuPont's First Set of Interrogatories since September of 2009. That interrogatory requests additional information that does not appear in the Rule 26(a)(1) disclosures, including, among other things, current employment status (i.e., job titles and responsibilities) for the individuals identified in those disclosures. Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs.

[8] Indeed, Kolon's Second Supplemental Disclosures, served on February 22, 2010, still do not indicate that Oh Hwan Kim has separate counsel, and continue to state that he may be contacted through Kolon's counsel. Ex. EE, Selected pages of Kolon's Second Supp. Discl., at 13.

[9] The United States Supreme Court has recognized that the Hague Convention "was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad." *Societe Nationale Aerospatiale v. United States District Court*, 482 U.S. 522, 536 (2007).

During a telephonic meet-and-confer among counsel on December 23, 2009, Kolon's counsel acknowledged that Han, Seo and Choi were officers or managing agents of Kolon. Kolon's counsel refused, however, to discuss the job duties of the other witnesses to facilitate a determination of their status.  On February 2, 2010, when the issue of deposing Kolon personnel was raised during the conference with the Court, Kolon's counsel i) did not challenge the status of these three witnesses as officers or managing agents; ii) did not deny that it had acknowledged their status as such during the meet and confer; and iii) did not challenge the managing agent status of any of the other Kolon employees discussed during that call.  Ex. FF, Selected pages from Transcript of February 2, 2010 Conf. Call, at 4-10.  Kolon's counsel simply restated that Park and J. Kim were "no longer employed" with Kolon[10], and that Seo and Rho had been placed on "administrative leave."  *Id.*  DuPont's counsel stated that it would continue its efforts to serve subpoenas under the Hague Convention, and Kolon's counsel confirmed that it either had instructed or would instruct its employees to cooperate with DuPont's counsel and appear for their depositions.  *Id.* at 5-10.  The Court made it clear that it would not tolerate any more "four-corners offense" on the production of the individuals for deposition.  *Id.* at 10.

Despite Kolon's representations, all of the individuals have refused to appear for their depositions.  In substantially identical letters from their attorneys, six of them – Han, Seo, Choi, Rho, Kang and Juwan Kim – refused to appear because the subpoenas sought depositions in their home country of Korea, rather than in Virginia.  Ex. GG, Letters from attorneys.  If Kolon is to

---

[10]   The transcript of the conference call indicates that "Oh Hwan Kim" left the company and was represented by separate counsel at Vinson & Elkins, *see id.* at 6, but this appears to be incorrect.  It appears that the person being discussed was actually Juwan Kim, not Oh Hwan Kim, as Juwan Kim is no longer employed by Kolon and is represented by Vinson & Elkins, while Oh Hwan Kim still appears to be actively employed by Kolon and not represented by separate counsel.

be believed, these individuals are defying their employer's instructions to cooperate and appear for their depositions – yet Kolon continues to pay their attorneys, and most of them remain employed by or affiliated with Kolon. At the Court's suggestion, DuPont offered to pay their expenses to travel to the United States for their depositions, but that offer was rebuffed as well.

In its Rebuttal Memorandum filed on March 29, 2010, Kolon for the first time disputed that certain of these individuals met the managing agent standard, claiming (among other things) that those placed on leave or separated from the company could not be considered managing agents. *See* Rebuttal Memo. in Supp. of Kolon's Mot. to Compel, filed Mar. 29, 2010 (Docket No. 160), at 5-6. Kolon also claimed that the individuals' interests must be divergent from Kolon's because they obtained separate counsel. *Id.* Kolon omitted, however, the fact that it continues to pay the bills for their counsel (and indeed, continues to employ several of them) while claiming this "disparity of interests."

Other discovery produced to date calls into doubt whether the individuals on "administrative leave" are truly on leave from the company. The personnel files for Seo and Rho (which were not produced until late March) say nothing about them being on leave. Indeed, the files are devoid of any employment histories, performance evaluations, or similar materials. They simply contain copies of each individual's job application and two boilerplate agreements that they signed when they began working for Kolon. Exs. HH & II, Rho and Seo Personnel Files (KP00286207-09 and KP00286210-12). Other evidence indicates that some of the individuals (including those purportedly on leave) have been reassigned or moved to other areas of the company after the lawsuit was filed. For example, Kolon documentation indicates that as of June 4, 2009, Choi, Seo, Rho and Kang were moved to different areas or positions, but

apparently retained the same titles and seniority levels that they had before.  *See* Ex. G, List of

June 2009 personnel changes (K00905166-69) (referring to Rho as "Noh").

In sum, DuPont has ascertained that the individuals at issue have the following status:

- In Sik Han – Vice President and Director of the Heracron Research Institute.  No indication of any employment status change.  Represented by W. Neil Eggleston of Debevoise & Plimpton LLP in Washington, DC, whose fees are being paid by Kolon.

- Young Soo Seo – General Manager of the Heracron Business Center until June 2009. Represented as being on administrative leave, but his personnel file contains no indication of this.  Evidence suggests possible intra-company reassignment or transfer in June of 2009.  Represented by Kenneth Wainstein of O'Melveny & Myers LLP in Washington, DC, whose fees are being paid by Kolon.

- Jong Hyun Choi – Vice President and Senior, Managing or Executive Director (according to Kolon documents).  Evidence suggests possible intra-company reassignment or transfer in June of 2009.  Represented by Samuel J. Buffone, originally of Ropes & Gray LLP in Washington, DC, now of Buckley Sandler LLP in Washington, DC, whose fees are being paid by Kolon.

- Kyeong Hwan Rho – General Manager of the Heracron Technology Team until June 2009.  Represented as being on administrative leave, but his personnel file contains no indication of this.  Evidence suggests possible intra-company reassignment or transfer in June of 2009.  Represented by Nicholas Harbist of Blank Rome LLP in Princeton, New Jersey, whose fees are being paid by Kolon.

- Oh Hwan Kim – Deputy General Manager for the Heracron Technology Team, QA Unit.  No indication of any employment status change.  No indication of representation by separate counsel.  Kolon's Second Supplemental Disclosures served on February 22, 2010 state that he may be contacted through Kolon's counsel.

- Dae Sik Kang – Section Manager, Heracron Business Center.  Evidence suggests possible intra-company reassignment or transfer in June of 2009.  Represented by Peter Spivack of Hogan & Hartson LLP in Washington, DC, whose fees are being paid by Kolon.

- Juwan Kim – Manager for the Heracron Business Center until April 2009.  Separated from Kolon in April 2009, after this action was filed.  Represented by William Lawler of Vinson & Elkins LLP in Washington, DC, whose fees are being paid by Kolon.

- Jae Bum Park – Deputy General Manager of the Heracron Business Center until March 2009.  Separated from Kolon in March 2009, after this action was filed.  Kolon represents that it does not know his whereabouts, and that he may have left Korea.

## **ARGUMENT**

**I.      The Court May Compel Depositions of a Corporate Party's Managing Agents.**

A party to litigation may be compelled to testify pursuant to a deposition notice. *See In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 540 (D. Md. 1996). When the party is a corporation, the examining party may select one or more individuals to speak for the corporation, so long as the individuals are "directors, officers or managing agents." *In re Honda*, 168 F.R.D. at 540 (citing *Founding Church of Scientology of Washington, D.C. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986), and Advisory Committee Notes to Fed. R. Civ. P. 30(b)(6)). *See also Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985).

Courts have observed that "[t]he law concerning who may properly be designated as a managing agent is sketchy" and facts will differ greatly from case to case. The determination thus "must be a functional one" that is made on a case-by-case basis. *In re Honda*, 168 F.R.D. at 540 (citing *Webster*, 802 F.2d at 1452); *see also Dubai Islamic Bank v. Citibank, N.A.*, 99 Civ. 1930 (RMB)(THK), 2002 U.S. Dist. LEXIS 9794, at *6 (S.D.N.Y May 31, 2002) (noting that the inquiry is "not formulaic"). Courts have enunciated certain factors that may be applied in this inquiry, including:

- Whether the corporation has invested the person with discretion;
- Whether the person can be depended on to carry out his employer's directions;
- Whether the person can be expected to identify with the corporation's interests as opposed to those of an adversary;
- The degree of supervisory authority to which the person is subject in a given area; and
- The general responsibilities of the person regarding the matters at issue in the litigation.

*In re Honda*, 168 F.R.D. at 540-41 (citing cases). The inquiry essentially concerns the individual's decisionmaking discretion and authority, the degree to which his interests converge with the corporation's and his responsibilities and knowledge with regard to the matters at issue

in the litigation. *See Webster*, 802 F.2d at 1453; *see also In re Honda*, 168 F.R.D. at 540-41. It has been said that the "paramount test" is whether the person can be expected to identify with the corporation's interests as opposed to an adversary's. *Id.* at 541.

At the pre-trial discovery stage, doubts about a person's managing agent status should be resolved in favor of the examining party. *Id.* at 540 (citing *Webster*, 802 F.2d at 1452 n. 4); *Sugarhill Records*, 105 F.R.D. at 171. If it is a "close question" as to whether an individual is a managing agent, the discovery should proceed. *See Sugarhill Records*, 105 F.R.D. at 171 (citing *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968)). This is particularly true where, as here, the examining party has not had full discovery on the status of the persons whose depositions are sought, as the issue of whether their testimony will bind the corporation can be determined later. *Id.* *See also Dubai Islamic Bank*, 2002 U.S. Dist LEXIS 9794, at *11-13. Indeed, the witness' testimony often will provide the best evidence of his or her status. *Id.*

## II. The Individuals At Issue Should be Required to Appear for Deposition as Managing Agents of Kolon.

### A. In Sik Han, Young Soo Seo and Jong Hyun Choi are Managing Agents Whose Depositions May be Compelled.

At a bare minimum, Han, Seo and Choi are managing agents. Kolon acknowledged this during the meet-and-confer in late December of 2009, and did not challenge their managing agent status during the February 2, 2010 conference call with the Court. Evidence regarding their positions, responsibilities and involvement in the matters at issue in this litigation further reinforces their status as managing agents.

1.     In Sik Han

A 25-year veteran of Kolon, Han holds the title of Vice President and, as the Director of Kolon's Heracron Research Institute, is in charge of Kolon's research activities and functions

related to its Heracron aramid fiber product.  *See* Ex. JJ, Han Personnel File (KP00286190-92) ; Ex. KK, Heracron Research Center Organization Chart (K00968164-65).  He is a classic managing agent.  His position necessarily vests him with authority and discretion – indeed, he holds the most senior position in his unit.  *Id.*  Such a position of authority is virtually conclusive of management agent status.  *See Dubai Islamic Bank*, 2002 U.S. Dist. LEXIS 9794, at *14-18 (ordering deposition of a former department head who later was demoted to a non-managerial position); *see also In re Honda*, 168 F.R.D. at 540-41 (looking to whether a person is vested with discretion and the extent to which he is subject to supervisory authority in a given area).

Han also was heavily involved in Kolon's relationship with Mitchell and its efforts to obtain DuPont technology from former DuPont employees.  He attended the meetings with Mitchell on both of Mitchell's trips to Korea, in March and August of 2007.  Ex. K, Kolon's Resp. to Spec. Interrog., at 6-7.  He also was involved in Kolon's efforts to have Mitchell arrange consultations with other DuPont employees.  When Mitchell proposed a consultation with retired DuPont engineer Dr. Harry Yang, the Heracron Research Institute (of which Han was the Director) approved the topics and fees for the consultation.  Ex. W, Jan. 10, 2008 e-mail from Jae-Young Lee to J. Kim (copy to Han) (K00029587-88).  When Mitchell sent Earl Guertin's résumé to Juwan Kim, Han directed him to proceed with Guertin in order to learn the latest aramid spinning technology, and he complied.  *See* Ex. LL, July 23, 2008 e-mail from Han to J. Kim (K00012528).  Han also was heavily involved in Kolon's efforts to obtain information from other former DuPont employees – indeed, he attended the vast majority of the meetings (24 in all) with such "consultants" from 2006 to 2008.  Ex. K, Kolon's Resp. to Spec. Interrog.

Moreover, there is no indication that Han's employment status has changed since the time period relevant to this case.  As not only a current employee, but one who heads a unit of the

company, he clearly has an identity of interest with Kolon. *In re Honda*, 168 F.R.D. at 541 (holding that a current employee has an identity of interest with the company). He is therefore clearly a managing agent whose deposition may be compelled.

2.   Young Soo Seo

During the period relevant to this case, Young Soo Seo held an upper-level management position in Kolon's Heracron business as General Manager of the Heracron Business Center. He has worked for Kolon for over 22 years. Ex. II, Seo Personnel File (KP00286210-12). He was vested with authority and discretion by, among other things, being placed in charge of the project to retain Mitchell for the purpose of obtaining DuPont's manufacturing process. Ex. N, Selected pages of Kolon proposal (K00040748-749, at K0004078). Recently-provided discovery further reveals that he (along with Choi) also was in charge of Kolon's broader efforts to obtain technology from companies like DuPont through the recruitment and retention of former employees as consultants. Ex. Z, (K00896552-53).

As described above, the discovery produced thus far is replete with e-mails and other documents demonstrating Seo's involvement and responsibilities with respect to Mitchell. Seo was involved literally from the beginning of the relationship, as he (along with Park) arranged Mitchell's first visit to Korea and negotiated Mitchell's contract. Seo attended both the March and August 2007 meetings with Mitchell in Korea, and was one of three Kolon agents who traveled to Richmond to meet with Mitchell and Earl Guertin. Ex. K, Kolon's Resp. to Spec. Interrog., at 6-8, 10. Seo instructed Juwan Kim to press Mitchell for detailed information about DuPont's Maydown plant in Northern Ireland so that Kolon could build similar facilities in other countries. Ex. MM, Sept. 28-Oct. 10, 2007 e-mail chain between J. Kim and Mitchell (K00019191-95). The identity between his interests and Kolon's is demonstrated both by the

fact that he was placed in charge of key undertakings, such as the efforts to obtain technology from DuPont and other companies, and the fact that he sought through his actions to advance Kolon's interests at the expense of companies like DuPont. *See In re Honda*, 168 F.R.D. at 541 (finding an employee to be a managing agent when invested with general power to exercise judgment in a position of trust).  He therefore was a managing agent during the relevant time period, and as discussed below, the fact that he is now on "administrative leave" does not preclude the Court from ordering his deposition.

3.    Jong Hyun Choi

While Jong Hyun Choi's precise title is somewhat unclear from the discovery produced to date, and Kolon has yet to update its interrogatory responses on this point, it is apparent that he held an upper management position in Kolon's Heracron business with the title of Vice President and Managing, Senior or Executive Director.  His authority and discretion included, among other things, the power to bind the company in contract, as Choi was the signatory for Kolon on its agreement with Mitchell.  Ex. B, Apr. 11, 2007 e-mail from J.B. Park to Mitchell with attachment (K00033580-85, at K00033584).  This type of authority is strongly indicative of managing agent status.  *Cf. In re Honda*, 168 F.R.D. at 541 (holding an individual to be a managing agent even though he lacked the power to bind the company in contract).  *See also Dubai Islamic Bank*, 2002 U.S. Dist LEXIS 9794, at *28 (ordering deposition of employee with signature authority and supervisory responsibility over certain matters at issue in the case).

Along with Seo, Choi also was in charge of Kolon's efforts to obtain technology from DuPont and other companies via former employees recruited as "consultants."  Ex. Z, (K00896552-53).  Consistent with these responsibilities, Choi also was closely involved in Kolon's relationship with Mitchell throughout its duration.  He attended both meetings with

16

Mitchell in Korea in March and August of 2007 and routinely participated in e-mail communications relating to Kolon's dealings with Mitchell, which included discussions of consultations, technical questions about DuPont's manufacturing processes, and reports containing information about DuPont's KEVLAR® business. *See, e.g.,* Ex. NN, Jun. 7, 2007 e-mail from Park to Seo, et al. (K00010877-78); *see also* Ex. K, Kolon's Resp. to Spec. Interrog., at 6-8. Like Seo, Choi was invested with supervisory power on key initiatives and sought to further Kolon's interests at the expense of companies like DuPont, underscoring the identity between his interests and Kolon's and confirming his status as a managing agent. While there is some question now as to whether his employment status was changed after the lawsuit was filed, as discussed below, it would not prevent the Court from ordering his deposition.

**B.      The Other Individuals At Issue Are Managing Agents of Kolon Whose Depositions May Be Compelled.**

1.      <u>Kyeong Hwan Rho</u>

Rho has worked for Kolon for 23 years, *see* Ex. HH, Rho Personnel File (KP00286207), and was the General Manager of Kolon's Heracron Technology Team. It also appears that in 2007, he was the General Manager for Kolon's Heracron Production Team, a position one level below the team leader and with supervisory power over some 30 people. Ex. E, Mar. 16, 2007 Organization Chart for Heracron Production Team (K00900490-92). He figured integrally in both the Mitchell relationship and Kolon's efforts to obtain DuPont information from other sources. He attended the March 2007 meeting in Korea with Mitchell, and many meetings with other former DuPont employees during the same time period. Ex. K, Kolon's Resp. to Spec. Interrog., 2-8. On several occasions, he solicited technical information from Mitchell through Park, Mitchell's primary contact. *See, e.g.*, Ex. OO, Apr. 18, 2007 e-mail from Rho to Park (K00034953); Ex. PP, May 6, 2007 e-mail from Rho to Park (K00035026).

Rho also was instrumental in Kolon's efforts to hire a technical consultant with knowledge of DuPont's aramid manufacturing process.  He, along with Han and Seo, drove an effort to recruit Harry Yang, and attempted to set up a meeting with Yang in May of 2008.  Ex. X, May 22-23, 2008 e-mail chain involving Rho, Seo, Han and J. Kim (K00032086-87); Ex. V, May 26, 2008 e-mail from J. Kim to K.H. Rho (K00032044).  He also was at the center of Kolon's effort to recruit Earl Guertin.  Ex. Y, July 24, 2008 e-mail from Soong Jung Kim to Rho, et al. (K00031749).  Rho, along with Seo and Juwan Kim, traveled to the United States to meet with Guertin and Mitchell in Richmond in August of 2008.  Ex. K, Kolon's Resp. to Spec. Interrog., at 10.  In short, the available evidence demonstrates that he held managerial authority, could exercise discretion in positions of trust on key initiatives and had significant responsibilities regarding the matters at issue in the litigation, which he sought to fulfill for the benefit of his company.  Like Seo, he is reportedly on "administrative leave" – but as discussed below, that does not preclude the Court from ordering him to be deposed as a managing agent.

2.      Oh Hwan Kim

Oh Hwan Kim held (and apparently still holds) the position of Deputy General Manager for Kolon's Heracron Technology Team, QA Unit.  It also appears that in 2007, he held the position of Manager for Kolon's Heracron Production Team, a position one level below Kyeong Hwan Rho with supervisory power over roughly 25 people.  Ex. E, Mar. 16, 2007 Organization Chart for Heracron Production Team (K00900490-92).  His responsibilities with respect to the Mitchell relationship date back to even before it began.  Prior to the March 2007 meeting with Mitchell in Korea, Kim was responsible for soliciting potential discussion topics and questions for the meeting.  Ex. J, Mar. 14, 2007 e-mail from O.H. Kim (K00024293-94).  He personally attended the meeting with Mitchell in Korea in August of 2007.  Ex. K, Kolon's Resp. to Spec.

Interrog., at 6-8.   He traveled to the United States in June of 2007 with Park to meet with Mitchell.   *Id.*   He sent and received internal correspondence forwarding and discussing consultations with Mitchell and documents obtained from Mitchell.   *See, e.g.*, Ex. QQ, Apr. 29, 2007 e-mail from Kang to O.H. Kim, et al. (K00010888-89); Ex. RR, Aug. 30, 2007 e-mail from Kang to O.H. Kim, et al. (K00010086-93).   He also was involved in Kolon's efforts to obtain DuPont information from other sources, having attended several meetings with other former DuPont employees from 2006 to 2008.   Ex. K, Kolon's Resp. to Spec. Interrog., at 2-4, 6, 9-10.

There has been no indication of any change in Oh Hwan Kim's employment status since the litigation began – indeed, Kolon's latest supplement to its Rule 26(a)(1) disclosures states that he may be contacted through Kolon's counsel.   While Kolon claims that other individuals have interests that diverge from the company's because they have separate counsel, even that argument does not apply here, as there has been no disclosure or indication that Kim has separate counsel of his own.   These facts, along with the fact that he remains an active employee, more than demonstrate an "identity of interest" between him and Kolon.   *In re Honda*, 168 F.R.D. at 541.   This, combined with other evidence that he held a supervisory position and had substantial responsibilities concerning the matters at issue in the litigation, more than justifies requiring Kolon to produce him for deposition as a managing agent.

3.    Dae Sik Kang

Dae Sik Kang, who held the position of Section Manager for Kolon's Heracron Business Center, was integral to the Mitchell relationship from its inception.   He prepared questions for the March 2007 meeting with Mitchell in Korea and attended that meeting, as well as the second meeting with Mitchell in Korea in August of 2007.   Ex. SS, Meeting Schedule and Questions (K00041118-31, at K00041126-27) (ninth and tenth pages of translation); Ex. K, Kolon's Resp.

to Spec. Interrog., at 6-8.   During the Mitchell relationship, Kang interacted directly with Mitchell many times, including asking specific questions about DuPont's process for making aramid pulp.  *See, e.g.*, Ex. TT, Jul. 30, 2007 e-mail from Mitchell to Kang (copied to Seo and Park) (K00052365).   Among other things, Kang asked Mitchell to recommend a consultant for the pulp and staple business who was a retired DuPont employee, and later had follow-up communications with Mitchell on that issue.   Ex. UU, Sept. 11, 2007 e-mail from Kang to Mitchell (K00018413); Ex. VV, Mar. 12 and Apr. 21, 2008 e-mails between Kang and Mitchell (K00050046).   Kang also received and forwarded to others documents that Kolon obtained from Mitchell at the March 2007 meeting.  *See, e.g.*, Ex. QQ, Apr. 29, 2007 e-mail from Kang to Han, et al. (K00010888-89).   Lastly, on multiple occasions, Kang was involved with efforts to obtain information from other former DuPont employees.  Ex. K, Kolon's Resp. to Spec. Interrog., at 3, 5-6.   Evidence of Kang's involvement demonstrates both an ability to exercise discretion and substantial responsibilities concerning the matters central to the litigation, as well as interests that were aligned with Kolon's goal of obtaining DuPont technology for its own use.   There may be some question as to whether he still holds the same position or has been moved to another part of the company – however, as discussed below, any such change in his employment status would not preclude the Court from ordering him to be deposed as a managing agent.

4.   Juwan Kim

Juwan Kim held the position of Manager in Kolon's Heracron Business Center.  He took over for Park as Mitchell's primary contact in August of 2007 and was directly responsible for the day-to-day dealings with Mitchell until the relationship ended in November of 2008.   Ex. WW, Aug. 13 & 14, 2007 e-mail chain between J. Kim and Mitchell (K00018267).   It is likely that no person had more direct contact or experience with Mitchell than Juwan Kim.   One of his

first acts was to send Mitchell a spreadsheet containing questions for him to answer. *Id.* In response, Mitchell inserted proprietary DuPont information into the spreadsheet and sent it back to Kim. Ex. XX, Sept. 5, 2007 e-mail from Mitchell to J. Kim, with attachment (K00018948-65). This later document was the basis for Mitchell's guilty plea to a count of theft of trade secrets. Kim therefore was directly involved in the conduct that resulted in Mitchell's conviction and sentence. Kim also was directly involved in Kolon's efforts to obtain the services, through Mitchell, of Harry Yang to help Kolon duplicate DuPont's product. Ex. V, May 26, 2008 e-mail from J. Kim to Rho (K00032044). He later was one of the three Kolon agents (with Seo and Rho) who traveled to Richmond in August of 2008 to meet with Mitchell and Earl Guertin. Ex. K, Kolon's Resp. to Spec. Interrog., at 10.

In sum, like Park before him, Kim's position made him responsible for the daily maintenance and management of the Mitchell relationship, which necessarily would require him to exercise discretion. Also like Park, he continued to facilitate Kolon's efforts to obtain DuPont trade secrets, demonstrating the alignment of his interests with the company's. Kolon has argued that he cannot be considered a managing agent because he is no longer an employee, but as discussed below, this does not preclude the Court from ordering his deposition.

### 5. Jae Bum Park

Park worked for Kolon for 15 years[11], held the position of Deputy General Manager for Kolon's Heracron Business Center and was, along with Seo, the first individual to invite Mitchell to Korea in early 2007. His level of responsibility was evidenced by his role, referenced above, as the point person in negotiating Mitchell's independent contractor agreement. Once Mitchell began working for Kolon, Park became Mitchell's primary contact. In that role, Park was

---

[11]   Ex. YY, Park Personnel File (KP00286201-6).

responsible for, among other things, obtaining responses from Mitchell to technical questions about DuPont's aramid production process. *See, e.g.*, Ex. O, April 18-19, 2007 e-mail chain involving Mitchell, Park, Seo and Rho (K00034967-69); Ex. P, May 25, 2007 e-mail from Mitchell to Park and Seo dated (K00035058). He attended both meetings with Mitchell in Korea in March and August of 2007, and flew to the United States in June of 2007 (along with Oh Hwan Kim) to meet with Mitchell. Ex. K, Kolon's Resp. to Spec. Interrog., at 6-8. Park aggressively sought to further Kolon's interests in gaining DuPont information, to the point that he told Mitchell before his June 2007 trip to Virginia that he wanted to walk around DuPont's plant on a weekend and take pictures. Ex. ZZ, May 29, 2007 e-mail from J.B. Park to Mitchell (K00033606). Park's close and extensive involvement with Mitchell, his responsibilities in connection with that relationship, his actions in an effort to further the company's interests at DuPont's expense, and the discretion invested in him as Mitchell's primary contact qualify him as a managing agent with respect to the matters at issue in this case.

### C.    The Interests of these Witnesses Remain Closely Aligned with Kolon's.

As noted above, a key factor in the managing agent inquiry is whether the person can be expected to identify himself with the corporation's interests as opposed to an adversary's. *In re Honda*, 168 F.R.D. at 540-41. The individuals here clearly satisfy this factor. Most of them continue to be actively employed by or maintain ties with Kolon. Han and Oh Hwan Kim, for instance, continue to hold the same management positions they held before, and thus continue to have the same "identity of interest." *In re Honda*, 168 F.R.D. at 541 (finding that a current employee has an "identity of interest" with the employer). While the exact employment status of Kang and Choi is somewhat unclear based on the information provided to date, it is clear that they are both still employed by or affiliated with Kolon, and thus have an ongoing relationship

with the company.  The same is true for the individuals on "administrative leave," Seo and Rho.  Indeed, the identity of interest between Kolon and the individuals is reinforced by the fact that Kolon continues to pay their legal fees.  Kolon is even paying the legal bills for one person who no longer works for the company, Juwan Kim, thus indicating an ongoing relationship that transcends the formalities of employment status.  Far from demonstrating any adversity or divergence, this confirms that the individuals and Kolon are aligned *against* a common adversary (DuPont) in an effort to defeat litigation based on their wrongdoing.  Indeed, Kolon's liability turns in part on the wrongful acts of these individuals, so there can be little doubt that both the company and the individuals have a strong interest in opposing DuPont's claims.

Kolon's eleventh-hour challenge to the individuals' managing agent status rests on the notion that their interests diverge from Kolon's and they cannot be counted on to testify at the company's request because they have separate counsel and refuse to appear for their depositions.  Kolon's Rebuttal Memorandum, filed Mar. 29, 2010, at 5-6.  This circular reasoning creates an obvious problem – if resistance to a deposition was sufficient to remove a person from managing agent status, then no court would ever be able to require a recalcitrant managing agent to be deposed.  Any high-ranking management figure who is responsible for matters at issue in litigation could avoid being deposed as a managing agent simply by refusing to show up.

The law, however, does not compel such an absurd result.  As noted above, the managing agent inquiry "must be a functional one." *In re Honda*, 168 F.R.D. at 540 (citing *Webster*, 802 F.2d at 1452).  Here, the commonality of interest between the individuals and Kolon is more than adequately demonstrated by evidence of both their conduct during the relevant time period and their ongoing relationships with and ties to the company, which range from continued active employment to the payment of legal bills.  Even if there still were some doubt on this point, the

evidence at least creates a close enough question – particularly given that DuPont has not had full discovery on the individuals' status – that any doubts should be resolved in DuPont's favor so discovery may proceed. *Sugarhill Records*, 105 F.R.D. at 170.

**D.    Kolon's Post-Litigation Efforts to Change the Individuals' Employment Status Does Not Shield Them From Discovery.**

Although the employment status of some of the individuals have changed since the lawsuit was filed, the Court still may order their depositions. This is particularly true for the individuals who are "on leave" or have been reassigned within the company, given their ongoing relationships and ties to Kolon, discussed above. Courts commonly order depositions of former managing agents who have undergone status changes that take them out of management ranks. For instance, in *Dubai Islamic Bank*, the court ordered depositions of several individuals who were demoted to non-management positions in the wake of a corporate fraud and scandal, noting among other things the managerial responsibilities that they had in their prior positions. *Dubai Islamic Bank*, 2002 U.S. Dist. LEXIS 9794, at *14-21, *32-34, *37-39. *See also Curry v. States Marine Corp.*, 16 F.R.D. 376-77 (denying motion to vacate deposition notice of a ship master who was demoted after an accident).

Moreover, even if a person is no longer a managing agent, a court may order his deposition "when there is evidence that the managing agent has been or might be reappointed to another position in the corporation . . . ." *In re Honda*, 168 F.R.D. at 541 (citing *Curry*, 16 F.R.D. at 377). As discussed above, such evidence exists here. First, the personnel files of Seo and Rho, who are supposedly on leave, contain *nothing* to indicate such a change in status. Other evidence indicates that Seo, Rho and two others – Choi and Kang – may have been moved or reassigned to different positions or areas in the company, but retained their titles and seniority levels. *See* Ex. G, List of June 2009 personnel changes (K00905166-69).

Even if the individuals really are on leave, the fact that they are on leave (as opposed to being terminated) is itself evidence that they might resume their positions or be assigned to different positions within the company in the future. Indeed, Kolon's interrogatory response states that Rho is on leave "*pending re-assignment*." Ex. A, Selected pages of Kolon's Answers to DuPont's First Interrogs., at 32 (emphasis added). Moreover, the fact that Kolon continues to pay their legal fees further underscores the existence of an ongoing relationship that could lead to the resumption of active employment.

Courts have noted that the general principle regarding the timing of the managing agent determination was designed to protect a party from being bound by statements of a disgruntled former employee. *See Curry*, 16 F.R.D. at 377. Where that danger is not present, an exception to the general rule exists. *Id.* Here, there is no evidence that the individuals who are "on leave" or were reassigned are disgruntled or adverse to Kolon. Rather, the available evidence shows the opposite – they faithfully and aggressively sought to advance Kolon's interests, still maintain relationships with the company, and are presenting a unified front with Kolon in opposition to DuPont's claims and efforts to depose them. The fact that certain individuals may have been placed on "administrative leave" or reassigned therefore does not preclude the Court from ordering them to be deposed.

With respect to the individuals who no longer work for Kolon – Park and Juwan Kim – a deponent "need not have a formal association with the corporation" for a court to order his deposition. *Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 350 (N.D. Ohio 1999) (citing *Petition of Manor Investment Co.*, 43 F.R.D. 299, 300-01 (S.D.N.Y. 1967)). Moreover, if a managing agent is terminated or resigns in an attempt to avoid a deposition, a court may order him to appear. *In re Honda*, 168 F.R.D. at 541; *see also Independent Prods. Corp. v. Loew's,*

*Inc.*, 24 F.R.D. 19, 21-26 (S.D.N.Y. 1959) (compelling production of two former managing agents of the plaintiff who resigned prior to commencement of a lawsuit). Devious intent is not required, however, as courts also look to the nature of any ongoing relationship between the former agent and the company, *see Webster*, 802 F.2d at 1456, and whether the former agent has "unique knowledge of relevant facts." *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 79 (W.D.N.Y. 1996) (compelling deposition of a retired employee) (quoting *Loew's*).

With that being said, it is suspect here that the two persons who had perhaps the most direct contact and experience with Mitchell on a daily basis were separated from the company shortly after this lawsuit began. Even so, Kolon's Initial Disclosures served in August of 2009 identified both of them as persons likely to have discoverable information *who could be contacted through Kolon's counsel*. At a minimum, this confirmed that they had ongoing relationships with the company – a fact that was further confirmed with respect to Juwan Kim when Kolon began paying his legal bills. If the principles noted above stand for anything, they must stand for the proposition that a party may not play fast and loose with the status of its employees to avoid having to produce them for depositions. Here, Kolon's inconsistent and shifting positions regarding the status of its former agents justifies resolving any doubts in DuPont's favor. *See Dubai United Bank*, 2002 U.S. Dist. LEXIS 9794, at *14 n. 4 (stating that a party's inconsistent representations about its agent's status provides further justification for requiring the agent's deposition).

## II.    This Court has the Authority to Order Kolon to Produce its Managing Agents for Depositions in the Eastern District of Virginia.

A district court has great discretion in designating the place for a deposition. *See Socodis-Bocchi Trading, Inc. v. M/V Humboldt Rex*, CA No. 91-1474, 1992 U.S. Dist. LEXIS 9001, *6 (E.D. Pa. June 16, 1992); *Resolution Trust Corp. v. Worldwide Ins. Management Corp.*,

147 F.R.D. 125, 127 (N.D. Tex. 1992). There is no absolute requirement that the depositions of corporations through their agents occur at the corporation's principle place of business. *Socodis-Bocchi Trading*, 1992 U.S. Dist. LEXIS 9001, at *7.

Federal courts have repeatedly ordered foreign corporate defendants to produce their representatives in the United States rather than in the defendant's country, citing a variety of practical reasons. In *Rosenruist-Gestao E Servicos LDA v. Virgin Enters.*, 511 F.3d 437 (4th Cir. 2007), for instance, the Fourth Circuit ordered compliance with a subpoena issued by the Eastern District of Virginia pursuant to a Rule 30(b)(6) notice in a Trademark Trial and Appeal Board ("TTAB") proceeding. *Id*. at 439. In doing so, the court stated that "[f]oreign corporations that are subject to the personal jurisdiction of a district court can be and often are required to produce officers, directors, or managing agents – regardless of where such witnesses personally reside – in the United States for a Rule 30(b)(6) deposition," and held that the defendant must produce its designees. *Id.* at 446 (citing *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000); *In re Honda*, 168 F.R.D. at 540-42).

Likewise, in *In re Vitamins Antitrust Litigation*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 24025 (D.D.C. 2001), the court compelled a foreign corporation to produce its officers, managing agents and directors to be deposed in Washington D.C., or some other U.S. city. The court adopted the special master's application of four factors in determining where to order the depositions to occur: (1) expense and burden; (2) supervision of the depositions; (3) legal and procedural impediments in Japan, Germany and France; and (4) potential affront to sovereignty. *Id.* at *31. The court adopted the special master's conclusion that there were "efficiencies to be gained" by having the depositions in Washington, D.C. due to the number of defense attorneys with nearby offices and travel time. *Id*. at *32. The court also

adopted the special master's conclusion that the depositions should occur in Washington, D.C. because the litigation was under a time constraint due to the amount of delay that already had occurred, and because of the anticipated need for judicial intervention. *Id.* at *32-33. Lastly, the court adopted the special master's conclusion that "significant legal and procedural impediments do exist which may hamper taking the depositions under the Federal Rules" if the depositions were held abroad. *Id.* at *33.

In *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000), the court granted a motion to compel a foreign company to produce Japanese deponents in Indiana or Chicago, not in Japan. *Id.* at 336-38. The court explained that if the depositions occurred in Japan, the court's authority would be compromised because compelling discovery on foreign soil creates issues of foreign judicial sovereignty, whereas compelling discovery on U.S. soil does not create this issue, and there likely would be difficulties in resolving discovery disputes that might arise without a federal judge in Japan. *Id.* at 336 (citing *In re Honda* 168 F.R.D. at 538).

In *Triple Crown America, Inc. v. Biosynth AG*, Civ. Action No. 96-7476, 1998 U.S. Dist. LEXIS 6117 (E.D. Pa. 1998), the court permitted the plaintiff to depose the foreign corporate defendant's agents in the forum district. *Id.* at *11. The court found that the most cost-effective means of furthering the intent of the Rules of Civil Procedure was to require the plaintiff to reimburse the defendant for reasonable costs of the witnesses' travel and lodging. *Id.* at *11-13.

Virtually all of the considerations enunciated in these cases are present here, and weigh in favor of requiring the depositions of Kolon's managing agents to occur in this district. Kolon is subject to this Court's jurisdiction. Conducting the depositions here would be much less expensive and burdensome than requiring counsel for both parties (along with significant volumes of documents and preparation materials) to travel to Korea. Moreover, if the

depositions were in Korea, the Court's sovereignty – which embraces its ability to supervise discovery and intervene if necessary – would be seriously compromised, if not rendered non-existent, thus increasing the risk that the goals of efficient and effective discovery that the Federal Rules of Civil Procedure seek to advance would not be realized.  Lastly, with respect to the potential costs to Kolon or the deponents, DuPont already has offered to cover or share the deponents' reasonable costs of travel to and lodging in the United States.  That offer was refused, but DuPont remains willing to cover such reasonable costs if the Court deems it appropriate.

## CONCLUSION

For the above reasons, DuPont respectfully requests that the Court grant its Motion to Compel Depositions of Managing Agents of Defendant Kolon Industries, Inc., and order the depositions of the eight identified individuals to be taken in the Eastern District of Virginia.

Respectfully submitted,

E. I. du Pont de Nemours and Company

_____/s/ Rodney A. Satterwhite_____
By Counsel

Rodney A. Satterwhite (VSB # 32907)
rsatterwhite@mcguirewoods.com
Brian C. Riopelle (VSB #36454)
briopelle@mcguirewoods.com
Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Thomas M. Beshere (VSB #41279)
tbeshere@mcguirewoods.com
Robyn Suzanne Gray (VSB #45418)
rgray@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel:  804-775-1000
Fax:  804-775-1061

– and –

Kent A. Gardiner (*pro hac vice*)
Shari Ross Lahlou (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-624-2500
Fax:  202-628-5116
kgardiner@crowell.com
slahlou@crowell.com

**Attorneys for E. I. du Pont de Nemours and Company**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2010, I served the foregoing via the Court's CM/ECF System, which will send a notice of electronic filing to the following counsel:

Dana J. Finberg (VSB # 34977)
Rhodes B. Ritenour (VSB # 71406)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 916-7109
(804) 916-7219 (Fax)
dana.finberg@leclairryan.com
rhodes.ritenour@leclairryan.com

Scott M. Flicker (*pro hac vice*)
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700
(202) 551-1705 (Fax)
scottflicker@paulhastings.com

Victoria A. Cundiff
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Park Avenue Tower
75 E. 55th Street
New York, New York  10022
(212) 318-6000
(212) 319-4090 (Fax)
victoriacundiff@paulhastings.com

Jeffrey G. Randall
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
1117 S. California Avenue
Palo Alto, California  94304
(650) 320-1850
(650) 320-1950 (Fax)
jeffreyrandall@paulhastings.com

***Attorneys for Kolon Industries, Inc.***

Pursuant to the Court's instructions during the April 1, 2010 hearing, I further certify that I served a copy of the foregoing, but not any exhibits designated "Confidential" or "Attorneys' Eyes Only," by first-class mail, postage prepaid, on the following counsel for the eight individuals identified herein:

W. Neil Eggleston
Debevoise & Plimpton LLP
555 13th Street, NW
Washington, DC   20004
Tel:  202-383-8140
Fax:  202-383-8188
wneggleston@debevoise.com

**Counsel for In Sik Han**

William E. Lawler, III
Vinson & Elkins LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, DC   20004-1008
Tel:  202-639-6500
Fax:  202-639-6604
wlawler@velaw.com

**Counsel for Juwan Kim**

Samuel J. Buffone
Buckley Sandler LLP
1250 24th Street, NW
Suite 700
Washington, DC   20037
Tel:  202-347-7409
sbuffone@buckleysandler.com

**Counsel for Jong Hyun Choi**

Peter S. Spivack
Hogan & Hartson LLP
Columbia Square
555 13th Street, NW
Washington, DC   20004
Tel:  202-637-5600
Fax:  202-637-5910
psspivack@hhlaw.com

**Counsel for Dae Sik Kang**

Nicholas C. Harbist
Blank Rome LLP
301 Carnegie Center, 3rd Floor
Princeton, New Jersey   08540
Tel:  609-750-2991
Fax:  609-750-7701
harbist@blankrome.com

**Counsel for Kyeong Hwan Rho**

Kenneth Wainstein
O'Melveny & Myers LLP
1625 Eye St., NW
Washington, DC   20006-4001
Tel:  202-383-5300
Fax:  202-383-5414
kwainstein@omm.com

**Counsel for Young Soo Seo**

_____/s/ Rodney A. Satterwhite_____
Rodney A. Satterwhite (VSB # 32907)
rsatterwhite@mcguirewoods.com
Brian C. Riopelle (VSB #36454)
briopelle@mcguirewoods.com
Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Thomas M. Beshere (VSB #41279)
tbeshere@mcguirewoods.com
Robyn Suzanne Gray (VSB #45418)
rgray@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel:  804-775-1000
Fax:  804-775-1061