CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

E. I. du Pont de Nemours and Company,   )
                                        )
    Plaintiff,       )
                                        )
v.                                      )   Civil Action No. 3:09-cv-00058
                                        )
Kolon Industries, Inc.,                 )
                                        )
    Defendant.       )
_____ )

## MEMORANDUM IN SUPPORT OF KOLON'S MOTION PURSUANT TO FED. R. CIV. P. 37 TO STRIKE DUPONT'S TRADE SECRET CLAIMS FOR FAILURE TO COMPLY WITH DISCOVERY OBLIGATIONS

Defendant Kolon Industries, Inc. files this Memorandum in Support of its Motion Pursuant to Fed. R. Civ. P. 37 to Strike Plaintiff E.I. du Pont de Nemours and Company's Trade Secret Claims for Failure to Comply with Discovery Obligations. DuPont has failed to provide adequate discovery responses regarding the trade secrets it alleges were misappropriated by Kolon, and has violated several Orders of this Court directing DuPont to provide that information. DuPont's litigation conduct has irreparably prejudiced Kolon, and has corrupted the judicial process, to the degree that discovery sanctions are both warranted and necessary to prevent a violation of Kolon's due process rights in this case.

## I.    INTRODUCTION

Less than seven weeks from the close of discovery, and four months before the final pre-trial conference in this action, DuPont continues to hide the ball on precisely

CONFIDENTIAL – ATTORNEYS' EYES ONLY

what constitutes the "trade secrets and confidential information" on which it bases its claims of misappropriation against defendant Kolon Industries, Inc. As it has done from the outset of discovery, DuPont has asserted that vast "categories" of information about its aramid fiber production and sales are at issue in this case, without making any serious effort to distinguish the purported "trade secret and confidential information" from the enormous volumes of public literature and without even verifying what, if any, of the asserted information meets the definition of "trade secret" under the Virginia Uniform Trade Secrets Act ("VUTSA") in that it is: (i) secret; (ii) valuable because of its secrecy; and (iii) subject to reasonable measures to maintain it as such. Va. Code § 59.1-336.[1]

Kolon and this Court have tried, repeatedly and unsuccessfully, to compel DuPont to identify explicitly the information that qualifies as "trade secret" and forms the basis of its claims. Starting with overbroad (and effectively useless) interrogatory responses, and culminating in sweeping, but unsupported, assertions in its expert reports, DuPont has, to date, maintained that "it's all trade secrets." However, in recent depositions conducted pursuant to Fed. R. Civ. P. 30(b)(6), DuPont's key witnesses designated to identify the actual trade secrets and the manner in which they were protected have conceded that DuPont has made *no effort* to separate the public from the confidential, or to verify that any of the information over which it claims trade secret protection in fact qualifies as

---

[1] To date, DuPont has identified no specific information that it asserts solely as "confidential information" rather than "trade secret." DuPont has failed to take reasonable steps to determine whether any of the information it has identified as purported "trade secrets and confidential information" has been publicly disclosed. Because confidentiality is the *sine qua non* of confidential information, the arguments asserted and sanctions sought in this memorandum apply equally to DuPont's claims of "confidential information," and all references to DuPont's purported "trade secrets" apply to its claims of "confidential information."

CONFIDENTIAL – ATTORNEYS' EYES ONLY

such under the VUTSA. Specifically, DuPont's 30(b)(6) witnesses have revealed that DuPont:

➢                                                       *See* Exh. 1 (collecting
               **REDACTED**

testimony).[2]

➢

      *See* Exh. 2 (collecting testimony).      **REDACTED**

➢

        *See* Exh. 3 (collecting testimony).

➢

*See* Exh. 4 (collecting testimony).

➢              **REDACTED**

    *See* Exh. 5 (collecting testimony).

In summary, more than a year after the complaint was filed, more than ten months after DuPont received Kolon's first production of documents and more than nine months after DuPont first served answers to Kolon's first set of interrogatories seeking a precise identification of the trade secrets being asserted in this case, DuPont's 30(b)(6) witnesses have now conceded that DuPont failed to undertake the basic diligence and inquiry required to assert, much less establish, a trade secret claim under the VUTSA. Had DuPont only asked the same questions of its 30(b)(6) witnesses prior to preparing its interrogatory responses that Kolon did after receiving them, DuPont presumably never

---

[2] For the Court's convenience, Kolon submits with this Motion Exhs. 1-5, excerpting testimony from DuPont's 30(b)(6) witnesses with concession after concession detailing the extent to which DuPont has failed to comply with its discovery obligation and the Court's orders to specify its

CONFIDENTIAL – ATTORNEYS' EYES ONLY

would have wasted the parties' and the Court's time and resources on sweeping, unfounded and unsupportable trade secret claims.

As a result of DuPont's failure to meet its basic discovery obligations to identify legitimate and supportable trade secrets to determine the scope of this litigation, Kolon has been severely and irreparably prejudiced, in violation of its due process rights. DuPont's actions have effectively reversed the burden of proof, requiring Kolon to try to ferret out, through exhaustive searching of public literature and hours of deposition testimony, precisely what aspects of DuPont's aramid fiber production and marketing information might be at issue. DuPont has compounded the prejudice by producing a 169-page "trade secrets" expert report that adds new alleged trade secrets not previously disclosed by DuPont and that continues the offensive "including, but not limited to" approach of DuPont's prior discovery responses by incorporating "by reference" multi-page documents without specifying each of the alleged "trade secrets" that are being asserted.[3]  Kolon now faces the further burden of serving expert reports by June 28, 2010 and is left with less than seven weeks to address the morass of information that DuPont has asserted without any reasonable effort to verify that what it is alleging as "trade secrets" even meets the threshold requirements under the VUTSA.  DuPont's actions have irreparably prejudiced Kolon and subverted the judicial process, warranting an order

---

trade secrets.  Kolon is prepared immediately to provide the Court with the entire transcripts upon request.

[3] Expert Report of Michael Jaffe, PhD (May 28, 2010) (the "Jaffe Report").  DuPont has filed two other expert reports that further obscure the claims by failing to specify *any* trade secrets on which the opinions are based.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

of the Court, pursuant to Fed. R. Civ. P. 37, striking DuPont's trade secret claims as set forth in its Second Supplemental Responses to Kolon's First Set of Interrogatories.[4]

## II.   FACTUAL BACKGROUND

### A.   DuPont's Claims

In its Complaint, DuPont alleged that Kolon had misappropriated trade secrets relating to its KEVLAR® aramid fiber product.  The Complaint broadly referred to "trade secrets" about the "Company's Kevlar® aramid fiber" allegedly obtained from DuPont's former employee Mr. Mitchell.  Complt. ¶¶ 1, 2.  DuPont peppered generic and conclusory statements about its alleged trade secrets throughout the complaint, *e.g..*, stating that DuPont's "information about KEVLAR® aramid products is confidential, proprietary, and constitutes trade secrets within the meaning of the Virginia Uniform Trade Secrets Act." Complt. ¶ 11; *see also* ¶¶ 24, 34, 54, 55.

From the outset, Kolon has diligently attempted to first convince, and then compel, DuPont to identify with particularity the trade secrets it alleges were misappropriated, and to explain how the purported trade secrets were subject to reasonable measures of protection, if any.  This is acutely important here, because aramid fiber is a mature – even aged – technology much of which is not even confidential, much less a "trade secret," and DuPont's generalized claims are asserted against a long history and enormous volume of public disclosures embodied in tens of thousands of patents and

---

[4] Exhibit 6 to this Motion identifies the specific paragraph numbers of the Jaffe Report that seek to introduce new material and documents not identified in DuPont's Court-ordered interrogatory responses identifying the purported trade secrets, or that simply assert that entire documents or sections of documents constitute "trade secrets" without specifically identifying or discussing the alleged trade secrets therein.  Pursuant to Fed. R. Civ. P. 37, DuPont's experts should be precluded from introducing or relying on this previously undisclosed material.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

technical publications spanning almost half a century, a period in which thousands of current and former employees, contractors, suppliers and plant visitors have received and retained unprotected disclosures of technical data.  The public domain is so saturated with information that one of DuPont's principal inventors, long retired, testified that DuPont's basic technology for manufacturing aramid fiber is fully disclosed in patents and that he possesses no knowledge about aramid fiber that can be considered valuable as his knowledge was obsolete.[5]

This is not through inadvertence – since the early days of aramid fiber development, DuPont's corporate policy has been to patent or publish virtually all information about aramid fiber production deemed to have commercial value.[6]  As a patentee and one of the companies responsible for creating the vast public literature on aramid fiber technology – not to mention as the plaintiff in this lawsuit – DuPont has a special obligation to ensure that its patents were supported by complete disclosures and that it does not now recklessly claim as "trade secret" information that it has dedicated to the public in return for now-expired patent monopolies.

Despite Kolon's focused requests seeking discoverable information going to the heart of DuPont's trade secret claims, DuPont has come forward with evasive generalities – and outright falsehoods -- that have turned the discovery process into a shell-game.  Kolon has repeatedly been required to seek the Court's assistance in this regard, resulting

---

[5] Exh. 7, H. Yang Depo. Tr. at 161:19-161:22 & 169:7-171:19    **REDACTED**
                                    & 229:21-230:23
               **REDACTED**

[6] Exhs. 8 and 9, N. Carroll exhibits 17 and 18; Exh. 10, N. Carroll Depo. Tr. 419:6-440:25 (generally).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

in two orders directing DuPont to disclose and identify the specific trade secrets at issue. Even when this Court grudgingly gave DuPont a huge "assist" – by ordering Kolon first to proffer all potentially non-public DuPont information obtained by Kolon between January 2006 and August 2008 before then directing DuPont to identify what, if any, of this information is "trade secret" – DuPont refused to do so.

Litigants are not free to choose which Federal Rules they will follow and which they will disregard, and they certainly cannot choose which Court orders to follow and which to ignore. That is what DuPont has done here, to the irreparable prejudice of Kolon. DuPont's allegations of victimhood do not relieve it of any of its obligations as a litigant in Federal Court, and its failure to play by the rules must have consequences if those rules are to have any effect. As this Court has recognized, Fed. R. Civ. P. 37 contemplates that a failure to obey an order to provide or permit discovery may result in orders that "designated facts be taken as established," "striking pleadings in whole or in part," or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *See Rambus, Inc. v. Infineon Technologies AG*, 145 F. Supp. 2d 721 (E.D. Va. 2001) (Payne, J.); *see also* Fed. R. Civ. P. 37 (b)(2)(A)(i-iii). Here, DuPont's failure to comply with its obligation to identify with particularity the trade secrets it alleges were misappropriated, despite two orders requiring it to do so, justifies striking DuPont's trade secret claims from the litigation.[7]

---

[7] When, Kolon advised the Court, at a hearing on April 1, 2010, that DuPont's initial 30(b)(6) witness (Earl Guertin) was unable to distinguish between what in DuPont's interrogatory responses was public information and what was trade secret information, the Court threatened DuPont with default. Exh. 11 at 15:3-15:20.  On May 6, 2010, the Court again admonished that if

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**B.      DuPont's Inadequate Response to Interrogatories**

**1.      Kolon's Initial Production of Documents**

On August 11, 2009, a month and a half before formal document productions

were exchanged pursuant to discovery requests, Kolon made its first production of

documents to DuPont, including materials relative to Mr. Mitchell (the "Mitchell

Documents"). On August 18, 2009, Kolon served DuPont with its first set of

interrogatories, which included a request seeking a "detailed description of such trade

secret or confidential or proprietary information," at issue in the case, as well as "[a]ny

and all efforts by DuPont to maintain the confidentiality of, restrict access to, or

otherwise protect such trade secret or confidential or proprietary information." Exh. 13,

at Interrogatories 1(a) and (d). These requests were two of 13 subparts of an

interrogatory designed to identify the trade secrets at issue in the case, as well as

additional information fundamental to DuPont's claims of misappropriation under the

VUTSA. *Id.*[8]

---

DuPont is seeking to claim as trade secrets information that may have been shared with third parties under contracts with expired (or non-existent) confidentiality provisions, without conducting an investigation as to what information might have lost confidentiality as a result, the proper remedy is default. Exh. 12, at 19:17-22:1.

[8] The plaintiff in a trade secret case bears the burden of establishing these fundamental elements. *Microstrategy, Inc. v. Li*, 601 S.E.2d 580, 590 (Va. 2004). The plaintiff must first identify the alleged trade secrets with sufficient particularity before subjecting a defendant to the expense and burden of discovery. *Gentex Corp. v. Sutter*, 2009 WL 467313 (M.D. Pa. Feb. 23, 2009) (recognizing "the *requirement* that Plaintiff identify the trade secrets with reasonable particularity") (emphasis added). Rule 11 of the Federal Rules of Civil Procedure dictates that, prior to filing a complaint alleging trade secret misappropriation, a plaintiff must conduct a reasonably sufficient investigation to confirm that the information upon which suit is brought meets the basic qualifications of a trade secret, namely that it is both secret and subject to reasonable measures of protection. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (citations omitted). Despite strenuous efforts by Kolon and the Court to compel DuPont to specify its alleged trade secrets, it is now obvious that DuPont has never discharged any of these obligations in this case.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

### 2.    DuPont's First Trade Secret Identification And The First Discovery Order

On September 25, 2009, DuPont "answered" Kolon's trade secret interrogatories by listing 14 broad categories of information as the alleged trade secrets that it claimed were misappropriated by Kolon. Exh. 14, at p. 9 ¶ 1(m). On October 2, 2009, Kolon informed DuPont that its interrogatory response inadequately identified its asserted trade secrets, and noted that DuPont was already in possession of sufficient information (the Mitchell Documents) to identify the specifics of each trade secret. Exh. 15. Kolon also informed DuPont that its use of "placeholder" language in response to several of the subparts of the interrogatory was both vague and inadequate. *Id.* Shortly thereafter, at an October 5, 2009 "meet and confer," DuPont agreed to make a more specific identification of its trade secrets in the form of a supplemental response. When DuPont failed to provide the promised supplemental response for more than a month, Kolon wrote to DuPont on November 17, 2009 to follow up. Exh. 16. On November 24, 2009, at Kolon's request, the Court ordered DuPont to provide a "supplementation of its trade secret misappropriation allegations to Kolon *that identifies, to the fullest extent known by DuPont, the specific trade secrets* that Kolon is alleged to have misappropriated." D.I. 92 (the "First Discovery Order") (emphasis added).

### 3.    DuPont's First Supplemental Trade Secret Identification

On December 1, 2009, in response to the First Discovery Order, DuPont provided its First Supplemental Interrogatory Responses. Exh. 17

**REDACTED**

---

9

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

### 4.    The Second Discovery Orders

Kolon's requests were met with silence.  Kolon again asked that DuPont provide specific descriptions for its alleged misappropriated trade secrets during another "meet and confer" call on December 23, 2009.  DuPont again refused to do so.  After there was no response to Kolon's January 13, 2010 letter requesting the same,[10] and in light of DuPont's near-absolute refusal to comply with its discovery obligations and the resulting and mounting prejudice to its defense, on January 20, 2010, Kolon again sought relief from the Court.  Exh. 21

**REDACTED**

[11] The matter was heard on February 2, 2010.  Exh. 22.  At that time, DuPont's counsel acknowledged that case law required DuPont, as the plaintiff in a trade secret case, to identify its trade secrets with "reasonable particularity," but argued that they had "complied" with this obligation.  *Id.* at 25:12-19.  DuPont's counsel stated that there "is no disagreement on DuPont's side that we are going to have to define the trade secrets with specificity as we get closer to trial in this case." *Id.* at 26:3-6.  He then represented that DuPont "continue[s] to work on trying to hone down the trade secrets." *Id.* at 26:15-16.

---

[10] Exh. 20.

[11]

**REDACTED**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

In an effort to cut through the delay and ambiguity (resulting directly from the manner in which DuPont was litigating its claims), the Court ordered Kolon to identify for DuPont all nonpublic information pertaining to Kevlar properties or production processes obtained from Mitchell or any other source from the period January 2006 to August 2008, so that DuPont would "be in a position to identify which of that information is the trade secrets it contends that were taken." *Id.* at 32:11-13. The Court ordered this believing that the parties would "all be better able to tell what DuPont thinks is a trade secret." *Id.* at 40:16-18. Through two Orders entered after the February 2 hearing, DuPont was directed to provide a description of the information it believed was a trade secret (several weeks after its receipt of the information Kolon was ordered to provide to DuPont). D.I. 126 and 134 (collectively the "Second Discovery Order").

C.   **DuPont's Second Supplemental Trade Secret Identification**

On March 16, 2010, with the enormous benefit of Kolon's identification of the potential universe of information that DuPont might contend contains trade secrets, DuPont filed its Second Supplemental Interrogatory Response. Exh. 23. However, in flat violation of Court's Second Discovery Order,

# REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REDACTED**

III.  **DUPONT'S 30(B)(6) TESTIMONY REGARDING IDENTIFICATION OF TRADE SECRETS**

In the Second Discovery Order, the Court took one additional step in an effort to force DuPont to remedy its failure to adequately specify its trade secrets – the Court directed DuPont to produce witnesses pursuant to Fed. R. Civ. P. 30(b)(6) to identify precisely what information in the interrogatory responses submitted by DuPont were trade secrets allegedly misappropriated by Kolon.  D.I. 126 at 2 ¶4.  Kolon also served a notice on DuPont for a deposition on the specific protections and safeguards taken by DuPont to designate and preserve the confidentiality of the information asserted in the interrogatory responses as trade secrets.

Kolon began deposing DuPont's Fed. R. Civ. P. 30(b)(6) designees on the identification of trade secrets on March 30, 2010.  The most recent took place on May 14, 2010.  From this testimony, it is obvious that DuPont had done virtually nothing to try to identify what information *if any* satisfied the requirements of the VUTSA before filing its complaint, before responding to Kolon's interrogatories and the Court's orders, or even as of the time of the depositions.

---

12

**REDACTED**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

1.   **Nora Carroll's Testimony Establishes DuPont's Failure to Conduct a Basis Inquiry In Support of Its Claims.**

In its interrogatories, Kolon asked DuPont to provide, as to each "trade secret" alleged by DuPont to have been misappropriated by Kolon, "[a]ny and all efforts by DuPont to maintain the confidentiality of, restrict access to, or otherwise protect such trade secret or confidential or proprietary information." Exh. 18, at ¶ 1(d). *For each and every category* of purported trade secret asserted by DuPont in its interrogatory responses,

**REDACTED**

DuPont made no effort, however, to respond to the interrogatory by providing what, if any, of these measures were actually applied to the alleged trade secrets in this case. We now know why.

**REDACTED**

Exh. 24.

Along with identification of the precise information at issue, there is no more fundamental inquiry in this trade secrets case. DuPont designated as its 30(b)(6) witness on these critical topics

**REDACTED**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

In page after page of testimony, Ms. Carroll simply

# REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

---
13

REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

2.      Other 30(b)(6) Testimony

# REDACTED

---

14

REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

DuPont's wholesale failure to verify that any of the information it asserts in this case qualifies for trade secret protection has seriously prejudiced Kolon. By "dumping" into its interrogatory response (and now its expert reports) vast amounts of information and documents without any idea whether that information is in fact confidential and subject to reasonable safeguards, DuPont has improperly shifted the burden of proof, forcing Kolon to spend millions of dollars and thousands of hours trying to prove a negative.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IV.   ARGUMENT

### A.   It Is DuPont's Burden To Establish The Fundamental Elements Of A Trade Secret Under the VUTSA.

As the plaintiff in an action for misappropriation of trade secrets, DuPont bears the burden to do "more than merely allege that it had a 'secret.'" *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (applying the Maryland Uniform Trade Secrets Act, which is substantially identical to the Virginia Act). As the Fourth Circuit stated in *Trandes*, a trade secret plaintiff has to "describe the subject matter of its alleged trade secrets in sufficient detail *to establish each element of a trade secret*." *Id.* (emphasis added). Under the VUTSA, a trade secret consists of "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code Ann. § 59.1-336 (the VUTSA).

Information disclosed to the public cannot, by definition, be a trade secret under the VUTSA (nor can it be confidential under the common law). *MicroStrategy Inc. v. Li*, 268 Va. 249, 265 (Va. 2004). Sixteen months into this case, DuPont has failed even to take the basic steps to verify that the information it asserts as "trade secrets" has been kept confidential and has been subject to measures to maintain its secrecy.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

### B. Sanctions Under Rule 37

"Rule 37 of the Federal Rules of Civil Procedure authorizes a district court to impose sanctions for discovery-related misconduct." *Willis v. Marshall*, 275 Fed. Appx. 227, 236 (4th Cir. 2008). A party that provides an evasive or incomplete response to an interrogatory submitted under Rule 33 can be sanctioned under Rule 37. *See* Rule 37(a)(3)(B)(iii) & Rule 37(a)(4) & Rule 37(d)(3). A party that fails to obey a court's order relating to answering interrogatories can also be sanctioned under Rule 37(b). A court has broad discretion to determine the sufficiency of a party's interrogatory response. Generally speaking courts will examine whether the answer is "responsive, full, complete and unevasive." *MGP Ingredients, Inc. v. Mars, Inc.*, 2007 WL 3274800, at *5 (D. Kan. 2007) (granting motion to compel answers to interrogatories related to efforts to maintain secrecy of trade secrets defendant allegedly misappropriated).

Rule 37(b)(2)(A) authorizes the court to impose a variety of sanctions including: (1) directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims, (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence, (3) striking pleadings in whole or in part, (4) staying further proceedings until the order is obeyed, (5) dismissing the action or proceeding in whole or in part, (6) rendering a default judgment against the disobedient party, or (7) treating as contempt of court the failure to obey any order exhibit an order to submit to a physical or mental examination. Rule 37(d)(3) provides that instead of or in addition to these enumerated sanctions, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including

CONFIDENTIAL – ATTORNEYS' EYES ONLY

attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

The Fourth Circuit has on several occasions visited the question of when dismissal of claims is the appropriate sanction for a failure to provide discovery. It traditionally employs a four-part test for determining whether dismissal is a proper sanction under Rule 37:

> (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-05 (4th Cir. 1977)); *see also Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc). As explained below, DuPont's conduct in failing to adequately identify its trade secrets meets the criteria for dismissal of its trade secret claims as a sanction under Rule 37.

### 1.    DuPont Has Acted in Bad Faith

Defendants in trade secret cases routinely propound interrogatories to determine whether the information at issue meets the definition of trade secrets and to determine whether the plaintiff can establish each element of a trade secret as to that information. This is a legitimate avenue of inquiry, and one that Kolon embarked upon very early in this litigation. DuPont has not just failed to comply with its obligations – it has flouted them. DuPont's stubborn resistance continued (and in fact continues unabated to this

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

day) despite several orders by the Court directing it to provide complete and non-evasive responses to interrogatories. Both the Supreme Court and the Fourth Circuit have sustained "bad faith" findings where a party willfully and repeatedly failed to comply with specific court orders. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 640-43 (1976); *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians,* 155 F.3d 500, 504 (4th Cir. 1998). *See also Powers v. Germaine,* 2008 U.S. Dist. LEXIS 26685, at *12 (E.D.N.C. Jan. 10, 2008) (finding bad faith and dismissing claims where "plaintiff willfully disregarded not one but two specific orders regarding his discovery misconduct").

Kolon's requests that DuPont specify the alleged trade secrets were met early on by protestations that it was unable to specifically identify the trade secrets before it received discovery from Kolon enabling it to discern what information was "misappropriated." These protestations are not consistent with the law, and, in any event should have been rendered moot by: (1) Kolon's first production on August 11, 2009, of the Mitchell Documents; and (2) Kolon's court-ordered production, in February 2010, of all other potentially non-public DuPont information in its possession from the relevant time period. DuPont has long been in a position to parse segregated information to identify each and every alleged trade secret contained therein, as well as to provide the information regarding each such alleged trade secret relevant to its proper characterization under the VUTSA.

Instead of doing what it was obligated to do under the Federal Rules and this Court's orders, DuPont crafted a 60-page identification of trade secrets that created the illusion of detail (and therefore of compliance with this Court's directives), but which

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Kolon's strenuous discovery efforts have revealed (and the due diligence DuPont should have conducted would have shown) is replete with information that does not belong in a trade secrets action at all. By itself, this conduct amply demonstrates DuPont's bad faith.

DuPont's bad faith was laid bare in the deposition testimony of its Fed. R. Civ. P. 30(b)(6) corporate designees. If there is a consistent theme in the deposition testimony, it is that DuPont has not undertaken a meaningful investigation of (a) what its trade secrets are; and (b) whether any factual basis exists for asserting trade secret status under the VUTSA. This is an investigation that DuPont was obligated to undertake prior to filing the complaint to satisfy its obligations under Fed. R. Civ. P. 11, and certainly prior to responding to Kolon's interrogatories and the Court's orders. The fact that DuPont continues to press these claims without having done the necessary investigation in the ensuing sixteen months amply demonstrates bad faith and an utter disregard for its obligations as a litigant in federal court.

Courts confronted by similar disobedience have not hesitated to impose sanctions under Rule 37. For example, in *MicroStrategy v. Bus. Objects*, Judge Friedman (of the Norfolk Division of this Court) barred the plaintiff from asserting damage theories that had not been disclosed in answers to interrogatories, despite supplementations over the course of the litigation, citing the prejudice to Business Objects from this conduct. This decision was upheld as a proper application of Rule 37 on appeal by the Court of Appeals for the Federal Circuit. *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1356-57 (Fed. Cir. 2005).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Similarly, in *Litton Sys., Inc. v. Sundstrand Corp.,* 750 F.2d 952 (Fed. Cir. 1984), the trial court had twice ordered a plaintiff to identify its trade secrets but the trade secrets had only been identified as general categories and by producing boxes of documents that contained still unidentified trade secrets. The district court ruled that the plaintiff had "failed to carry its basic burden of pleading and showing facts that establish the existence of subject matter capable of protection as a trade secret" and denied plaintiff's request for an injunction. *Id.* at 958. The Federal Circuit upheld these rulings noting that the "district court was at full liberty to draw adverse inferences from what it saw as [the trade secret plaintiff's] failure to list its thousands of claimed secrets and to credit, for the purposes of the motion, [defendant's] showing of a likelihood that what Litton was calling trade secrets was more likely to prove public knowledge at trial." *Id.* at 958.

Similarly, in *Cromaglass Corp. v. Ferm,* 344 F. Supp. 924 (M.D. Pa. 1972), *appeal dismissed,* 500 F.2d 601 (3d Cir. 1974), the district court refused to countenance conduct similar to that engaged in by DuPont. As explained by the district court in language that could be readily applied here: "Now more than a year after the interrogatories were filed and about six weeks before the date set for trial, Defendants are not much better informed regarding the allegedly misappropriated trade secrets than they were at the commencement of this action, and have been deprived of an adequate opportunity to prepare their defense." *Id.* at 927. The district court imposed sanctions under Rule 37 for failure to answer interrogatories targeted at identity of trade secrets, including: (1) a finding that defendant's ex-employee acquired no confidential or specialized knowledge while at previous job; (2) a finding that no confidential or specialized knowledge or information of the plaintiff was involved in the defendant's

CONFIDENTIAL – ATTORNEYS' EYES ONLY

practices; (3) a finding that no confidential or specialized knowledge or information was involved in the sale of the equipment by the defendant to which the plaintiff has any right; (4) limiting the type of evidence the plaintiff could introduce in connection with the portion of the complaint relating to the count that defendants had utilized confidential information of the plaintiff; and (5) imposition of fines against plaintiff and plaintiff's attorney under civil contempt. *Id.* at 928-29.

## 2. Kolon Has Been Irreparably Prejudiced

The prejudice to Kolon from DuPont's failure to adequately identify its trade secrets is obvious, and irreparable. As the Fourth Circuit made clear in *Trandes*, it is the obligation of a trade secrets plaintiff to identify each of its trade secrets, and to do so in a manner that would allow it to establish each element of a trade secret. 996 F.2d at 661. Without such an identification, a defendant is effectively blocked from formulating a defense and a plaintiff can get away with what DuPont is trying to do here – a shifting of the burden of proof, forcing Kolon to prove a negative. DuPont arrogantly believes that it can assert that its entire process for the production of aramid fibers is a trade secret, despite voluminous evidence to the contrary in the form of DuPont's own expired patents and expired confidentiality clauses in contracts with third parties, without having to identify any specifics.

In less than three weeks, Kolon must serve its expert reports attempting to rebut DuPont's. However, it is being forced to do so without necessary information regarding the alleged trade secrets that DuPont should have provided many months ago. It should not be incumbent upon Kolon, in order to defend itself, to dissect DuPont's aramid fiber production processes to parse what was previously disclosed to the public in patents and

CONFIDENTIAL – ATTORNEYS' EYES ONLY

otherwise.  In a case such as this, where it is beyond dispute that a significant percentage of the so-called "trade secrets" were disclosed by DuPont, DuPont cannot be allowed to escape its obligation and burden under the VUTSA of identifying the specific trade secrets and the justification for that characterization.

### 3.    DuPont's Behavior Must Be Deterred

DuPont's disregard of its obligations under the federal rules governing discovery is sufficient, in and of itself, to justify the sanction of an order barring it from proceeding with its trade secrets claims.  However, DuPont's behavior is worse than that, as it has ignored several orders by the Court, entered in an effort to impose a workable schedule for the progress of this case to trial, directing it to provide an adequate identification of its trade secrets.  This behavior undermines the judicial process and the authority of this Court:

> [I]f scheduling orders are to serve any meaningful purpose, it is a proper exercise of [the Court's] discretion to prevent trial by ambush and to ensure that all parties have an ample opportunity to prepare their case for the scheduled trial date.  Responsible case management by a Court requires no less.

*ADC Telecomm., Inc. v. Thomas & Betts Corp.*, 2001 WL 1381098, at *4-5 (D. Minn. Oct. 18, 2001).

A "trial by ambush" is precisely what DuPont has attempted to engineer here, by steadfastly refusing to identify the trade secrets it possesses and alleges were misappropriated by Kolon.  In view of the procedural posture of the case, with a looming deadline for Kolon's expert reports and discovery cut-offs, and in light of the considerable latitude already granted DuPont with respect to the timing of its

CONFIDENTIAL – ATTORNEYS' EYES ONLY

identification of the asserted trade secrets, it is appropriate to deny DuPont the ability to proceed with its trade secret claims as a sanction for its dilatory discovery conduct.

Kolon submits that the Court should consider both specific deterrence against this plaintiff, and the need for general deterrence against similar conduct by all litigants. *See Nat'l Hockey League,* 427 U.S. at 643. This Court is not confronted here by the negligent or inadvertent conduct of an unsophisticated litigant unfamiliar with the complexities of federal court litigation. This behavior is exhibited by a well-represented multi-national corporation with vast resources. DuPont cannot claim that it was unduly burdened by Kolon's legitimate discovery requests and this Court's orders.

### 4.    No Lesser Sanction Will Suffice

No sanction short of dismissal of DuPont's trade secret claims will suffice to cure the prejudice to Kolon of DuPont's misconduct. To permit DuPont leave to attempt to cure the defects in its identification of trade secrets would set in motion a chain of events that would disrupt completely the progress of this case to trial, at great additional expense to Kolon and burden to the Court. First, DuPont would have to develop an adequate identification of trade secrets, even where it has become readily apparent that no one at or on behalf of DuPont has done the investigation necessary to determine the existence of any specific trade secrets. Second, the reports and opinions of DuPont's experts – which are based on DuPont's improper blanket assertion that its entire process for the production of aramid fibers qualifies as a trade secret – would have to be completely revised. Third, depositions of all of DuPont's Fed. R. Civ. P. 30(b)(6) witnesses would have to be taken again, so that they could be examined on the identification that should have been provided in the first instance. Fourth, Kolon's experts would have to adjust

CONFIDENTIAL – ATTORNEYS' EYES ONLY

their work based on DuPont's new disclosures. <u>Finally</u>, the trial would have to be continued for a considerable time to permit all of the above to take place. This is the type of prejudice to the Court and to parties that exclusionary sanctions under Rule 37 are designed to address and deter. *See, eg, Snoznik v. Jeld-Wen, Inc.,* 2010 U.S. Dist. LEXIS 46814 (W.D.N.C. May 12, 2010) (refusing to allow plaintiff's late disclosure of additional expert opinions).

DuPont's failure to adequately identify its trade secrets occurred in the face of explicit admonitions by the Court that a failure to abide by its directives would result in default.[15]  Under similar circumstances, courts in this district have not hesitated to apply Rule 37 to impose exclusionary sanctions and the dismissal of claims. For example, in *Zhou Jie Plant v. Merrifield Town Center, L.P.*, 2010 U.S. Dist. LEXIS 26118 (E.D. Va. March 18, 2010), Judge Ellis affirmed the report and recommendation of the magistrate and, in particular, the magistrate judge's recommendation that numerous plaintiffs in that case be dismissed from the action as a sanction for their failure to respond to discovery. There, as here, orders had been entered compelling discovery, and plaintiffs (through their counsel) had represented that they were complying with those orders. Despite those representations, the orders were violated, to the prejudice of the defendant.

"[I]t is the court's duty to protect the interests not only of the parties directly prejudiced by discovery abuse, but also those litigants indirectly prejudiced when the court's resources are squandered due to an abusing party's misconduct." *Zornes v. Specialty Indus., Inc.*, No. 97-2337, 1998 U.S. App. LEXIS 31686, 1998 WL 886997, at

---

[15] *See* note 7, *supra.*.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

*8 (4th Cir. Dec. 21, 1998) (unpublished).   This consideration also weighs in favor of the dismissal of DuPont's trade secret claims, as permitting DuPont any opportunity to cure the fatal flaws in its identification of trade secrets would result in undue delay and the further squandering of the Court's time and resources.

## V.      CONCLUSION

For the foregoing reasons, Kolon respectfully requests that the Court grant this motion, pursuant to its authority under Fed. R. Civ. P. 37, to strike DuPont's specification of purported "trade secrets" in its Second Supplemental Response to Kolon's First Set of Interrogatories and to bar DuPont's experts from relying on or asserting other alleged trade secrets not specifically identified therein.

Dated: June 11, 2010

By: _____/s/_____

Christina D. Trimmer (Virginia Bar No. 78417)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7117
Facsimile: (804) 916-7217
christina.trimmer@leclairryan.com

Dana J. Finberg (Virginia Bar No. 34977)
Rhodes B. Ritenour (Virginia Bar No. 71406)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7106
Facsimile: (804) 916-7206
dana.finberg@leclairryan.com
rhodes.ritenour@leclairryan.com

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Jeffrey G. Randall (admitted *pro hac vice*)
Scott M. Flicker (admitted *pro hac vice*)
**PAUL, HASTINGS, JANOFSKY**
**& WALKER LLP**
875 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
jeffreyrandall@paulhastings.com
scottflicker@paulhastings.com

*Attorneys for Kolon Industries, Inc.*

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel named below.

Rodney A. Satterwhite, Esq.
Brian C. Riopelle, Esq.
Kristen M. Calleja, Esq.
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
rsatterwhite@mcguirewoods.com
briopelle@mcguirewoods.com
kcalleja@mcguirewoods.com

Kent A. Gardiner, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
kgardiner@crowell.com

**Attorneys for E. I. du Pont de Nemours and Company**

By: _____ /s/ _____
Christina D. Trimmer (Virginia Bar No. 78417)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7117
Facsimile: (804) 916-7217
christina.trimmer@leclairryan.com

Attorneys for Kolon Industries, Inc.