REDACTED – CONTAINS INFORMATION
REGARDING MATTERS UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| E.I. du PONT de NEMOURS AND COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 3:09CV00058 |
| KOLON INDUSTRIES, INC., | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF E.I. du PONT de NEMOURS AND COMPANY'S MOTION TO MODIFY THE AGREED PROTECTIVE ORDER**

Plaintiff E.I. du Pont de Nemours and Company ("DuPont"), by counsel, respectfully submits the following Memorandum in Support of its Motion to Modify the Agreed Protective Order pursuant to Fed. R. Civ. P. 26, Local Rule 7(F), and paragraph 20 of the Agreed Protective Order entered by the Court in this matter on August 26, 2009. The filing of this motion was authorized by the Court at the hearing held on June 21, 2010.[1]

## I. INTRODUCTION

The Agreed Protective Order should be modified because it is being misused by defendant Kolon Industries, Inc. ("Kolon") for purposes of delay and manipulation of government proceedings to the detriment of DuPont, rather than solely for the protection of commercially sensitive information as intended. This continues a pattern of improper conduct by

---

[1] June 21, 2010 Hearing Tr. at 70-71. Pursuant to the Court's instructions, counsel for DuPont conferred with counsel for Kolon, who rejected DuPont's suggestions to modify the Agreed Protective Order as set forth herein.

Kolon, including the excessive over-designation of material under the Agreed Protective Order and over-redaction of papers filed with the Court, that goes well beyond any legitimate need to protect trade secrets or the like. DuPont respectfully requests that the Court put an end to Kolon's abuse of the Agreed Protective Order by modifying its terms to ensure that it is properly focused on the protection of commercial information and allows both parties to respond to government inquiries in an open and efficient manner.

By the accompanying Motion, DuPont specifically seeks two modifications to the Agreed Protective Order:

1. An Order allowing both parties to produce Designated Materials to the Korean Fair Trade Commission, in connection with a related proceeding.[2]

2. An Order revising paragraph 18 of the Agreed Protective Order to streamline the process of responding to third party requests for documents and information.

## II.    STATEMENT OF FACTS

The parties have been apprised of two government proceedings that cover matters that are or have been at issue in this litigation – one by the Korean Fair Trade Commission ("KFTC"), and one by the U.S. Department of Justice through the United States Attorney's Office for the Eastern District of Virginia ("USAO"). With respect to the KFTC, Kolon is manipulating the

---

[2] DuPont also seeks modification of the Agreed Protective Order to allow both parties to produce Designated Materials to the Department of Justice, including the United States Attorney's Office for the Eastern District of Virginia, in connection with its parallel criminal investigation. DuPont recognizes that a ruling on that issue may have to await ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A brief discussion of the USAO investigation is included in this memorandum, however, to provide the Court with full context. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Agreed Protective Order's procedures and the KFTC proceedings in order to force the production of DuPont's protected information, while shielding its own from disclosure, and violating the Agreed Protective Order in the process. In the USAO investigation, Kolon is using the Agreed Protective Order to create unnecessary delay and burdens for DuPont. This is pure gamesmanship. None of it has anything to do with the protection of commercially sensitive information, as both government agencies are capable of treating such information with the appropriate level of confidentiality.

**A.      The Agreed Protective Order**

The purpose of the Agreed Protective Order is to protect the confidentiality of commercially sensitive information. *See* Ex. 1, Agreed Protective Order at ¶ 1 ("Because the parties may exchange sensitive technical and financial information, there is good cause for the entry of a Protective Order.") It allows any producing party to identify "Designated Materials," the use and disclosure of which is restricted. *Id.* at ¶¶ 5-6. The Agreed Protective Order says nothing about how non-designated material is to be handled.

Paragraph 18 of the Agreed Protective Order addresses situations in which a third party seeks production of Designated Material through a subpoena or other legal process. Specifically, paragraph 18 provides that:

- The party from whom production is sought must give written notice of the subpoena or other legal process within 10 business days to the party that originally produced the Designated Material;

- The party from who production is sought must object to production of the Designated Material to the extent permitted by law;

- Should the party seeking production of the Designated Material take action to enforce its demand, the party from whom production is sought must respond by setting forth the existence of the order, and must inform the party that originally produced the Designated Material within 10 business days of notice of any such action;

- If the party that originally produced the Designated Material does not take action to prevent production within 10 business days following such notice, then the party from whom production is sought may comply with the subpoena or other legal process.

*Id.* at ¶ 18.

The Agreed Protective Order contains no specific provisions addressing production of Designated Materials or information derived therefrom to government agencies, whether pursuant to formal process or informal requests. It also does not address situations in which there may be a series of such government requests that follow after the government's right to obtain the materials and adequate procedures for maintaining their confidentiality have been established. In sum, paragraph 18 contemplates legal process by a private third party under or akin to Rule 45 of the Federal Rules of Civil Procedure, rather than requests for information in the course of government investigations.[3]

**B.   The KFTC Request for Information**

Just a few months after this Court dismissed Kolon's antitrust claims for the second time, the KFTC – apparently at the prompting of Kolon and with no knowledge of the dismissal – sent requests for information and documents to DuPont and Kolon aimed at the same issues. DuPont is cooperating fully with the KFTC. This includes the production of documents requested by the KFTC and a commitment to ensure that the KFTC has all the relevant facts. Kolon, however, is manipulating the Agreed Protective Order in an effort to narrowly confine the range of information that DuPont can share with the KFTC and prevent DuPont from telling the full story, while at the same time freely producing DuPont's commercially sensitive information – as well as export-controlled information – in violation of the Protective Order.

---

[3] Indeed, Kolon's counsel has acknowledged this. Ex. 2, June 18, 2010 Letter from S. Flicker to M. Songer at 2. (noting that paragraph 18 of the Agreed Protective Order contemplates a process under Rule 45).

On April 13, 2010, the DuPont received a request for information from the KFTC seeking documents relating to competition in the para-aramid business, including documents relating to market shares, business plans, and competitive intelligence materials concerning Kolon. Ex. 3, Request from Korean Fair Trade Commission. The KFTC allowed DuPont until May 10, 2010 to produce these documents. *Id.* at 1.

On April 16, 2010, Kolon's counsel notified DuPont that Kolon had received a similar request from the KFTC. Ex. 4, April 16, 2010 Letter from J. Randall to B. Riopelle. This request sought not only internal Kolon documents, but also documents that DuPont had produced to Kolon's counsel in the course of this litigation. *Id.*, attachment at 2. According to Kolon's counsel, the KFTC's request called for the production of documents designated by DuPont under the Agreed Protective Order. Kolon's counsel also stated that "Kolon intends to fully comply with the Order by the KFTC," but said nothing about whether Kolon had objected or intended to object to the KFTC's Order, as required by paragraph 18 of the Agreed Protective Order. As far as DuPont is aware, Kolon never did so. The letter concluded with the reassurance that "the KFTC proceedings are entirely confidential, so the confidentiality of DuPont's information that is subject to the protective order herein should not be compromised." *Id.* at 1.

On April 29, 2010, DuPont's counsel objected to Kolon's production of any DuPont documents designated under the Agreed Protective Order on the grounds that any such production would violate paragraph 18 of the order. Ex. 5, April 29, 2010 Letter from B. Riopelle to J. Randall. DuPont's counsel also suggested that the Agreed Protective Order be modified in order to allow the parties to accommodate requests for information from government entities. *Id.* In response, Kolon's counsel stated only that Kolon intended "to fully comply with the KFTC's Order," and that Kolon's compliance was consistent with Paragraph 18 of the

5

Protective Order. Ex. 6, April 29, 2010 Letter from S. Flicker to B. Riopelle. Kolon ignored DuPont's suggestion that the Agreed Protective Order be modified.

On May 21, 2010, DuPont's counsel notified Kolon that in order to comply with the KFTC's request to DuPont, and to provide a full and accurate account of the state of competition among producers of para-aramid fibers, DuPont needed to submit documents produced by Kolon subject to the Agreed Protective Order that related to Kolon's efforts to compete in the United States. Ex. 7, May 21, 2010 Letter from M. Songer to J. Randall. Kolon's response to that letter is telling. Despite its own disregard of the terms of the Agreed Protective Order, and its prior reassurance that DuPont had no reason to be concerned about production of its commercially sensitive information to the KFTC, on May 26, 2010 Kolon's counsel demanded that DuPont: 1) provide a list of Kolon documents that DuPont proposed to send to the KFTC; and 2) notify the KFTC "of the provisions of the Protective Order and the limitations on use and distribution of documents." Ex. 8, May 26, 2010 Letter from S. Flicker to M. Songer.

DuPont's counsel agreed to provide the list of designated Kolon documents that it intended to provide to the KFTC (a total of four at that time),[4] on the condition that Kolon's counsel also disclose what protected DuPont documents, if any, Kolon had already submitted to the KFTC. Ex. 9, May 26, 2010 Letter from M. Songer to S. Flicker. Kolon's counsel then provided a list of nearly *6,000 DuPont documents* that Kolon had produced to the KFTC on or

---

[4] The four documents that DuPont intended to submit the KFTC show that any difficulties Kolon faced in trying to compete in the U.S. were caused not by any alleged anticompetitive conduct by DuPont, but by Kolon's own sales practices and policies, which conflicted with business practice in the U.S., and its insufficiently competitive pricing. These four documents are merely examples. Kolon's document production contains numerous e-mails between Michael Mitchell and Kolon employees showing that Kolon's sales policies frustrated its efforts to pursue U.S. customers, including the same customers Kolon later claimed before this Court were foreclosed by DuPont's supply agreements. Should the Court desire to review any of these documents, copies can be provided at the Court's convenience.

around May 10, 2010. Ex. 10, May 27, 2010 Email from S. Flicker to M. Songer. Most of these documents had been designated "Confidential – Attorney's Eyes Only" under the Agreed Protective Order. Further, Kolon's production of DuPont documents to the KFTC included export-controlled materials, which Kolon's counsel subsequently admitted should not have been sent to Korea. Ex. 2, June 18, 2010 Letter from S. Flicker to M. Songer at 3-4.

On May 28, 2010, Kolon's counsel requested that DuPont refrain from producing to the KFTC any documents Kolon had designated under the Protective Order, until Kolon had additional time "to further address this matter." Ex. 11, May 28, 2010 Letter from S. Flicker to M. Songer. Kolon's counsel argued that according to Kolon's interpretation of the KFTC's request to DuPont, DuPont was not required to produce any Kolon documents. *Id.* Given Kolon's prior assurances to DuPont that the KFTC would maintain the confidentiality of any information provided, however, Kolon's objection could have only one purpose: to use the Agreed Protective Order to keep relevant information from the KFTC. Nonetheless, DuPont agreed to delay turning over any designated Kolon documents to KFTC for the time being.

On June 2, 2010, Kolon's counsel notified DuPont that it had taken the extraordinary step of contacting the KFTC regarding the request that the KFTC had issued *to DuPont*, and claimed that the KFTC told Kolon that the KFTC's request to DuPont did not call for the production of any Kolon documents. Ex. 12, June 2, 2010 Letter from S. Flicker to M. Songer.[5] Based on these communications with the KFTC, Kolon now demanded that DuPont not produce any Kolon documents to the KFTC, regardless of DuPont's own interpretation of the request and the

---

[5] DuPont obviously has no way of knowing what Kolon's counsel said, or what questions it posed, to the KFTC. DuPont has requested copies of all correspondence between Kolon and the KFTC and Kolon agreed to produce that material, but has not yet done so.

kinds of information that would be responsive or relevant to the KFTC proceeding, thus crippling DuPont's ability to defend itself. *Id.*

On June 10, 2010, DuPont notified Kolon that it had violated the Agreed Protective Order by failing to follow the steps in paragraph 18 in responding to the KFTC document request, and had illegally sent export-controlled material to Korea, which also constitutes a violation of the Agreed Protective Order. *See* Agreed Protective Order at ¶ 19. DuPont again suggested that the Agreed Protective Order be modified "to handle requests from government entities." Ex. 13, June 10, 2010 Letter from M. Songer to S. Flicker. Kolon did not respond until June 18, denying that it had violated the Agreed Protective Order, but admitting that it had sent documents marked as export-controlled to Korea. Once again, Kolon ignored DuPont's suggestion that the Agreed Protective Order be modified in light of the government proceedings. Ex. 2, June 18, 2010 Letter from S. Flicker to M. Songer.

### C. The U.S. Department of Justice Investigation

On June 3, 2010, DuPont was served with a grand jury subpoena issued by the United States Attorney's Office, requiring the production of all documents "designated or marked 'Confidential' and/or 'Attorneys Eyes Only' produced during discovery by any party" in this litigation. Ex. 14, Grand Jury Subpoena 10-1 / 10-2314 / 10-699 Dated May 21, 2010. DuPont followed the procedures set forth in paragraph 18 of the Agreed Protective Order by sending a letter to the USAO on June 4 providing notice of the Agreed Protective Order and objecting to production of documents protected by it. Ex. 15, June 4, 2010 Letter from M. Songer to AUSA M. Dry. DuPont sent a letter the same day to counsel for Kolon notifying them of the grand jury subpoena and attaching a copy. Ex. 16, June 4, 2010 Letter from M. Songer to J. Randall.

On June 7, 2010, the USAO responded to DuPont's June 4 letter, stating that it would "file a Motion to Show Cause should [DuPont] fail to produce any documents responsive to the

grand jury subpoena by the return date." The USAO also stated that it was "more than willing to discuss reasonable measures to assure all involved parties that adequate procedures will be utilized to safeguard any sensitive materials." Ex. 17, June 7, 2010 Letter from AUSA M. Dry to M. Songer. Kolon's counsel sent a letter to DuPont's counsel the same day, not only objecting to production of confidential information, but also suggesting that the production of *any* Kolon documents – even non-confidential ones – to the USAO would somehow be "improper." Ex. 18, June 7, 2010 Letter from M. Randall to M. Songer.

DuPont responded on June 10, 2010 by providing copies of its correspondence with the USAO, and notifying Kolon as required by paragraph 18 of the Agreed Protective Order that the USAO had informed DuPont that it would take action against DuPont if it failed to comply with the grand jury subpoena. Ex. 19, June 10, 2010 Letter from M. Songer to J. Randall. DuPont also asked Kolon to state the basis for the assertion that production of non-confidential information would be improper. *Id.* at n.2. DuPont received no response to that query.[6]

### III.  ARGUMENT

Is it not surprising that Kolon has refused DuPont's repeated invitations to jointly seek modification of the Agreed Protective Order in order to facilitate cooperation with both of the pending government proceedings. While DuPont has no objection to both agencies having access to all relevant evidence, Kolon's strategy is the opposite – to use the Agreed Protective Order as a tool in its ongoing campaign to hide the truth about its conduct. That is the only

---

[6] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ DuPont will immediately move for modification of the Agreed Protective Order to allow both parties to produce Designated Materials to the USAO on the same terms as DuPont proposes here with respect to the KFTC.

9

explanation for its manipulation of the KFTC requests to allow sweeping production of DuPont's confidential information, while shielding Kolon's own documents from production and thereby preventing DuPont from telling the full story in order to defend itself. Similarly, in the United States, Kolon wants to keep the cumbersome procedures of paragraph 18 of the Agreed Protective Order in place because they can be used as a roadblock to prevent the victim of its theft from responding to requests for information from the USAO and the grand jury. The Court should put a stop to this gamesmanship by modifying the Agreed Protective Order, and has ample authority to do so.

A.  **The Agreed Protective Order Should be Modified to Facilitate Responses to Government Requests for Information and Prevent Abuse of Its Procedures.**

The purpose of the Agreed Protective Order is to protect commercially sensitive information from falling into the wrong hands, such as actual or potential competitors. *See* Ex. 1, Agreed Protective Order at ¶ 1 ("Because the parties may exchange sensitive technical and financial information, there is good cause for the entry of a Protective Order.").[7] Thus, for example, the "Attorneys' Eyes Only" designation applies to material "so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage to the designating party, or significant competitive or commercial advantage to the receiving party." *Id.* at ¶ 3. This rationale is inapplicable to government agencies, however, once it has been established that the agency has adequate measures in place to protect the confidentiality of any information it receives.

That is why it is odd, to say the least, that Kolon was so careful to reassure DuPont that the KFTC has adequate confidentiality protections when producing DuPont's documents to the

---

[7] The Agreed Protective Order also addresses individual privacy concerns and export-controlled information, but that does not change the analysis. *See id.* at ¶¶ 2 & 4.

KFTC,[8] but went to great lengths to manipulate the KFTC proceeding and the Agreed Protective Order to prevent DuPont from producing Kolon's designated information. *See* Ex. 11, May 28, 2010 Letter from S. Flicker to M. Songer; Ex. 12, June 2, 2010 Letter from S. Flicker to M. Songer. There is no reason why, having vouched for the confidentiality measures of the KFTC, Kolon should seek to prevent DuPont from producing documents or information to the KFTC. Or, more precisely, there is no *legitimate* reason for Kolon to do so. Kolon's obvious strategy is to prevent DuPont from providing a complete evidentiary picture to the KFTC. This is a patent abuse of the Agreed Protective Order, which is only compounded by Kolon's violation of its provisions in making its own production to the KFTC.

The process set forth in paragraph 18 of the Agreed Protective Order creates other issues as well. For example, if either government agency finds that it requires additional information, it cannot simply ask for voluntary provision of that information.[9] Instead, the agency would have to issue a formal demand, triggering the laborious process of notice, proxy objection, action by the agency, and notice of the action. Such machinations are pointless, and a waste of the parties' and the agencies' time and resources, where adequate confidentiality measures are in place. Kolon has already vouched for the KFTC's ability to protect confidential information,[10] and the USAO has stated that it is "more than willing to discuss reasonable measures to assure all

---

[8] *See* Ex. 4, April 16, 2010 Letter from J. Randall to B. Riopelle at 1.

[9] This would include not only the designated documents themselves, but materials such as written discovery responses, expert reports and briefs that contain or rely upon designated materials or have themselves been designated as protected materials.

[10] Ex. 4, April 16, 2010 Letter from J. Randall to B. Riopelle at 1

11

involved parties that adequate procedures will be utilized to safeguard any sensitive materials."[11] Ex. 17, June 7, 2010 Letter from AUSA M. Dry to M. Songer.

Further, the current state of affairs also allows Kolon to leverage its gross over-designation of material under the Agreed Protective Order. As an example, Kolon has designated DuPont documents that were in its possession, and that contain DuPont's confidential information, as protected materials under the Agreed Protective Order.[12] Thus, DuPont is prevented from producing *its own documents* to the KFTC and the USAO, or, arguably, even discussing them. This of course has nothing to do with the original purpose of the Agreed Protective Order.

The remedy to these ills is relatively simple. *First,* DuPont respectfully requests that the Court enter an Order allowing both parties to produce Designated Materials to the KFTC for purposes of its related proceeding.[13] *Second,* in anticipation of any future requests for information from third parties beyond the KFTC and the U.S. Department of Justice, a more streamlined process should be adopted that would require notice and provide an opportunity to object, but that would be less cumbersome than the present procedures. A proposed order along these lines has been submitted with DuPont's motion for the Court's consideration.

---

[11] The Department of Justice is, of course, fully capable of protecting such information, and routinely does so in trade secret theft and other prosecutions involving sensitive information. *See* United States Attorneys Manual, Title 9, Criminal Resource Manual § 1139 (setting forth means to protect confidential information in trade secret prosecutions).

[12] Kolon has downgraded its designation on some DuPont materials that were in its possession to "Confidential," but this does not remedy the problem. Documents designated as "Confidential" are still subject to the Agreed Protective Order.

[13] As noted above, DuPont will move for the same relief with regard to the USAO investigation should Kolon's pending motion to quash the grand jury subpoena to DuPont be denied.

B.  **The Court Has Ample Authority to Modify the Agreed Protective Order And Ample Justification For Doing So In Light of the Government Proceedings.**

The Agreed Protective Order provides that it "may be modified . . . by the order of this Court," Agreed Protective Order at ¶ 20, and even apart from that provision the Court has ample authority to do so. *See* In re Grand Jury Subpoena, 836 F.2d 1468, 1476 (4th Cir. 1988) ("a protective order . . . is normally subject to modification under Rule 26 for sufficient cause."); In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987) (overruled on other grounds) ("It is undisputed that a district court retains the power to modify or lift protective orders that it entered."). Further, courts routinely modify protective orders to allow for production of information to the government in parallel proceedings. *See e.g.,* Phillips Petroleum Co. v. Pickens, 105 F.R.D. 545, 551 (N.D. Tex. 1985) (granting SEC motion to modify protective order to allow compliance with subpoena by litigants in parallel proceeding); *see also* U.S. v. GAF, 596 F.2d 10 (2d Cir. 1979) (discovery materials could be produced to government in civil antitrust enforcement action despite protective order in parallel private litigation). This approach is consistent with Fourth Circuit law concerning the primacy of a grand jury's authority to gather evidence where a civil protective order may impede a criminal investigation. *See* In re Grand Jury Subpoena, 836 F.2d at 1471-78 (grand jury's substantial authority to gather evidence trumped civil protective order that attempted to provide *de facto* immunity to third party deponents).

Here, the court has ample justification to modify the protective order. By allowing the efficient production of relevant information to the KFTC under circumstances that ensure the confidentiality of commercially sensitive information, and streamlining the procedures that would apply to any future inquiries by other government agencies, the Court can both preserve

13

the original purpose of the Agreed Protective Order and prevent it from being misused to manipulate and impede present and future government inquiries.

## IV. CONCLUSION

For the foregoing reasons, DuPont respectfully requests that the court modify the Agreed Protective Order by entering the proposed Supplemental Protective Order that has been submitted with DuPont's motion.

Respectfully submitted,

E. I. du Pont de Nemours and Company

/s/ Rodney A. Satterwhite
By Counsel

Rodney A. Satterwhite (VSB # 32907)
rsatterwhite@mcguirewoods.com
Brian C. Riopelle (VSB #36454)
briopelle@mcguirewoods.com
Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Thomas M. Beshere (VSB #41279)
tbeshere@mcguirewoods.com
Robyn Suzanne Gray (VSB #45418)
rgray@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel: 804-775-1000
Fax: 804-775-1061

- and –

Kent A. Gardiner (*pro hac vice*)
Shari Ross Lahlou (*pro hac vice*)
Michael J. Songer *(pro hac vice)*
Terence P. Ross *(pro hac vice)*
CROWELL & MORING LLP

1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-624-2500
Fax:  202-628-5116
kgardiner@crowell.com
slahlou@crowell.com
msonger@crowell.com
tross@crowell.com

***Attorneys for E. I. du Pont de Nemours and Company***

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2010, I served the foregoing via the Court's CM/ECF system and by hand delivery on:

>Dana J. Finberg (VSB # 34977)
>Rhodes B. Ritenour (VSB # 71406)
>**LECLAIRRYAN**
>Riverfront Plaza, East Tower
>951 East Byrd Street, Eighth Floor
>Richmond, Virginia 23219
>(804) 916-7109
>(804) 916-7219 (Fax)
>dana.finberg@leclairryan.com
>rhodes.ritenour@leclairryan.com

and via the Court's CM/ECF system on:

>Scott M. Flicker (*pro hac vice*)
>**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
>875 15th Street, N.W.
>Washington, D.C. 20005
>(202) 551-1700
>(202) 551-1705 (Fax)
>scottflicker@paulhastings.com
>
>Jeffrey G. Randall *(pro hac vice)*
>Michael C. Hendershot *(pro hac vice)*
>**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
>1117 S. California Avenue
>Palo Alto, California 94304
>(650) 320-1850
>(650) 320-1950 (Fax)
>jeffreyrandall@paulhastings.com
>michaelhendershot@paulhastings.com
>
>Victoria A. Cundiff *(pro hac vice)*
>**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
>Park Avenue Tower
>75 E. 55th Street
>New York, New York 10022
>(212) 318-6000
>(212) 319-4090 (Fax)

victoriacundiff@paulhastings.com

**_Attorneys for Kolon Industries, Inc._**

      /s/ Rodney A. Satterwhite
Rodney A. Satterwhite (VSB # 32907)
rsatterwhite@mcguirewoods.com
Brian C. Riopelle (VSB #36454)
briopelle@mcguirewoods.com
Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Thomas M. Beshere (VSB #41279)
tbeshere@mcguirewoods.com
Robyn Suzanne Gray (VSB #45418)
rgray@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel: 804-775-1000
Fax: 804-775-1061