CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | | |
|---|---|---|
| E. I. du Pont de Nemours and Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-00058 |
| | ) | |
| Kolon Industries, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPPOSITION TO E. I. du PONT de NEMOURS AND COMPANY'S MOTION TO MODIFY THE AGREED PROTECTIVE ORDER

The parties' counsel carefully negotiated the Agreed Protective Order[1] over a period of several weeks at the beginning of this litigation.  Now that the order has been in place for almost one year, and after the parties (and third parties) have produced hundreds of thousands of documents relying on its terms, DuPont (in the guise of a motion to "modify") seeks to abrogate key safeguards intended to protect confidential and attorneys eyes only designated information ("Designated Materials") from production to non-parties.

The modifications DuPont requests are both unnecessary and unwarranted. DuPont contends that the modifications are required to permit "the parties" to respond to demands by government entities for documents produced in this litigation.  As explained below, this is disingenuous and incorrect for at least the following reasons:

---

[1] The Agreed Protective Order is attached as Ex. 1 to DuPont's Memorandum in Support of Plaintiff E. I. du Pont de Nemours and Company's Motion to Modify the Agreed Protective Order.  D.I. 276.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

- ▪ First, Paragraph 18 of the Agreed Protective Order already sets forth the procedures and circumstances under which a party can respond to such demands.  DuPont has made no showing that the procedures embodied in the Agreed Protective Order are inadequate or that it is unable to abide by them.  Absent such a showing, DuPont should not be permitted to deprive Kolon, and potentially other parties who have provided documents in this litigation, of substantial safeguards they have relied upon in producing highly sensitive information.

- ▪ Second, contrary to DuPont's accusations, it is *DuPont* that seeks to misuse the Protective Order by ignoring its provisions.  DuPont's reasons for this are obvious: it is continuing to work with the government to further a parallel criminal investigation, and it wants the ability to disclose Kolon's Designated Materials to any non-party, including the government, without being bound by the protections currently afforded to both parties. [2]

Kolon's counsel advised DuPont's counsel that filing a motion to modify the Agreed Protective Order would not be a productive use of the Court's time.  *See* June 25, 2010 Letter from S. Flicker to M. Songer.  Ex. B. Regrettably, DuPont insisted on filing its motion seeking to eviscerate, without adequate justification, the protections negotiated by the parties and that formed a reason for entering the Agreed Protective Order as originally drafted.

I.      **FACTUAL BACKGROUND**

   A.      **Negotiation and Entry of the Agreed Protective Order**

   This case was filed in February 2009 and indisputably involves claims necessitating discovery into highly confidential information of both parties.  Included in the scope of production are documents and materials detailing how Kolon independently developed its aramid fiber technology and how both parties engaged in intensive competitive intelligence gathering efforts to learn as much as possible about the

---

[2] Kolon incorporates by reference herein its June 21, 2010 memorandum in support of its motion to quash the two grand jury subpoenas and its July 7, 2010 reply (Ex. A), which explain in detail

CONFIDENTIAL – ATTORNEYS' EYES ONLY

technology, products, strategic plans and marketing efforts of the other.  DuPont's documents also reflect efforts to block competition from Kolon.

As is common in business and technology cases, because much of the potentially-relevant material is sensitive business information that would not ordinarily be made public, from the beginning of the case and before documents were exchanged, the parties began negotiating the terms of an agreed protective order to govern discovery.  Drafts were exchanged in July and August 2009, and on August 21, 2009, the parties submitted the Agreed Protective Order to the Court.  The Court executed the Agreed Protective Order on August 25, 2009, and it was filed on the docket the next day.  (D.I. 53).

## B.   Pertinent Terms of the Agreed Protective Order.

The Agreed Protective Order contains explicit provisions protecting and restricting the use of Designated Materials.  Among other things, such materials produced in the civil litigation "shall not be used or disclosed for any purposes other than the litigation of this action[.]"  Agreed Protective Order, ¶6.  Paragraph 6(a) further specifies the persons to whom Designated Materials can be disclosed, depending on whether the materials are designated as "Confidential" or "Confidential-Attorneys' Eyes Only."

Paragraph 18, which DuPont seeks to modify, describes the specific procedures and circumstances under which a party receiving "any other demand or legal process seeking Designated Material (other than its own confidential information)" may produce such information to third parties:

---

the degree to which DuPont and the government have worked in concert in an effort to intermingle the civil and criminal discovery processes.  *See* D. I. 276 at 2 n. 2.

18.    If any party is subpoenaed or subject to any other demand or legal process seeking Designated Material (other than its own confidential information), that receiving party shall give prompt written notice, by hand, facsimile or electronic transmission, to the party that produced such information within ten (10) business days of receipt of such subpoena, demand, or legal process, and shall object to its production to the extent permitted by law.  Should the person seeking access to Designated Material take action against a receiving party or anyone else covered by this Order to enforce such a subpoena, demand, or other legal process, that party shall first respond by setting forth the existence of this Order and shall give prompt written notice to the producing party of such action by hand, facsimile, or electronic transmission within ten (10) business days of notice of any such action.  If no action is taken by the producing party within ten (10) business days following the notice of legal process or notice of action by the person seeking access, whichever is later, to prevent compliance with such legal process, the receiving party may thereafter comply with such legal process as required by law.  Nothing herein shall be construed as requiring the receiving party or anyone else covered by this Order to challenge or appeal any order requiring production of confidential information covered by this Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court.

**C.    DuPont's Actions to Feed Kolon's Designated Materials to the U.S. Government.**

The true purpose motivating DuPont's motion to modify is its desire to *voluntarily* produce Kolon's discovery documents to government agencies (including the United States) without following the existing terms of the Agreed Protective Order. DuPont contends that the Agreed Protective Order contains no specific provisions addressing production of Designated Materials or information derived therefrom to government agencies, whether pursuant to formal process or informal requests" (D.I. 276, at 4).  However as the full quotation of Paragraph 18 above shows, the Agreed Protective Order contains explicit provisions addressing the production of Designated Materials subject to "***any*** other demand or legal process seeking Designated Material," plainly covering both "formal process" and "informal requests."  Agreed Protective Order, ¶18. (Emphasis added).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

The reason DuPont pretends that the existing Agreed Protective Order is inadequate is fairly transparent:  DuPont wants to be free to "feed" discovery materials to the government.  This is demonstrated by the considerable degree to which DuPont has already done so, as detailed in Kolon's motion to quash the grand jury subpoenas issued by the government to DuPont.

As noted, even before the start of discovery, the parties began negotiating the terms of a protective order.  The final version was submitted to the Court on August 21, 2009, just days after the parties first exchanged their initial documents (which occurred on August 11, 2009).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Kolon has recently learned that █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ Kolon did not know at the time why DuPont was not moving with alacrity to complete negotiations of the protective order and submit it to the Court, but the facts now suggest that DuPont was waiting until it received Kolon's first production and could craft and comply with a "friendly" grand jury subpoena before any protective order was entered.

DuPont's complicity to provide Kolon's discovery materials to the government continues to this day.  As detailed in Kolon's motion to quash (Ex. A), ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 16 to D.I. 276.[3]   Kolon's motion to quash raises several objections to the grand jury subpoena, including that compliance with the grand jury subpoena would violate the Agreed Protective Order.  As noted, Kolon incorporates by reference herein its memorandum and reply in support of its motion to quash.  *See* Ex. A.

---

[3] In addition to its motion to quash both the August 2009 and May 2010 grand jury subpoenas, Kolon filed a motion for an order to stay compliance with the May 21, 2010 grand jury subpoena until the Court rules on Kolon's motion to quash.  Ex. E.  The government has consented to that motion, and presumably DuPont has agreed.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**D.      DuPont's Desire to Volunteer Kolon's Information to the Korean Government.**

On April 16, 2010, DuPont received an order from the Korean Fair Trade Commission ("KFTC") requiring the submission of certain documents pertaining to DuPont's monitoring of, and actions against, Kolon's impending entry into the aramid fiber business (the "KFTC DuPont Order").  Ex. 3 to D.I. 276. (Kolon had also received a demand from the KFTC for certain DuPont documents, discussed below.)

The KFTC Order to DuPont demanded "emails, planning documents, reports and other related materials for a 5-year period" regarding:

1) Transaction status of DuPont related to Para Aramid product
   a. Materials related to total sales amounts and market shares
   b. Current status with related businesses – All businesses that are conducting business related to this product shall be divided by areas and further classified according to the total amount of transaction amounts and also for period of time and accompanied by details of any agreements with such business.
   c. All sales agreements for relevant businesses
2) DuPont's business plans for Para Aramid
3) DuPont's internal documents related to Kolon
4) Any materials related to joint ventures (establishment of JV etc.) between DuPont and Kolon

Ex. 3 to D.I. 276.

DuPont seeks to produce certain *Kolon* documents in response to the KFTC DuPont Order, but as is clear from its language, the KFTC DuPont Order does ***not*** seek documents that Kolon has produced in this litigation.  Instead, that order calls for production of DuPont's own documents which, under Paragraph 18 of the Agreed Protective Order, DuPont can produce without restriction. Notably, the KFTC DuPont Order *does not even mention this litigation*.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

By contrast, on April 12, 2010 the KFTC issued an order to Kolon (the "KFTC Kolon Order") explicitly demanding documents in certain categories contained "[a]mong the documents in your possession, and among the documents you and your U.S. legal counsel currently possess which have been obtained through such procedures as the discovery process in the lawsuit, Civil Action No. 3:09CV58, pending before the United States Eastern District of Virginia, Richmond Division[.]"  Ex. 4 to D.I. 276.

On April 16, Kolon notified DuPont, pursuant to Paragraph 18 of the Agreed Protective Order, that Kolon had received the KFTC Kolon Order.  Kolon advised DuPont that KFTC Kolon Order stated that a failure to comply and submit the documents called for in the KFTC Order would subject Kolon to administrative fines for non-compliance.  Accordingly, Kolon advised DuPont, consistent with Paragraph 18 of the Agreed Protective Order, that "Kolon intends to fully comply with the Order by the KFTC."  Ex. 4 to D.I. 276.

Because the KFTC Kolon Order set the original deadline for submission as May 10, 2010, Kolon's notice gave DuPont ample opportunity, as contemplated under Paragraph 18 of the Agreed Protective Order, to take action "within ten (10) business days following the notice of legal process or notice of action by the person seeking access, whichever is later, to prevent compliance with such legal process…."  As set forth in Paragraph 18 of the Agreed Protective Order, if no such action is taken by the producing party (in this case, DuPont), "the receiving party may thereafter comply with such legal process as required by law."

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Nearly two weeks after Kolon's notice, on April 29, 2010, DuPont's counsel wrote to Kolon's counsel, noting that "DuPont objects to the production described in your letter." Ex. 5 to D.I. 276. However, DuPont evidently took no action in Korea or the United States to alleviate Kolon's compelled compliance with the KFTC Kolon Order. Paragraph 18 of the Agreed Protective Order states: "Nothing herein shall be construed as requiring the receiving party or anyone else covered by this Order to challenge or appeal any order requiring production of confidential information covered by this Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court." Kolon was fully entitled under the Agreed Protective Order – and was absolutely required under the KFTC Kolon Order – to comply and make its production.[4]

Any assertion by DuPont that Kolon was under an obligation to object and not comply with the KFTC Kolon Order is therefore not correct. The obligation to produce, as well as the exposure to administrative fines for failure to produce, under the KFTC Kolon Order are immediate and self-executing. Nothing in the Agreed Protective Order requires a party subject to an administrative order to incur penalties for legal process or to seek relief. That burden is placed on the producing party after notice. In the absence of any action by DuPont to challenge or dissolve the KFTC Kolon Order, Kolon was not required by the Agreed Protective Order, or permitted by the KFTC Kolon Order, to make an "objection" and incur administrative penalties before producing.

---

[4] DuPont also raises the inadvertent production to the KFTC of four documents (12 copies in total) purportedly containing export-controlled information. D.I. 276, at 8. Upon discovering this inadvertent production, Kolon's counsel immediately retrieved those documents from the KFTC.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

DuPont's own course of conduct confirms this.  Specifically, DuPont used the

*same language* to notify Kolon after receiving the KFTC DuPont Order:

> Like the request you received from the KFTC, DuPont is subject to administrative fines for non-compliance. [¶]  DuPont intends to comply fully with the KFTC's request.  ***Our analysis and understanding of the KFTC's request requires DuPont to produce documents which were produced by Kolon in this litigation.***  [¶]  The KFTC has given us [a deadline of] May 31, 2010 to make our production, and we intend to comply with this deadline.

Ex. 7 to D.I. 276. (emphasis added).[5]

After receiving DuPont's notice, Kolon (which disagreed with DuPont's

interpretation that the KFTC DuPont Order called for DuPont to produce *Kolon's*

documents to the KFTC) obtained confirmation from the KFTC that DuPont's

interpretation was incorrect and that no Kolon documents produced to DuPont under the

Agreed Protective Order were sought by the KFTC Order issued to DuPont.  Ex. 12 to

D.I. 276.  Kolon was also advised that the KFTC had communicated this interpretation to

DuPont's Korean counsel.  Kolon immediately notified DuPont of this fact and asked for

confirmation that no Kolon Designated Materials were produced to the KFTC by DuPont.

*Id*.  Kolon received no response.

Like DuPont, Kolon concluded that nothing in the Agreed Protective Order

required objection or mandated that Kolon incur administrative fines from the KFTC for

refusing to produce.  Unlike DuPont, Kolon (after receiving late notice from DuPont),

took immediate steps to address DuPont's contention that *Kolon* documents were subject

---

[5] The only difference between the parties' respective notices is that DuPont failed to comply with the requirement in Paragraph 18 of the Agreed Protective Order that it notify Kolon of its receipt

CONFIDENTIAL – ATTORNEYS' EYES ONLY

to production and immediately informed DuPont when it learned that those documents were outside the scope of the KFTC order to DuPont.  Kolon acted as contemplated by the Agreed Protective Order in both instances.

II.    **ARGUMENT**

    A.    **DuPont Has Not Shown Sufficient Cause to Modify the Agreed Protective Order.**

Although this Court retains the power to modify the Agreed Protective Order, DuPont falls far short of establishing any sufficient cause for the drastic modifications it seeks.  *See* D.I. 276, at 13 (citing sufficient cause standard).  As discussed below, DuPont's modifications undermine the critical safeguard in the Agreed Protective Order that Designated Materials should not be used for any purpose other than this civil litigation, and threaten to expose all discovery in this action to disclosure to numerous nonparties for other purposes, and without any assurance of continued confidentiality protections.  DuPont's requested modifications would permit any production – even voluntary production – of materials to the government, KFTC and presumably others, while eliminating key protections afforded to the parties (and to third parties who have or will produce in reliance on the current Agreed Protective Order) when any other nonparty seeks Designated Materials.

While DuPont's modifications would permit production of Designated Materials to U.S. government agencies or other domestic or foreign commissions, it is far from clear among the Circuits that such sweeping production of materials subject to a protective order must or should in all circumstances be allowed.  Indeed, many courts,

---

of the KFTC DuPont Order within 10 business days of receipt, as DuPont did not notify Kolon

CONFIDENTIAL – ATTORNEYS' EYES ONLY

including courts in the Fourth Circuit, have sustained protections under a protective order

and denied requests for production of protected documents and materials to government

agencies.  *See, e.g., Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F. Supp. 393,

403-04 (W.D. Va. 1987) (denying motion to modify protective order); *Palmieri v. State

of New York,* 779 F.2d 861, 864 (2d Cir. 1985) (holding district court erred in modifying

sealing orders to allow state grand jury and State Attorney General access to settlement

agreement and testimony where district court did not find extraordinary circumstances,

compelling need, or improvidence of initial grant of protective orders); *Martindell v. Int'l

Tel. and Tel. Corp.,* 594 F.2d 291, 296 (2d Cir. 1979) (affirming denial of government

access for criminal investigative purpose to deposition transcripts taken pursuant to

protective order in civil litigation); *GAF Corp. v. Eastman Kodak Co.,* 415 F. Supp. 129,

131 (S.D.N.Y. 1976) (noting the protective order stated that materials were to be used

"solely for the purpose of conducting this litigation" and holding plaintiff could not

disclose to the government materials obtained through discovery with defendant).

In *Martindell*, the Second Circuit set forth the standard for evaluating whether a

protective order should be modified even in the face of the government's request for

documents:

> After balancing the interests at stake, we are satisfied that, absent a
> showing of improvidence in the grant of a Rule 26(c) protective order or
> some extraordinary circumstance or compelling need, none of which
> appear here, a witness should be entitled to rely upon the enforceability of
> a protective order against any third parties, including the Government, and
> that ***such an order should not be vacated or modified merely to
> accommodate the Government's desire to inspect protected testimony for***

---

until more than a month after receiving the Order.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

> *possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge*.

594 F.2d at 296.  (Emphasis added).  DuPont does not even suggest that the Agreed Protective Order was improvidently granted.  Nor has DuPont presented any evidence of an extraordinary circumstance or compelling need for production of Kolon's Designated Materials to the KFTC, where the KFTC itself has confirmed its Order does not seek them, or for production of Kolon's Designated Materials to the government to aid its criminal investigation.

Further, even in the cases cited by DuPont, the courts have superimposed applicable protective orders or other confidentiality restrictions even when the court has held that documents protected under the protective order must be produced to non-parties.  *See United States v. GAF Corp.,* 596 F.2d 10, 16 (2d Cir. 1979) (upholding power of district court to superimpose protective orders upon civil investigative demand enforcement orders to safeguard the interests of the parties) (cited by DuPont in D.I. 276 at 13); *In re "Agent Orange" Product Liability Litig.,* 821 F.2d 139, 148 (2d Cir. 1987) (affirms lifting protective order following settlement of litigation subject to a showing on a document by document basis of good cause for continued protection).

In *Omega Homes,* the United States District Court in the Western District of Virginia denied the plaintiff's motion to modify the protective order in the case to permit disclosure of discovery materials to nonparties that were bringing similar actions against the defendants in other courts.  656 F. Supp. at 403-04.  The court stated that when a protective order is stipulated to by the parties "it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward

CONFIDENTIAL – ATTORNEYS' EYES ONLY

denying the movant's request without more." *Id.* at 404.  The court declined to arbrogate the protective order previously agreed to through negotiations by sophisticated and well-informed counsel, noting:

> In effect, [the plaintiff] is asking the court to rewrite the terms of the stipulated order and to apply them retroactively.  The court refuses to endorse [the plaintiff]'s tactic of inducing broad disclosure under a set of ground rules and of then avoiding any limitations on itself by asking the court to come in and change those rules.

*Id.*

Just like the plaintiff in *Omega Homes*, DuPont here asks the Court to rewrite the Agreed Protective Order retroactively, after inducing Kolon's broad disclosure under a set of heavily negotiated and agreed-to ground rules.  The very premise of the Agreed Protective Order is that "Designated Material shall not be used or disclosed for any purposes other than the litigation of this action."  Agreed Protective Order, ¶6.  DuPont knew that Kolon was relying on the Agreed Protective Order's provisions in producing materials in this litigation.  Moreover, DuPont fails to point out that ***at least 12 third parties have also already produced materials in reliance on the terms of the current protective order.*** *See, e.g.,* 3M (Ex. F, 3M000001); BGF Industries (Ex. G, BGF-000001); Hexcel Industries (Ex. H, HEX001); Invista (Ex. I, IPC-0177) (all examples of documents in third party document productions designated as attorneys' eyes only).

Further, although DuPont knew well in advance of negotiating and jointly submitting the current Agreed Protective Order to the Court that the government had at one time investigated Kolon's activities – ████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY

███ [6] – DuPont's counsel did not suggest any provisions to minimize the objections that could be interposed upon the government's request for Designated Materials. DuPont's modifications should be rejected by this Court.

> **B.** **Modification of the Agreed Protective Order for Disclosure of Information to the KFTC is Unnecessary and Unwarranted.**

DuPont's request to modify the Agreed Protective Order to permit the parties to produce to the KFTC "*any* information, documents or things produced to it by the other Party or any third party in the course of the Litigation" (DuPont's Supplemental Protective Order, ¶1) (emphasis added), is merely a thinly veiled attempt to obtain the right to voluntarily disclose any of Kolon's confidential or attorneys eyes only information, whether or not that information is in fact compelled to be disclosed by a KFTC request.

As discussed above, nothing in the KFTC DuPont Order to DuPont calls for DuPont to provide to the KFTC any documents produced by Kolon to DuPont under the Agreed Protective Order.  Kolon confirmed that the KFTC's April 13, 2010 Order to DuPont does not seek Kolon's documents.  Ex. 12 to D.I. 276.  Given the KFTC's clarification, DuPont was and is under no current compulsion to produce Kolon's documents, and thus the Agreed Protective Order prohibited DuPont from doing so.

---

[6] *See* Ex. A attached, Kolon's memorandum in support of motion to quash grand jury subpoenas, at 8-9 and Ex. J, DID 0011309 ████████

████████████████████████████████████████

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

DuPont cannot, consistent with the Agreed Protective Order, produce Kolon's Designated Materials in response to a KFTC Order that does not seek them.[7]

In contrast, the KFTC Kolon Order explicitly required production to the KFTC of "documents you and your U.S. legal counsel currently possess which have been obtained through such procedures as the discovery process in the lawsuit, Civil Action No. 3:09CV58, pending before the United States Eastern District of Virginia, Richmond Division." Ex. 4 to D.I. 276. Thus, Kolon is not, as DuPont wrongly accuses, engaging in any "manipulation of the KFTC requests to allow sweeping production of DuPont's confidential information, while shielding Kolon's own documents from production." D.I. 276, at 10. Kolon is simply following the explicit language and instruction of the KFTC in producing documents that DuPont produced to Kolon in this litigation and in objecting to DuPont's voluntary production of Kolon's Designated Material despite the KFTC's confirmation that it is not seeking those documents.

Further, DuPont's proposal would amend the Agreed Protective Order *to entirely eliminate an opportunity for notice and objection* to any future KFTC Orders: "In the event that the KFTC makes any formal or informal request for documents or information from either Party, both Parties hereby waive any right to notice, proxy objection, or any other right or obligation set forth in paragraph 18 of the Agreed Protective Order." *See* Supplemental Protective Order, ¶2. Kolon objects to this proposal because it is unknown what documents or materials the KFTC may seek in the future and such future demands

---

[7] Moreover, the KFTC DuPont Order was directed to DuPont, not to DuPont's counsel. Accordingly, DuPont should not have in its possession, custody, and/or control any "Confidential – Attorneys Eyes Only" material because the Agreed Protective Order restricts access to such

CONFIDENTIAL – ATTORNEYS' EYES ONLY

may, in fact, seek materials that Kolon would object to producing.  This Court should not force Kolon to waive all rights to object to future unknown demands from the KFTC.

For the same reason, DuPont's suggestion that Paragraph 18 of the Agreed Protective Order is a waste of time if any other government agency requests additional information (D.I. 276, at 11) abandons the protections and procedures the parties negotiated for Designated Materials.  Significantly, DuPont's revision to Paragraph 18 does not include any provision requiring adequate confidentiality measures be put in place before the production of Designated Materials to government agencies or any other nonparties.[8]

C.     **DuPont's Proposed Modification Inappropriately Eliminates Procedural Safeguards.**

DuPont's proposed modification of Paragraph 18 of the Agreed Protective Order also is not necessary or justified because the relevant terms of that paragraph already set forth a mechanism that, except for the time periods, contemplates what DuPont proposes. Specifically, Paragraph 18 currently provides that the party receiving the demand for Designated Materials must notify the producing party within 10 business days of receipt of the demand, and the producing party may thereafter take action to prevent compliance. Failing such action by the producing party, the party receiving the demand can comply. Thus, DuPont's proposal to modify that provision is entirely unnecessary.

---

material to the parties' outside counsel (with narrow exceptions for experts and others required in the civil litigation.  Agreed Protective Order, ¶ 6a-f.

[8] Of course, DuPont is not precluded from producing its *own* documents subject to a demand from the KFTC or USAO.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Indeed, DuPont's proposal shortens the time period in which the party receiving the demand must notify the producing party from 10 business days to five business days of receipt of the demand.  *See* Supplemental Protective Order, ¶3.  This shortened time period is notable considering that DuPont cannot even seem to abide by the 10 business day notice period currently in the Protective Order, as demonstrated by the fact that DuPont notified Kolon **38 days** after receiving the KFTC DuPont Order.

DuPont's proposed revisions also seek to abandon some of the key protections the parties negotiated.  DuPont's proposal eliminates the obligation of the party receiving the demand, where permitted by law (*e.g.,* in response to a Fed. R. Civ. P. 45 subpoena), to initially object to the production of Designated Material.  If the Court is inclined to entirely shift the previously negotiated joint burden of objecting to production of Designated Material entirely to the producing party, at a minimum, the Agreed Protective Order should clarify the action the producing party can take to prevent the production of Designated Material.  For instance, the Agreed Protective Order should, at a minimum, include language stating that the producing party should have 10 business days from the notice of the requesting party's demand to ask the requesting party to withdraw or clarify the request to exclude the producing party's Designated Materials, or to file a proceeding in a forum with appropriate jurisdiction to prevent compliance with the request.

DuPont's proposal also eliminates the provision setting forth mechanisms for responding to demands when the person seeking access "takes action" against the receiving party to enforce the demand (which currently requires the receiving party to respond by setting forth the existence of the Agreed Protective Order and notifying the producing party of the action being taken within 10 business days of the notice of the

CONFIDENTIAL – ATTORNEYS' EYES ONLY

action).  The last two sentences of DuPont's proposed revision to Paragraph 18 of the Agreed Protective Order do not make sense without the precursor language DuPont seeks to eliminate concerning action taken by the person seeking access to enforce its demand. DuPont's proposal states:  "The producing party shall have ten (10) business days from the date of ***such notice to take action*** to prevent compliance with the request.  If no such action is taken, the receiving party may comply with the request."[9]  Supplemental Protective Order, ¶3. (Emphasis added).  Moreover, DuPont's revision does not even require the receiving party to advise the requesting party of the existence of the Agreed Protective Order at any time.

In addition, DuPont's proposal eliminates the important provision stating: "Nothing herein shall be construed as requiring the receiving party or anyone else covered by this Order to challenge or appeal any order requiring production of confidential information covered by this Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court." This provision is a key protection to both parties, affirming the parties' ability to challenge any order of production of Designated Materials and to avoid penalties for noncompliance based on the protections afforded by the Agreed Protective Order.

III.   **CONCLUSION**

For the foregoing reasons, Kolon respectfully requests that the Court deny DuPont's motion to modify the Agreed Protective Order.

---

[9] The Agreed Protective Order's current similar language states:  "If no action is taken by the producing party within ten (10) business days following the notice of legal process or notice of action by the person seeking access, whichever is later, to prevent compliance with such legal process, the receiving party may thereafter comply with such legal process as required by law."  Agreed Protective Order, ¶18.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: July 13, 2010

By: _____/s/_____
Christina D. Trimmer (Virginia Bar No. 78417)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7117
Facsimile: (804) 916-7217
christina.trimmer@leclairryan.com

Dana J. Finberg (Virginia Bar No. 34977)
Rhodes B. Ritenour (Virginia Bar No. 71406)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7106
Facsimile: (804) 916-7206
dana.finberg@leclairryan.com
rhodes.ritenour@leclairryan.com

Jeffrey G. Randall (admitted *pro hac vice*)
Scott M. Flicker (admitted *pro hac vice*)
**PAUL, HASTINGS, JANOFSKY**
**& WALKER LLP**
875 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
jeffreyrandall@paulhastings.com
scottflicker@paulhastings.com

***Attorneys for Kolon Industries, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel named below.

Rodney A. Satterwhite, Esq.
Brian C. Riopelle, Esq.
Kristen M. Calleja, Esq.
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
rsatterwhite@mcguirewoods.com
briopelle@mcguirewoods.com
kcalleja@mcguirewoods.com

Kent A. Gardiner, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
kgardiner@crowell.com

**Attorneys for E. I. du Pont de Nemours and Company**

I hereby certify that on the 13th day of July, 2010, I served the foregoing via hand delivery on:

Rodney A. Satterwhite, Esq.
Brian C. Riopelle, Esq.
Kristen M. Calleja, Esq.
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
rsatterwhite@mcguirewoods.com
briopelle@mcguirewoods.com
kcalleja@mcguirewoods.com

**Attorneys for E. I. du Pont de
Nemours and Company**

By: _____/s/_____
Christina D. Trimmer (Virginia Bar No.
78417)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7117
Facsimile: (804) 916-7217
christina.trimmer@leclairryan.com

**Attorneys for Kolon Industries, Inc.**