IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
JUL 30 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

E.I. DUPONT DE NEMOURS
AND COMPANY,

    Plaintiff,

v.                        Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on KOLON INDUSTRIES, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS REFLECTING DUPONT'S NONPUBLIC COMMUNICATIONS WITH THE GOVERNMENT (Docket No. 209). For the reasons that follow, the motion will be granted in part, and denied in part, as set forth below.

## BACKGROUND

On February 3, 2009, E.I. du Pont de Nemours and Co. ("DuPont") filed a Complaint against Kolon Industries, Inc. ("Kolon"), alleging trade secret misappropriation, conspiracy, and other business torts. To synopsize, DuPont alleges that Kolon stole its secret processes and technologies for manufacturing Kevlar, and that Kolon has improved its product line based on this trade secret theft.

The present motion covers the familiar ground of privilege waiver. The Court recently issued a Memorandum Opinion, E.I. Du Pont de Nemours and Co. v. Kolon Industries, Inc., No. 3:09CV58, 2010 WL 1489966 (E.D. Va. Apr. 13, 2010), holding that work product protection was not waived by DuPont's sharing of documents with federal law enforcement agencies that were investigating alleged trade secret theft by Kolon and by Michael Mitchell, a former DuPont employee who was recently convicted of trade secret theft and sentenced to 18 months in prison. United States v. Mitchell, No. 3:09CR425, Docket No. 20 (E.D. Va. Mar. 18, 2010). Kolon, however, asserts that recent developments require revisitation of the issue of privilege waiver in a new and different context.

On March 18, 2010, DuPont's general counsel, Thomas Sager, issued a press release about Mitchell's conviction. The press release asserted, in pertinent part, that "[t]he FBI investigation has revealed that, in August 2008, three Kolon managers flew to Richmond, the location of our global Kevlar® technology and business headquarters, expressly for the purpose of obtaining confidential DuPont process technology."

The record in this action shows that several Kolon employees did travel to the Richmond Doubletree Hotel on August 26, 2008 to attend a meeting set up by the Federal Bureau of Investigation ("FBI") and DuPont as a sting operation conducted

as a part of the FBI's investigation of Mitchell and Kolon. The Kolon representatives met a person whom Kolon believed was associated with DuPont and had information about DuPont's aramid fiber technology. However, Kolon vigorously disputes DuPont's conclusion that Kolon's *express purpose* in attending the meeting was to acquire *confidential* DuPont information. Kolon also asserts that DuPont has been distributing that press release to its aramid customers worldwide. See Kolon Reply at 12 n.7 (asserting that a Brazilian subsidiary of DuPont sent the press release to local customers).

In a telephone conference with the Court, Kolon requested that it be allowed to depose Sager on the subject of his statement in the press release about Kolon's purpose in attending the meeting. DuPont's counsel opposed the taking of the deposition, asserting that the statement had been based on discovery and on publicly available documents in the Mitchell criminal case: the plea agreement; the statement of facts; and the parties' sentencing positions. The Court indicated that, if DuPont wished to oppose Sager's deposition, it should file a motion to quash with an explanatory memorandum. Such a motion was never filed, and Sager was deposed on May 7, 2010.

In the deposition, Sager denied ever seeing the public documents from the Mitchell criminal case (plea, agreement, statement of facts, and sentencing positions). Instead, Sager

3

testified that the press release was based on written and oral communications with two in-house lawyers for DuPont, Michael Clarke and James Shomper, as well as head of corporate security, Raymond Mislock. Additionally, DuPont submitted a declaration from Clarke that he, not Sager, drafted the sentence in the press release regarding Kolon's express purpose in visiting Richmond. It appears that Sager had no independent input into the text statement, but rather signed off on the work of a trusted deputy.

Kolon asserts that the statement must have come from communications between DuPont and the Government, over which DuPont has asserted work-product and attorney-client privilege. Kolon asserts that there are "dozens of documents reflecting communications with the Government under claims of privilege" upon which Clarke, Shomper, and Mislock must have relied in relaying the information to Sager that was incorporated into the press release. To illustrate the point, Kolon attached to its motion two appendices containing a list of 119 documents, all of them emails drafted or sent between June 2007 and February 2009. Ninety-four of the emails, asserts Kolon, contain communications on the same subject matter as the press release and must be produced. Kolon identifies the other 25 emails as having indiscernible content, but suspects that they may be on the same subject as the other 94 emails. Almost all of these emails were

either sent or received by Clarke or Shomper. Sager is mentioned in relatively few of the emails until the last few months leading up to DuPont's filing of the Complaint against Kolon in the present action.

Kolon contends that, by making offensive, testimonial use of the information contained in these communications, DuPont has waived any claim of privilege, not just as to the underlying communications, but also as to all communications on the subject of the Government investigation into Kolon and Mitchell. Kolon asserts its substantial need for the communications, the importance and relevance of which are evidenced by their incorporation into DuPont's Complaint.

DuPont opposes the motion by presenting three arguments. First, DuPont argues that the statement in the press release was based on publicly available information and that, therefore, the release did not waive either the attorney-client or work-product privilege. DuPont Oppo. at 2.[1] Second, DuPont defends the propriety of its communications with the Government during the investigation of Kolon and Mitchell. Id. In essence, this is an argument that any non-public documents used are privileged, a point on which DuPont already has prevailed. Hence, this point need not be further addressed. Third, DuPont argues that Kolon

---

[1] See Declaration of Michael Clarke ¶¶ 3-4 (asserting that he drafted the controversial sentence based on publicly available information).

has not shown substantial need for the documents it seeks. Id. It is not entirely clear what privilege is intended to be asserted, but the context of the briefing and the nature of the documents at issue focus the inquiry only on the work-product protection, and the analysis will proceed on that premise.

## APPLICABLE LAW

Work product protection, as discussed at length in the Memorandum Opinion of April 13, 2010 (DuPont v. Kolon, 2010 WL 1489966, at *3-5), shields from discovery work product prepared by an attorney, or at the direction of an attorney, in anticipation of litigation. It does not cover documents created in the ordinary course of business that later serve a litigation-related purpose. Id. at *3-4. The party asserting privilege must show that it applies. Id.[2]

---

[2] To allow for open, unrestricted discussion between lawyer and client, confidential communications between attorneys and their clients are privileged from discovery. Hawkins v. Stables, 148 F.3d 379, 382-83 (4th Cir. 1998). This includes, of course, "communications between attorneys which reflect client-supplied information." Hunt v. U.S. Marine Corps, 935 F. Supp. 46, 53 (D.D.C. 1996). However, the privilege has limits. It does not shield from discovery the facts underlying the communication; it applies only to communications made in confidence; it covers only communications made with a view toward obtaining legal advice; and it may be waived. Hawkins, 148 F.3d at 383. "The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived." Zeus Enters. v. Alphin Aircraft, Inc., 190 F.3d 238, 244 (4th Cir. 1999).

As discussed with respect to work product protection in the last opinion, id. at 4-5 (and equally applicable to attorney-client privilege, Zeus Enters., 190 F.3d at 244), privilege may be waived. Waiver may occur by testimonial use, DuPont v. Kolon, 2010 WL 1489966, at *4, or public revelation, e.g., Tri-County Paving, Inc. v. Ashe County, 2000 U.S. Dist. LEXIS 19563, at *12 (W.D.N.C. Oct. 5, 2000). As the Court recently concluded, by sharing information privately with an interested Government agency, DuPont did not waive the work product protection, so long as the Government is not in a position adversarial to the disclosing party, and so long as the disclosing party maintains a reasonable expectation that the Government will not further disclose the information. DuPont v. Kolon, at *8. However, *public* disclosure of information, particularly when the disclosing party voluntarily broadcasts the information in media channels, is quite different; it destroys any expectation of privacy for the disclosed information. Tri-County Paving, at *11-12. See also In re Martin Marietta Corp., 856 F.2d 619, 622 (4th Cir. 1988) ("Implied waiver nullifies a privilege when disclosure of a privileged communication has vitiated confidentiality.").

When a party discloses information that had been confidential before the disclosure, the privilege is waived not only to that communication, but also "as to the subject matter

7

of the disclosure." Hawkins, 148 F.3d at 384 n.4. Of course, defining the "subject matter," and thus the scope of the waiver, is a critically important aspect of the waiver analysis because "subject matter waiver does not open up the possibility of a fishing expedition of all confidential communications . . . during the course of [an attorney's] representation." Id.

However, it is settled that, "when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter. Selective disclosure for tactical purposes waives the privilege." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). "Selective disclosure occurs not only when a party reveals part of one privileged communication, but also when a party reveals one beneficial communication but fails to reveal another, less helpful, communication on the same matter." United States ex rel. Mayman v. Martin Marietta Corp., 886 F. Supp. 1243, 1252 (D. Md. 1995). The same principles apply to the waiver of work product protection. Id. at 1251.

That said, the Fourth Circuit treats waiver of opinion work product differently from both fact work product and attorney-client privileged communications. As explained in a recent district court decision within the Fourth Circuit:

> [t]he waiver of the attorney-client privilege for a communication does not automatically waive whatever work-product immunity that communication may also enjoy, as the two are independent and grounded on different policies. Waiver of the privilege should always be analyzed distinctly from waiver of work product, since the privilege is that of the client and the work product essentially protects the attorney's work and mental impressions from adversaries and third parties even when communicated to the client.

Cont'l Cas. Co. v. Under Armour, Inc., 537 F. Supp. 2d 761, 769 (D. Md. 2008) (quoting Edna S. Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 608 (4th ed. 2001)).

Although fact work product and attorney-client privilege may be waived through disclosure of but one document on the subject, "waiver of the opinion work-product protection [is] limited to the documents actually disclosed." In re Mut. Funds Inv. Litig., 251 F.R.D. 185, 187 (D. Md. 2008). When protected opinion work product is commingled with fact work product that must be disclosed under subject matter waiver, the proper method of preventing disclosure of opinion work product is for the Court to review the material and redact the legal theories and mental impressions from the otherwise discoverable materials. Martin Marietta, 856 F.2d at 626.

These principles guide resolution of Kolon's motion and the three grounds for DuPont's opposition to it.

## DISCUSSION

### A. DuPont has Not Established that the Press Release was Based Solely on Public Information

As DuPont observes, if it based the press release solely on public information, then no privileged material was disclosed, and no waiver could occur. The plea agreement, the statement of facts, and the parties' sentencing positions in the Mitchell criminal case clearly provide sufficient information for DuPont to have drawn inferences sufficient to describe Kolon's purpose as it did in the press release. Thus, the statement in the press release that "three Kolon managers flew to Richmond . . . expressly for the purpose of obtaining confidential DuPont process technology" conceivably could have been nothing more than a self-serving characterization of information already in the public domain.

However, the record refutes the contention that the sentence at issue was based only on the four public documents from the Mitchell criminal case. The undisputed record reflects that Clarke drafted the press release, but it is difficult to accept Clarke's assertion that he, who, of course, had been heavily involved in assisting the Government investigation of Mitchell and Kolon, would be capable of segregating the various categories of information (public information, information learned from the Government during the investigation, or

information provided in discovery) to which he had been exposed throughout the course of his work when formulating the statement of Kolon's purpose as expressed in the press release.

The record also contains the deposition testimony of Thomas Sager, DuPont's general counsel, whom the Court allowed to be deposed about the factual basis of the sentence in controversy. Sager denied having relied on the four public documents in the Mitchell case. Instead, he testified that the basis for the statement were several summary reports prepared by his deputies, Shomper and Clarke, and oral briefings by those deputies. As instructed at oral argument, counsel for DuPont has identified the summaries that went to Sager. Having reviewed those documents *in camera* the Court concludes that they contain some, but not much, information about Kolon's purpose in sending representatives to the meeting at issue.

Of course, the burden rests with DuPont, the party asserting privilege, to prove all elements necessary to invoke the work product privilege, including that privileged information was not revealed. Clarke's affidavit provides some support for the assertion that the contested statement in the press release was based on the Mitchell case documents. However, considering the affidavit and the situational realities surrounding DuPont's receipt of information from the Government in perspective of Sager's testimony, it cannot be said that

11

DuPont has carried its burden to prove its assertion that the statement was based only on the Mitchell case documents. Indeed, considering the record as a whole, it is more likely than not that the statement about Kolon's purpose was based on some work product and on the Mitchell case documents. And, to the extent that any communications from the FBI to DuPont address Kolon's purpose in arranging for, and attending, the meeting at the Doubletree Inn on August 26, the substance of such communication most assuredly was revealed in the press release. Thus, on this record it is appropriate to conclude that, by making the statement at issue in the press release, DuPont has waived the work product protection respecting the factual basis for the statement in the press release.

To define the scope of the subject matter waiver, it is necessary to keep in mind that the controversial sentence in the press release revealed that DuPont had knowledge about Kolon's purpose in traveling to Richmond for that meeting that DuPont had learned from the FBI investigation. Thus, any communications (in DuPont's possession) from the FBI to DuPont containing factual information concerning Kolon's purpose in arranging for or attending the meeting that may have been protected as fact work product under the work product doctrine before the press release cannot be shielded now because DuPont chose to broadcast the substance of those communications to the

public. As stated in Krenning v. Hunter Health Clinic, "[a] party can't selectively chose which portions of a document to release to the public and which portions it wishes to assert [the attorney client] privilege [and work product protection]." 166 F.R.D. 33, 35 (D. Kan. 1996). See also Sedillos v. Bd. of Educ., 313 F. Supp. 2d 1091, 1094 (D. Colo. 2004) (noting the need to "prevent litigants from selectively asserting [] privilege as a tactical tool for their own benefit") (citations omitted).

In sum, DuPont has sought to make affirmative use of the once protected information by making the statement in the press release. The publication and dissemination of that information waives the protection.[3]

B. **Scope of the Waiver**

Kolon asserts that the waiver encompasses the protected information respecting the statement at issue and any communications (in DuPont's possession) between the Government and DuPont relating to the Government's investigation of Mitchell and Kolon. And, Kolon argues that the waiver includes both fact and opinion work product.

However, the waiver extends only to "the subject matter revealed." Hawkins, 148 F.3d at 384 n.4. A party cannot

---

[3] The finding of waiver makes it unnecessary to access Kolon's substantial need argument as to the statement in issue.

artificially expand the scope of the subject matter to create a waiver that is broader than that of the disclosure that waives the protection. Id. Thus, the scope of the waiver is measured by the substance of the protected information that has been publicly disclosed. Here, the disclosure in the press release is a limited one. It pertains to one meeting and to the purpose for that meeting.

A disclosure of that information does not support a finding that DuPont has waived work product protection to all communications in DuPont's possession relating to the Government's investigation of Mitchell and Kolon. That is because the published protected information related to one meeting and Kolon's purpose in arranging for it. To find that the statement about the purpose of the meeting effectuated the broad waiver urged by Kolon would be to ignore what DuPont actually published. Indeed, to accept Kolon's proposed scope would be to issue a fishing license far beyond the proper scope of DuPont's waiver, and, in the process, it would eviscerate the principle that the scope of the waiver is confined to the substance that was published. Without a constraint of this nature, any waiver of work product would effectively reach all of a lawyer's work in a case and would not be a "subject matter" waiver.

The next task is to ascertain whether the waiver reaches both fact and opinion work product. Kolon says it does.

The substance of the statement quite clearly makes an assertion of a matter of fact: three Kolon managers flew to Richmond in August 2006. The statement also asserted that the trip was "expressly for the purpose of obtaining confidential process technology." Clearly, that statement contains matters of fact susceptible of objective evidentiary proof. But, it also reflects someone's opinions -- here, that of the lawyers for DuPont. Specifically, they have opined that the facts of which they are aware reflect a subjective intent, i.e., the purpose of the trip.

The fact work product on this subject matter (as previously defined) must be produced under familiar principles of waiver jurisprudence. However, a waiver of opinion work product is more limited.

Opinion work product, which enjoys near absolute immunity from discovery, may require disclosure under the subject matter waiver doctrine "in extreme circumstances." Id. When "work product [] concerns activities of counsel that are directly in issue," courts have not hesitated to find subject matter waiver. Charlotte Motor Speedway, Inc. v. International Ins. Co., 125 F.R.D. 127, 130 (M.D.N.C. 1989); see also In re Doe, 662 F.2d 1073, 1079-80 (4th Cir. 1981) (observing that "only

extraordinary circumstances requiring disclosure permit piercing the work product doctrine," and finding such circumstances "when an attorney, charged as a fiduciary in the administration of justice, attempts to use the opinion work product rule to shield himself from criminal prosecution arising from his actions in prior litigation"); Cincinnati Ins. Co. v. Zurich Ins. Co., 198 F.R.D. 81, 87 (W.D.N.C. 2000) (finding opinion work product protection waived by a party's selective disclosure of information about an attorney's opinion on settlement valuation when the party intended to offer the attorney's opinion at trial); Vaughan Furniture, 156 F.R.D. 123, 127-28 (M.D.N.C. 1994) (finding "an exception to the near inviolability of opinion work product" when a party designates as an expert witness the attorney who produced that work product); Cornett Mgmt. Co., LLC v. Lexington Ins. Co., 2007 U.S. Dist. LEXIS 28516, at *17-18 (N.D. W. Va. Apr. 17, 2007) (finding that the plaintiff waived opinion work product protection waived when the plaintiff placed in issue its communications with counsel that the defendant insurer had retained to defend the plaintiff in earlier litigation).

The conduct of DuPont's counsel certainly does not approach the egregious examples that prompted, in those decisions, findings of a waiver of opinion work product. It is true that publication of the statement of purpose, in part, reflected

counsel's opinion. But, counsel's conduct in expressing opinion in the press release was not the sort of extraordinary circumstance that warrants the piercing of counsel's opinion.[4] To hold otherwise would be to invite a waiver of opinion work product every time a press release is issued by a litigant, or, as Kolon would have it, a complaint is filed in court. And, it would trench impermissibly on the near inviolate protection given opinion work product under the controlling law of this circuit.

## C. The Claim of Substantial Need

Kolon, of course, is not required to show substantial need for protection that is waived. However, it must do so to have access to protected fact work product that as to which there has been no waiver.

The decision that the scope of the waiver is limited, see pp. 13-17, *supra*, makes it necessary to assess Kolon's claim of substantial need for the fact work product held to be protected in the Memorandum Opinion issued on this topic on April 13, 2010 (Docket No. 175). To make that showing, Kolon must establish: "(1) substantial need for the information; and (2) the unavailability of a 'substantial equivalent' of the information sought to be discovered." Sanford v. Virginia, No. 3:08cv835,

---

[4] The issuance of a press release is a common, not an extraordinary, circumstance in business, industry, Government and the professions.

2009 U.S. Dist. LEXIS 83979, at *6-7 (E.D. Va. Sept. 14, 2009) (quoting Fed. R. Civ. P. 26(b)(3)(A); National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 983-84 (4th Cir. 1992). Factors to consider in determining the existence of substantial need include "(1) importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." Sanford, at *9 (citing Fed. R. Civ. P. 26, advisory committee's note, 1970 Amendments). "[T]he movant must specifically articulate the necessity for the documents or other tangible things." Id. at *7 (citations omitted). A showing of substantial need allows access only to fact work product; opinion work product is not available under a showing of substantial need. National Union, 967 F.2d at 984.

On this record, Kolon has not met its burden. To begin, the Government has responded affirmatively to the Freedom of Information Act ("FOIA") request made by Kolon. And, DuPont has provided to Kolon the information it obtained by way of its own FOIA request. Further, DuPont has supplied substantial discovery to Kolon and Kolon may depose DuPont witnesses as well as Mitchell. Under these circumstances, Kolon cannot be found to have satisfied the record and third factors of the

18

substantial need test for the remainder of the protected information.

## CONCLUSION

For the foregoing reasons, and to the extent described herein, the Court concludes that DuPont has waived fact work product protection that would otherwise shield from disclosure the communications from law enforcement and documents of in-house counsel that provide the factual basis for the statement in the press release that, in arranging for and attending the August 26 meeting, Kolon had the purpose stated in the press release. DuPont must produce those documents to Kolon by August 3, 2010. Accordingly, KOLON INDUSTRIES, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS REFLECTING DUPONT'S NONPUBLIC COMMUNICATIONS WITH THE GOVERNMENT (Docket No. 209) will be granted, to that extent, and will otherwise be denied.

In briefing and arguing a prior motion, DuPont was asked to provide seven documents claimed as privileged for *in camera* review. Upon receiving this request and reviewing the documents, DuPont voluntarily withdrew its claim of privilege as to three of them. In so doing, DuPont stated that it "has not been asked before now to review those documents and the protections asserted over them," DuPont Oppo. Memo. of March 10, 2010, at 2 (Docket No. 138). That statement and the Court's

previous review *in camera* of documents as to which DuPont has claimed work product protection raise concerns that the work product protections claimed by DuPont may not be in accord with controlling precepts. Therefore, DuPont will be required to further review the 119 documents identified in the list supplied by Kolon as to which work product protection has been claimed. That review must be conducted in accord with the principles and rulings in this opinion and in the Memorandum Opinion and Order issued on this topic on April 13, 2010 (Docket Nos. 175-76). DuPont shall then produce the documents that are not subject to work product protection, in addition to those documents for which work product protection has been waived through the press release.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 30, 2010