

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E.I. DU PONT DE NEMOURS
AND COMPANY,

    Plaintiff,

v.                    Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the oral MOTION FOR JUDGMENT AS A MATTER OF LAW made by Kolon Industries, Inc. ("Kolon") at the end of all the evidence.[1]  For the reasons that follow, the motion was granted as to Count Five (Conversion) and Count Ten (Civil Conspiracy), and denied as to Count One.[2]

## PROCEDURAL HISTORY

On August 24, 2011, Kolon filed a MOTION FOR JUDGMENT AS A MATTER OF LAW (Docket No. 1390) and a memorandum in support

---

[1] Kolon made a motion under Fed. R. Civ. P. 50(a) as to Counts One, Five and Ten at the end of the Plaintiff's ("DuPont") case. The motion as to Count One was denied.  The Court took the motion under advisement as to Counts Five and Ten, and it is now denied as moot because the oral motion made at the end of all the evidence was granted.

[2] Count Ten actually is the sixth count in the Complaint.  The designation "Ten" appears to be a typographical error, but that designation will nonetheless be used herein.

thereof (Docket No. 1391). On August 26, DuPont filed a MEMORANDUM IN OPPOSITION TO KOLON INDUSTRIES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON CONVERSION AND CONSPIRACY (Docket No. 1401), the redacted version of which was filed on August 29 (Docket No. 1409). That same day, Kolon re-filed its memorandum in support of its motion (Docket No. 1414), and it also filed a REPLY MEMORANDUM IN SUPPORT OF KOLON INDUSTRIES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON CONVERSION AND CONSPIRACY (Docket No. 1421). At the end of all the evidence on September 8, Kolon renewed its motion orally and, after consideration of argument and supplemental briefing, the Court granted the motion as to Counts Five and Ten on September 8, 2011.

## A. Kolon's Position

Kolon argues that DuPont's conversion claim fails as a matter of law for four reasons. Def. Mem. Supp. JMOL Motion at iv. First, because the trade secrets acquired by Kolon were in paper copies of DuPont documents and in a CD containing copies of DuPont documents which were possessed by former DuPont employees, Edward Schulz and Michael Mitchell, respectively, Kolon contends that DuPont did not own the physical medium in which DuPont's confidential information was embedded. Thus, argues, Kolon, DuPont has not proven that Kolon took or possessed any of DuPont's property. Id. (citing United Leasing Corp. v. Thrift Ins. Corp., 440 S.E. 2d 902, 906 (Va. 1994) for

2

the proposition that conversion actions must concern either tangible property or intangible property rights that "arise from or are merged with a document"). Kolon also argues that, even if possession of a medium in which intangible property is embedded can amount to conversion in Virginia, the Court should still rule against DuPont because DuPont's confidential information was neither tangible nor intangible property.   Id. at vii.

Second, Kolon argues that it did not exercise dominion or control over DuPont's information because DuPont still has access to, and could still use, the allegedly converted confidential information.   Id. at viii (citing Restatement (Second) of Torts § 222(A)(1), 223 (1965); Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359 365-66 (Va. 1956); Harper v. Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985) ("Merely removing one of a number of copies of a manuscript (with or without permission) for a short time, copying parts of it, and returning it undamaged, constitutes far too insubstantial an interference with property rights to demonstrate conversion.").

Third, Kolon argues that any conversion claim is preempted by the Copyright Act, 17 U.S.C. § 504(c).   Under this argument, Kolon takes the view that DuPont's information is a "literary work" that falls under the Copyright Act (Id. at x-xi) and that

the rights DuPont complains have been taken are already covered by the Act.  Id. at xi-xii.

Fourth, Kolon argues that, even if the Court finds a conversion action to be appropriate, DuPont's conversion claim fails because it has not made a proper showing of damages.

Kolon argues also that, if Count Five fails, the civil conspiracy claim (Count Ten) fails as well because the object of the conspiracy has not been proved.

**B.   DuPont's Response**

DuPont contends that it has established a legally sufficient basis to support its conversion claim, responding to each of Kolon's four arguments on conversion in turn.  As to Kolon's first argument, concerning whether what Kolon possessed was "property," DuPont argues that confidential information is "property."   Pl. Mem. Opp. Def. JMOL Motion at 5 (citing Carpenter   v.   United   States,   484   U.S.   19,   26   (1987)) ("Confidential business information has long been recognized as property.").  DuPont further contends that a conversion claim is sufficiently proved upon a showing that DuPont owned the information, and that Kolon possessed the "physical embodiment" of that information.  Id.

In response to Kolon's second argument, concerning Kolon's dominion and control of the alleged confidential information, DuPont contends that Kolon's receipt of the documents is

4

sufficient to show its dominion and control over them,[3] and that the law of conversion does not require that DuPont be totally deprived of its confidential information for there to have been conversion thereof. Id. at 7 (citing In Re Outsidewall Tire Litig., Case No. 1:09cv1217, 2010 U.S. Dist. LEXIS 73729 (E.D. Va. July 21, 2010); Warshall v. Price, 629 So. 2d 903, 904 (Fla. 1993)) ("It is not necessary for a person to deprive another of exclusive possession of their property in order to be liable for conversion.").

In response to Kolon's third argument, concerning preemption, DuPont contends that its claim is not preempted because it has proven an "extra element" not covered by the Copyright Act, namely that Kolon "unlawfully retained the physical object" embodying its work. Id. at 8 (quoting United States ex rel. Berge v. Bd. Of Trustees of Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997)).[4] In response to Kolon's fourth argument, concerning damages, DuPont agrees that generally the measure of damages in a conversion action is the market value of the property at the time of conversion. Id. at

---

[3] DuPont cites Restatement (Second) of Torts § 229, cmt. B, e (1965).

[4] DuPont notes that preemption is an affirmative defense, and Kolon has the burden of showing that there is no "extra element" justifying the conversion action. Id. (citing In re Outsidewall Tire Litig., 2010 U.S. Dist. LEXIS 73729, at *18-19). And, DuPont says that Kolon has not met that burden.

10 (citing <u>Straley</u>, 10 S.E.2d at 553).   However, DuPont points out that Virginia decisions have recognized exceptions to this rule.   <u>Id.</u> (citing <u>Straley</u>, 10 S.E.2d at 553; <u>Grodeck v. Jung</u>, Law No. 1891, 1985 WL 306186, *2 (Va. Cir. Ct. June 10, 1985)). DuPont argues that, when the market value is unascertainable or not established, courts have awarded as damages the original cost of creating the property.   <u>Id.</u> at 10-11.[5]

### LEGAL STANDARD

Judgment as a matter of law is only appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party."   <u>Saunders v. Branch Banking & Trust Co.</u>, 526 F.3d 142, 147 (4th Cir. 2009) (citing Fed. R. Civ. P. 50(a)).   The Court must "view the evidence in the light most favorable to the nonmoving party," and must draw all reasonable inferences in that party's favor. <u>Id.</u> (citing <u>Figg v. Schroeder</u>, 312 F.3d 625, 635 (4th Cir. 2002)).

---

[5] DuPont cites the following authorities in this order in its memorandum on this point: Dan B. Dobbs, <u>Law of Remedies</u>, § 5.16(1) (2d ed. 1993); <u>Williams v. Chittendon Trust Co.</u>, 145 Vt. 76, 84, 484 A.2d 911, 915 (1984); <u>Wood v. Cunard</u>, 192 F. 293, 296 (2d Cir. 1911); <u>Long v. Arthur Robloff & Co.</u>, 22 Ill. App.3d 1012, 1025, 327 N.E.2d 346, 354-55 (1975); <u>Taft v. Smith, Gray & Co.</u>, 76 Misc. 283, 284-88, 134 N.Y.S. 1011 (1912); <u>United States v. Arora</u>, 860 F. Supp. 1091 (D. Md. 1994)).

## DISCUSSION

A.  **Virginia Recognizes A Property Right In Confidential Information Of The Sort That Kolon Obtained, And The Conversion Claim Is Not Barred Because The Confidential Information Was Embedded In Another Medium.**

DuPont and Kolon disagree over the classification of the confidential information contained in the documents and on the CD obtained by Kolon.  Kolon argues first that the confidential information is not property at all, and second that, even if it can be considered to be property, it is not of the type protected by Virginia conversion law.

Kolon's first argument is meritless.  There can be little doubt that DuPont's confidential information was "property."  The Supreme Court said as much in Carpenter v. United States, 484 U.S. 19, 26 (1987) when it explained that "confidential business information has long been recognized as property."

Kolon's second argument is also without merit.  That argument is based on the decision in United Leasing Corp. v. Thrift Ins. Corp., 440 S.E. 2d 902, 906 (Va. 1994), wherein the Supreme Court of Virginia commented that, "in general, a cause of action for conversion applies only to tangible property."  The Court went on to state that, "many courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond," and that "a cause of

7

action for conversion does not encompass claims for interference with underlined(undocumented) intangible property rights." Id.   The Court ultimately dismissed the plaintiffs' conversion claim, finding that there was no evidence that the plaintiffs ever owned the stock shares that they alleged had been converted.   Id.   The shares of stock were owned by a married couple, and the document transferring ownership to the plaintiffs was fraudulent.   Id.

Kolon contends that United Leasing establishes a rule that, in Virginia, intangible property is only susceptible of being converted if it is the sort of property that is customarily subject to merger into a document of title or other documents evidencing its ownership.   The argument is based on that part of United Leasing which cites language from Section 242 of the Restatement (Second) of Torts which states that:

> 1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.
> 2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document itself is not converted.

The types of documents in which, under Section 242, "intangible rights are merged" specifically include insurance policies, savings bank books, house receipts, promissory notes, share certificates, bills of exchange, warehouse receipts, and account books.   Id. cmt. b.

United Leasing does not control here for several reasons. First, United Leasing involved a claim to ownership of stock, a substantially different kind of property than is at issue in this case.   There the Court was assessing a claim asserting conversion of the kind of property which, of necessity, links the property right to some document evincing title or other proof of the right of ownership.   That is not the kind of property at issue in this case.

Second, the Restatement notes that its list of examples of intangible property subject to conversion is not exhaustive. Id.   Even when published in 1965, the Restatement explained that:   "The law is evidently undergoing a process of expansion, the ultimate limits of which cannot as yet be determined."

In explaining that statement, the comments noted that the modern action for conversion evolved from the common law action for trover, Id. cmt. C, and that, in the evolutionary process, conversion came into being as a means to recover the value of lost property, later found by another.   Id. cmt. d.   Thus, because intangible property could be neither lost nor found, conversion actions initially covered only tangible property. Id.   However, as the Restatement tells us, the law of conversion "has undergone a slow process of extension, which has carried it

beyond the [] ancient limits." Id.[6]  In fact, the Reporter for the Restatement, William Prosser, in acknowledging the evolution of the tort, stated: "There is perhaps no very valid and essential reason why there might not be conversion of an ordinary debt, the good will of a business, or even an idea." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 15, at 92 (5th ed. 1984).

The district courts in Virginia are divided on how to approach the conversion of intangible property. In the Western District of Virginia, it has been held that property of that ilk cannot be converted absent its merger with a document evidencing title (examples of which are listed in § 242 of the Restatement). Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love, LLP, 617 F. Supp. 2d 447, 453-55 (W.D. Va. 2008) (finding that the defendants' unauthorized use of secret information could not give rise to an action for conversion because it was not "merged in a document like a promissory note or stock certificate"). In the Eastern District, it has been held that such property can be converted without regard to

---

[6] See also Lucas v. Lucas, 946 F.2d 1318, 1323-24 (8th Cir. 1991) (finding that computerized book entries constituted sufficient evidence of conversion of stock); Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609 (S.D.N.Y. 2003) (finding that there could be conversion of an idea for a website); Conant v. Karris, 520 N.E.2d 757, 763 (Ill. App. Ct. 1987) (finding conversion of confidential information contained in a computer printout).

whether it is on the Restatement's list of documents in § 242, cmt. f.   In Re Outsidewall Tire Litig., Case No. 1:09cv1217, 2010 U.S. Dist. LEXIS 73729 (E.D. Va. July 21, 2010) (finding that blueprints were property that could be converted) and Combined Ins. Co. of Am. V. Wiest, 578 F. Supp. 2d 822 (W.D. Va. 2008) (finding that a company's targeted-recruitment list was property that could be converted).   Many jurisdictions have taken the view that conversion protects intangible property, even when the intangible property is not merged into a document evidencing title or ownership.[7]   The issue is one that presents itself with increasing frequency as technological advancements make it more prescient.

The Supreme Court of Virginia did not actually delineate the reach of the "merger" doctrine that it mentioned in United Leasing.   Rather, the Court explained only that courts had upheld conversion actions where there were intangible property rights and merger.   Significantly, the Court did not hold that, where intangible property rights were at stake, a conversion

---

[7] Alabama, Arkansas, California, the District of Columbia, Florida, Indiana, Massachusetts, Maine, Nebraska, California, New York, Ohio, Maryland, and Missouri are among those who have recognized that conversion protects intangible property even in cases where no document symbolizing ownership exists.   Courtney W. Franks, Comment, Analyzing the Urge to Merge: Conversion of Intangible Property and the Merger Doctrine in the Wake of Kremen v. Cohen, 42 Hous. L. Rev. 489, 517-519, n. 197, 205 (2005).

action would not lie if there was no merger.[8]

The reasoning advanced by decisions in the many jurisdictions that have permitted conversion actions for intangible property and by the decisions in Wiest and in In Re Outsidewall Tire Litig. is persuasive.  The purpose of the tort of conversion is to protect individuals from those who interfere with their property rights in a way that is inconsistent with the full exercise of those rights.  In this technology-driven world, the value of intangible property cannot be disputed, and a decision to limit conversion to tangible property or intangible property merged in a document symbolizing ownership would leave domain name users, satellite programmers, owners of telephone networks and internet servers, and others similarly situated unable to use an action for conversion for substantial interference with their rights.[9]  The Restatement and its reporter acknowledged the evolving nature of conversion law in 1965 when the Restatement was first published.  Even then, the Restatement authors recognized the importance of providing

---

[8] The "merger" language was not actually at issue in United Leasing.  The decision rested on the fact that, because of fraud, the plaintiffs never actually owned the shares of stock they thought they owned and thus had no conversion action.

[9] See, e.g., Kremen v. Cohen, 337 F.3d 1024, 1026 (9th Cir. 2003) (finding conversion of a domain name); J&J Sports Prods. v. Ward, Case No. 10cv193, 2010 U.S. Dist. LEXIS 121452, at *9-12 (S.D. Ill. Nov. 17, 2010) (denying motion to dismiss conversion claim for defendant's exhibition of television program without plaintiff's authorization).

protection for intangible rights, and they wrote in an era devoid of ecommerce. The Seventh Circuit, the Ninth Circuit, and the D.C. Circuit have recognized actions for conversion of intangible property,[10] and this Court concludes that, if confronted with the issue, the Supreme Court of Virginia also would permit a conversion action for converted intangible property of the sort here at issue: confidential business information about the manufacturing process and about a company's business plans.

Moreover, it makes no sense to conclude that intangible property loses its protection simply because it appears in a copy of a document or on a CD. Indeed, the ease with which copies of documents can be made and with which information can

---

[10]  See Kremen, 337 F.3d at 1034-35; FMC Corp. v. Capital Cities/ABC, Inc., 915 F.2d 300, 306 (7th Cir. 1990) (finding a valid conversion claim based on defendant's appropriation of plaintiff's documents and the information contained therein); Pearson v. Dodd, 410 F.2d 701, 707-708 (D.C. Cir. 1969).
In  justifying  its  decision  to  expand  the  tort  of conversion, the Court in Pearson explained that, although ideas and  information  were  not  traditionally  protected  under conversion law, these types of property clearly have protectable value:

> "Where information is gathered and arranged at some cost and sold as a commodity on the market, it is properly protected as property. Where ideas are formulated with labor and inventive genius, as in the case of literary works or scientific researches, they are protected. Where they  constitute  instruments  of  fair  and  effective commercial competition, those who develop them may gather their fruits under the protection of the law."

Id.

be copied onto documents and CDs makes it easier for a wrongdoer to convert the intangible property of others.  To hold that copied confidential information cannot be the subject of a conversion action would lead to more unauthorized copying and encourage conversion.  The Court declines Kolon's invitation to do so.

For the foregoing reasons, the Court declines to grant Kolon's MOTION FOR JUDGMENT AS A MATTER OF LAW on the theory that conversion actions are not available when the allegedly converted property is intangible property not merged into a document of title or ownership.

**B. A Reasonable Jury Could Find That Kolon Converted Property By Retaining It And Using It For Its Own Purposes.**

Kolon argues that conversion requires the exercise of dominion and control that is inconsistent with the plaintiff's continued use of the property or, in the alternative, that it requires control that essentially completely eliminates the value of plaintiff's property, and that neither of those circumstances occurred here.  DuPont contends that Kolon's use of its property need not be exclusive because that the receipt and retention of the property by Kolon is sufficient to establish conversion.

In United Leasing, the Supreme Court of Virginia outlined the elements of conversion as "encompass[ing] 'any wrongful

14

exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it.'" 440 S.E. 2d at 906 (quoting Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359 (Va. 1956)). That language was interpreted previously in this case to mean that the "purloining of copies of documents would constitute conversion because such action is an act of 'dominion' inconsistent with the true owner's property right." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 688 F. Supp. 2d 443, 455 (E.D. Va. 2009). And, in In re Outsidewall Tire Litig., the Court held that a defendant who had copied plaintiffs' blueprints had "deprived" plaintiffs of those blueprints even though the plaintiffs remained in possession of the originals. 2010 U.S. Dist. LEXIS 73729, at *17.

Both parties cite to the Restatement (Second) of Torts in support of their respective positions. Kolon cites to § 222(A)(1) and § 223. DuPont cites to § 229 cmt. b and cmt. e. Section 222(A) outlines "what constitutes conversion." Section 222(A)(1) explains that "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Section 222(A)(2) then lists a number of factors

15

to be considered in determining whether interference is serious enough to warrant requiring an actor to pay full value for the chattel.[11] Comment c addresses the difference between conversion and trespass to chattels and explains that conversion is "properly limited . . . to those serious, major and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value."

Sections 223 and 227 explain that "one who uses a chattel in a manner which is a serious violation of the right of another to control its use is subject to liability to the other for conversion," and Section 229 provides that "one who receives possession of chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to

---

[11] That Section provides:
> In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>> a) the extent and duration of the actor's exercise of dominion or control;
>> b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>> c) the actor's good faith;
>> d) the extent and duration of the resulting interference with the other's right of control;
>> e) the harm done to the chattel;
>> f) the inconvenience and expense caused to the other.

the immediate possession of the chattel." Comments b and e of §

229 explain this further.

Having analyzed Virginia decisional law and the Restatement

on the elements of conversion, having considered the arguments

of Kolon and DuPont, and having considered the trial record, it

is evident that a reasonable jury could find that Kolon

converted DuPont's confidential information. The jury could

find that Kolon's use of the copies of that information was an

act of "dominion" inconsistent with DuPont's property rights, or

alternatively, that DuPont was deprived of the exclusive use of

the information because of Kolon's possession and retention of

it. The jury could also find, based on the factors in

§222(A)(2) that Kolon must compensate DuPont for the full value

of the confidential information it acquired. The extent and

duration of Kolon's control over the information, its intent,

the harm done to the value of the information, and the

inconvenience and expense to DuPont all would weigh in favor of

DuPont. Finally, under § 223, the jury could find that Kolon's

use was a "serious violation of [DuPont's] right [] to control"

the use of the information, or alternatively, under § 229, a

jury could find that DuPont had the right to "immediately

possess" the confidential information at issue.

For the foregoing reasons, it is not appropriate to grant Kolon's MOTION FOR JUDGMENT AS A MATTER OF LAW on the ground that Kolon did not convert DuPont's confidential information.[12]

## C. DuPont Has Not Proved The Damages Aspect Of Its Conversion Claim.

Kolon argues that, in a conversion action, if the plaintiff seeks damages other than the market value of the converted property, the plaintiff must demonstrate that the market value of the converted property is unascertainable, and that DuPont did not do so in this case. Kolon also contends that DuPont's damage calculations are incorrect because:  (i) they cover the benefit to Kolon rather than the cost of production; (ii) they over-estimate the benefit of the information to Kolon; and (iii) DuPont did not lose the full-value of the converted information. Finally, Kolon argues that it would be nonsensical to award damages for conversion of confidential information after a jury has found that the information is not a trade secret.   DuPont argues that Mr. Jarosz' testimony established the cost of creation of the confidential information and cites cases showing that the cost of creation of the converted property is an

---

[12] Kolon and DuPont also dispute the issue of preemption under the Copyright Act.  However, under Berge, 104 F.3d at 1463 ("[A] 'state law action for conversion will not be preempted if the plaintiff can prove . . . that the defendant unlawfully retained the physical object embodying the plaintiff's work.'") (quoting Paul Goldstein, Copyright, Patent, Trademark and Related State Doctrines 777 (3d ed. 1993)).  That precept precludes a finding of preemption here.

appropriate measure of damages in conversion actions when market value is unascertainable.

In Straley v. Fisher, the Supreme Court of Virginia outlined Virginia's approach to damages in conversion actions. 10 S.E.2d at 553. The Court explained that, "as a general rule," the correct measure of damages "is the value of the property converted at the time and place of conversion." Id. However, the Court noted that this rule might not be applicable "where such measure does not accord with the principle of just compensation for the loss sustained." Id. The Court also observed that, in actions for trover, "profits dependent upon conjectural, speculative, or estimated future bargains are not subject to recovery." Id. (citing Burks' Pleading and Practice 260 (3d ed.); 65 Corpus Juris, Trover and Conversion, §§ 247, 249 & 251; McCormick v. Hamilton, 23 Gratt. 561 (64 Va.)).[13]

---

[13] See also Nat'l Acceptance Co. v. Virginia Capital Bank, 498 F. Supp. 1078, 1087 (D. Va. 1980), rev'd on other grounds Nat'l Acceptance Co. of America v. Virginia Capital Bank, 673 F.2d 1314 (4th Cir. Dec. 10, 1981) (Table, NO. 80-1605, 81-1120, 81-1121, 81-1122) (explaining that the law does not favor recoveries involving conjecture and speculation); Heinzman v. Fine, Fine, Legum & Fine, 217 Va. 958, 964 (Va. 1977) ("The law does not favor recoveries premised on conjecture."); Mazi v. Gilley, 44 Va. Cir. 322, 326 (Va. Cir. Ct. 1998) (refusing to award plaintiff damages in a conversion action because he had not established them with "reasonable certainty," and noting that the Court could not engage in "pure speculation" to determine the correct damages amount); Marcucci v. Hardy, 65 F.3d 986, 991-92 (1st Cir. 1995) (affirming district court's decision dismissing conversion claim after noting that plaintiff's damages could only have been determined by conjecture); Poynter

The language used in <u>Straley</u> tracks that of the Restatement (Second) of Torts which defines "value" as "exchange value or the value to the owner if this is greater than the exchange value." § 911(1).   The Restatement explains that, although the market value of the converted property at the time of conversion is the ordinary measure of damages, "if there is no ready market or no transactions of purchase or sale, then 'the opinion of experts' and 'the cost of reproduction and similar matters' are relevant."   <u>Id.</u> cmt. f.   Section 927 provides that a plaintiff entitled to conversion damages can recover "the value of the subject matter or of his interest in it at the time and place of conversion," (§ 927(1)) and also potentially, "the amount of any further  pecuniary loss of which the deprivation has been the legal cause" or "compensation for the loss of use [that has not been] otherwise compensated." <u>Id.</u> § 927(2).

Courts in Virginia and in other jurisdictions have found that damages other than the market value at the time of the conversion can be appropriate in some conversion cases.   Most of these courts have approved, as a measure of damages, the cost of creation or reproduction of the converted goods, but some have approved damages measured by the extent of unjust enrichment to

v. GMC, 2007 U.S. Dist. LEXIS 83542, at *11-13 (D. Tenn. 2007) (refusing to award plaintiffs' speculative damages in conversion case).

the converting party, and some have awarded the plaintiff the subjective value of the converted property.   See Grodeck v. Jung, Law No. 1891, 1985 WL 306186, *2 (Va. Cir. Ct. June 10, 1985) (holding that, even though the plaintiffs had recovered possession of their converted items, they were entitled to the amount defendants were unjustly enriched due to the conversion); Wood v. Cunard, 192 F. 293, 296 (2d Cir. 1911) (awarding the cost of reproduction of the plaintiff's valuable manuscript); United States v. Arora, 860 F. Supp. 1091 (D. Md. 1994) (awarding plaintiff the amount he spent creating/developing cell-lines); Williams v. Chittenden Trust Co., 145 Vt. 76, 84, 484 A.2d 911, 915 (1984) (awarding plaintiff the cost of production of converted architectural plans); Long v. Arthur Rubloff & Co., 22 Ill.App.3d 1013, 1025, 327 N.E.2d 346 (1975) (finding that the subjective value of a plaintiff's leasing data was an appropriate measure of damages but ultimately holding that the plaintiff was not entitled to damages because he had failed to meet his burden of proof); Heald v. MacGowan, 5 N.Y.S. 450, 452 (1889) (awarding the actual subjective value of electrotype plates to the plaintiff rather than the market value of the plates); Taft v. Smith, Gray & Co., 76 Misc. 283, 134 N.Y.S. 1011 (1912) (awarding the plaintiff the subjective value of his manuscript).   It appears that, like other jurisdictions, Virginia's approach to the issue of conversion damages where no

21

market value is ascertainable would permit, in a conversion action, a recovery measured by unjust enrichment based on an avoided cost theory, if that sum is not speculative in nature.

The nature of DuPont's conversion claim is critical to an analysis of the adequacy of its damage proof. In particular, the conversion claim here is a contingent one. DuPont's theory is that any converted information that the jury finds not to be a trade secret (either for lack of value or because its secrecy was not maintained, thereby diminishing its value) is nonetheless confidential information. DuPont then contends that the damage for conversion of that confidential information is measurable under the same unjust enrichment rationale, and on the same evidence, and in the same amount, as was presented to support the unjust enrichment proof for the misappropriated DuPont trade secrets ($919.9 million).

DuPont's damage expert, Mr. Jarosz, offered evidence that Kolon was unjustly enriched to the extent that it avoided the costs DuPont had incurred to develop the misappropriated trade secrets. Mr. Jarosz' valuation estimate was based on the underlying premise that the information at issue in this case all constituted trade secrets.

Mr. Jarosz testified, without explanation, that, the same damage theory and amount would be the measure for Kolon's unjust enrichment in converting any confidential information that the

jury found not to qualify as a trade secret. Although Mr. Jarosz testified that the cost avoided by Kolon in misappropriating the trade secrets was $919 million, he did not explain how that sum might be applicable to the conversion of confidential information not found to qualify as trade secrets.

By definition, a trade secret derives economic value, actual or potential, from not being generally known to others who can obtain economic value from its disclosure or use. Va. Code § 59.1-336. Thus, if the jury determines that all, or any piece of, information is not a trade secret, it will necessarily also have determined that the information has a less, or at least a different, value than if that information were a trade secret. That is either because the confidential, non-trade secret information is not secret or because it is does not have independent value by virtue of its secrecy.

In so finding, the jury will have negated the fundamental assumption upon which Mr. Jarosz' testimony was premised because, to come up with his damage figure in the first instance, Mr. Jarosz' started with the premise that the information had the value of trade secrets and then worked his way backwards in order to find out how much it would cost to create those trade secrets. Mr. Jarosz never testified to a damage figure for confidential information that was not imbued with the features that give a trade secret its value.

23

Hence, if the jury finds that all, or some of, the information obtained by Kolon is not a trade secret, then it will necessarily have concluded that, even if the converted information is confidential, it has been stripped of some, or all, of its value as a trade secret. In other words, the damage figure, of necessity, would be determined to be less that $919 million. But, nothing in the record would give guidance about how much less that might be. Thus, any amount that the jury could possibly award for conversion of non-trade secret, but still confidential, information would be entirely speculative.[14] In other words, the jury would simply be guessing at how much it should decrease the only figure made known to it once it determines that the converted information had less value than was the predicate for Mr. Jarosz' $919 million dollar figure.[15]

---

[14] Damage awards in conversion actions based on conjecture or speculation are improper. See infra the discussion of Straley v. Fisher & n. 8; Arora, 860 F. Supp. at 1100 (noting that damages other than the market value at the time of conversion are not available when "such claimed damages are so speculative as to create a danger of injustice to the opposite party")(quoting Staub v. Staub, 376 A.2d 1129, 1132 (Md. App. 1977)).

[15] If the jury finds that some of the information are trade secrets and some are not, its inquiry becomes even more speculative. The jury then has to determine, on its own, whether the cost-of-creation estimate provided based on the premise that all the information was trade secrets, is still somehow usable, and if it decides that it is usable, it then must determine how much of that cost to attribute to the creation of the trade secrets and how much to attribute to the

24

Certainly, Mr. Jarosz offered no evidence that would allow a less speculative result.   In presenting its evidence on damages predicated on the premise that the information at issue was a trade secret, DuPont has made it impossible for a jury to award damages for conversion of non-trade secret, confidential information without resorting to mere conjecture and speculation.   For that reason, the MOTION FOR JUDGMENT AS A MATTER OF LAW will be granted.

CONCLUSION

For the foregoing reasons, the Court concludes that DuPont has a property right in its confidential information, and that, under Virginia law, confidential information is susceptible of conversion.   A reasonable jury could find that Kolon's use of copies of DuPont's confidential information deprived DuPont of the value of that information or that Kolon's use was inconsistent with DuPont's rights to the information or deprived DuPont of the exclusive use thereof.   However, viewing the evidence in the light most favorable to DuPont, a reasonable jury could not fix any damage for the conversion of any confidential, non-trade secret, information without resorting to speculation.   Where, as here, there is simply no evidence upon which a reasonable jury could award damages, measured by the

---

confidential information.   This type of guesswork is not the province of the jury.

unjust enrichment theory (avoided costs) used here, a reasonable jury could not find for DuPont on its conversion claim, Count Five. DuPont agrees that if Count Five fails, so too does Count Ten, the conspiracy to commit conversion claims. Hence, KOLON INDUSTRIES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW (Docket No. 1390) as to Counts Five and Ten will be granted.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: October 3, 2011