

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E.I. DUPONT DE NEMOURS
AND COMPANY,

    Plaintiff,

v.                                Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF E.I. du PONT de NEMOURS & COMPANY'S MOTION FOR PUNITIVE DAMAGES (Docket No. 1524). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

On September 14, 2011, a jury returned a verdict in favor of the Plaintiff, E.I. du Pont de Nemours and Company ("DuPont") against Kolon Industries, Inc. ("Kolon") in the amount of $919.9 million in compensatory damages. That award was made pursuant to Va. Code Ann. § 59.1-338A, the damages provision of the Virginia Uniform Trade Secrets Act ("Virginia Act"). The jury also determined that Kolon had willfully and maliciously misappropriated 149 of DuPont's trade secrets, and, as a consequence of those findings, the Virginia Act permits the Court to award punitive damages. DuPont asserts that

it is entitled to a punitive damage award in the amount of $350,000.00 for each of the 149 trade secrets that was willfully and maliciously misappropriated, for a total of $52,150,000.00 in punitive damages.

## DISCUSSION

The Virginia Act provides that, "[i]f willful and malicious misappropriation exists, the court may award punitive damages in an amount not exceeding twice any [compensatory damages] award made under subsection A of this section [compensatory damages], or $350,000 whichever amount is less." Va. Code Ann. § 59.1-338B (2011). There is no Virginia decision interpreting § 59-1.338B. Accordingly, the Court must predict what the Supreme Court of Virginia would do if confronted with the question presented here: whether the $350,000 cap is applied per award or per trade secret.

The first task is to assess the meaning of the statute. The plain language of the punitive damage subsection is that the Court may award punitive damages in an amount not exceeding twice any award made under subsection A of the statute or $350,000, whichever amount is less. Nothing in the statute specifically permits or prohibits assessing $350,000 for each trade secret that was misappropriated.

Subsection 59.1-338B is modeled after the Uniform Trade Secrets Act ("Uniform Act") which provides that: "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in

2

an amount not exceeding twice any award made under subsection (a)."[1] Of the forty-four states plus the District of Columbia that have adopted some variation of the Uniform Act, Virginia was the only state to have set a cap on punitive damages. See Brian M. Malsberger, Trade Secrets: A State-by-State Survey, Appendix B (2006 & 2010 Cum. Supp.); see also Milton E. Babirak, Jr., The Virginia Uniform Trade Secrets Act: A Critical Summary of the Act and Case Law, 5 Va. J.L. & Tech. 15, 57 (Fall 2000).

Unlike the Virginia Act, the Uniform Act imposes no limit on exemplary damages so long as the exemplary award does not exceed twice the amount of the compensatory award. Thus, under the Uniform Act, the punitive damage award is linked to the quantum of the compensatory damage award, not to the number of trade secrets misappropriated. The Virginia Act follows, in the first clause of § 59.1-338B, that same formulation. However, Virginia also imposed a further limitation when it appended to the exemplary damages clause of the Uniform Act the provision that punitive damages had to be the lesser of an amount not exceeding twice the amount of the award under subsection A or $350,000.

---

[1] The Uniform Act denominates, its first subsection as "(a)," whereas the Virginia Act denominates its first section as "A."

The $350,000 figure is significant because that is the amount by which Virginia caps all punitive damage awards in its general punitive damages limitation statute. Va. Code Ann. § 8.01-38.1 (2011). That statute provides, in relevant part, that "[i]n no event shall the total amount awarded for punitive damages exceed $350,000," and it has been interpreted by the United States Court of Appeals for the Fourth Circuit to mean that the $350,000 punitive damage cap is to be the total amount of punitive damages awarded in any action. Al-Abood v. El-Shamari, 217 F.3d 225, 237 (4th Cir. 2000). In Al-Abood, the plaintiff contended that the punitive damages cap applied per defendant whereas the defendant contended that the cap applied per lawsuit. The Court of Appeals interpreted the statute by concluding that its plain language mandated "that the entirety of the punitive damages awarded in the action amount to no more than $350,000." The Court of Appeals cited with approval the decision in Huffman v. Beverly Calif. Corp., 42 Va. Cir. 205, 212 (Cir. Ct. Rockingham County 1997)(applying the statutory cap to the action as a whole rather than per defendant).

Just as in Al-Abood, the Court here finds no ambiguity in Virginia's version of the Uniform Act. It imposes a cap of $350,000 or up to twice the amount of the award made under subsection A of the Virginia statute, whichever is less. It is clear that, by appending to the two choices that a court has (an amount not to exceed

4

twice the award for misappropriation or $350,000) the limitation "whichever is less," the statute confines the punitive award for willful and malicious misappropriation to $350,000 if that is less than twice the compensatory amount awarded by the jury, without regard to the number of trade secrets that were misappropriated.

If the General Assembly had wished to liberalize the approach to awarding punitive damages in trade secret cases, it could have provided in the Virginia Act that the damage cap applied per misappropriated trade secret. Indeed, it is not unusual that statutes make punishments applicable on an event-by-event basis. See e.g., 15 U.S.C. § 45(m)(1)(A) (debt collectors who violate the Fair Debt Collections Practices Act may be subject to civil penalties of up to $16,000 per day); 42 U.S.C. § 12188(b)(2) (under Americans with Disabilities Act, court may assess a civil penalty of $50,000 for first violation and up to $100,000 for any subsequent violations); 33 U.S.C. § 1321(b)(7) (providing for civil penalties of up to $25,000 per day for discharge of oil). The General Assembly chose not to use that approach. Instead, it linked the quantum of damages for trade secret misappropriation to the size of the compensatory award and then further limited the award to $350,000 if that is less than twice the compensatory award.

This interpretation harmonizes the Virginia Act with Virginia's general punitive damages limitation in section 8.01-38.1 and affirms

5

the cardinal principle that statutes addressing the same subject should be harmonized whenever possible. Further, the fact that the two statutes use the exact same numerical cap of $350,000 evinces legislative intent that no award of punitive damages can exceed that amount in total. Moreover, the legislative history of § 59.1-338B confirms that the Virginia Act was intended to conform to section 8.01-38.1.

The original 1986 version of the Virginia Act did not contain a punitive damages provision. See 1986 Va. Laws Ch. 210, S.B. No. 123. Then, in 1987, the General Assembly enacted Va. Code Ann. § 8.01-38.1, which limited the total amount of punitive damages available in any tort action to $350,000. In 1990, the General Assembly amended the Virginia Act to include § 59.1-338B. See 1990 Va. Laws Ch. 344, H.B. No. 622. There were several versions of the new provision, each making clear that § 59.1-338B was drafted to be consistent with section 8.01-38.1. See Legislative Draft No. 1939113 (attached as Exhibit A to Kolon's Opposition to DuPont's Motion for Punitive Damages (Docket No. 1639)).

Consistent with its obligation to predict how the Supreme Court of Virginia would interpret Va. Code Ann. § 59.1-338B, the Court concludes that the statute would be given the interpretation that aligns the punishment provided in Virginia's version of the Uniform Act with Virginia's general approach to punitive damages.

Kolon argues that, even though the Virginia Act authorizes the court, rather than the jury, to award punitive damages, the Seventh Amendment to the United States Constitution requires that, in federal court, the jury must decide whether to impose punitive damages and, if so, the size of that award. DuPont's view is that Kolon waived any right to a jury determination of punitive damages. According to DuPont, Kolon, by its conduct, waived the right to have the jury make the determination with regard to punitive damages United States v. 1966 Beechcraft Aircraft, 777 F.2d 947, 951 (4th Cir. 1985)("We believe the better rule is to recognize that '[t]he right to [a] jury trial may . . . be waived by [the] conduct . . . of the parties.").

The Fourth Circuit clearly has held that "[a]n assessment by a jury of the amount of punitive damages is an inherent and fundamental element of the common-law right to trial by jury. Therefore, we hold that the seventh amendment guarantees the right to a jury determination of the amount of punitive damages. . . ." Defender Industries, Inc. v. Northwestern Mutual Life Ins. Co., 938 F.2d 502, 507 (4th Cir. 1991) (en banc). Two years later, the Court of Appeals applied that principle in a case governed by Maryland's Uniform Trade Secret Act. Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 666 (4th Cir. 1993) (citing Defender Industries, Inc. and Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 (4th Cir. 1992)) In Trandes, the district court, applying the Maryland Uniform Trade

7

Secrets Act (which adopted the uniform law without change) submitted the punitive damage issue to the jury over the defendant's objection. The Court of Appeals, relying on the forgoing language, affirmed the district court's decision and held that, notwithstanding the MUTSA's use of the word "court," the Seventh Amendment required that, in federal court, the award of punitive damages and the amount thereof must be decided by the jury.

However, the right to trial by jury conferred by the Seventh Amendment (like all constitutional rights) can be waived. And, in the Fourth Circuit, waiver may occur as the consequence of a party's conduct. United States v. 1966 Beechcraft Aircraft, 777 F.2d 947, 951 (4th Cir. 1985). Other circuits subscribe to the same principle. For example, the Third Circuit has explained that:

> Two considerable policy considerations counsel in favor of adopting the rule that parties may waive their Seventh Amendment rights by acquiescing in a judicial determination that an issue will be tried by the court. The first is the well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court. . . . The second is the valid concern that a party should not be permitted to silently acquiesce in a trial court's plan to try an issue non-jury by failing to make a timely objection and later demand a new trial only after it has lost on the merits. . . . Promotion of such tactics would not only lead to an unnecessary squandering of judicial resources but would also reduce a trial court's bench proceeding to a meaningless exercise in futility.

8

<u>In re City of Philadelphia Litigation v. Africa</u>, 158 F.3d 7213, 727 (3rd Cir. 1998) (citations omitted).

These settled precepts guide the analysis here. Neither party submitted jury instructions related to the award of punitive damages under the Virginia Act, and neither party requested that the Court prepare an instruction related to the award of punitive damages under the Virginia Act. Nor did either party include a question related to the award of punitive damages under the Virginia Act on its proposed verdict form. And, neither party requested that the Court include such a question on its revision of the proposed verdict form.

The parties did submit Agreed-Upon Jury Instruction No. 31 entitled "Willful and Malicious Misappropriation [Virginia]" that instructed the jury that, if it decided that Kolon had misappropriated a DuPont trade secret, then it would be asked to decide whether the misappropriation was "willful and malicious." This proposed instruction reflects the Virginia Act's two-step procedure for awarding punitive damages: the jury decides whether the misappropriation was willful and malicious, and the court may thereafter award punitive damages. Agreed-Upon Jury Instruction No. 31 became Court Instruction No. 35 to which neither party objected during the charge conference. Trial Transcript 5242:15-17.

After numerous modifications during the charge conference, the verdict form revised by the Court was reviewed and approved by the

parties. That verdict form also reflects the Virginia Act's two-step procedure, as the jury was asked, as to each trade secret, "Was the misappropriation willful and malicious?" but was not asked what amount of punitive damages should be awarded. Verdict Form (Docket No. 1514); Trial Transcript 5271-5287.

Also, during the charge conference, the Court addressed its proposed Court Instruction No. 47, a punitive damages instruction related to the other two counts on which the jury heard evidence, and noted that the instruction would be removed because those counts were not going to the jury. "47 is out." Trial Transcript 5270:14-15. As to the trade secrets count and punitive damages, the Court stated: "On a finding of willfulness, the Court determines any - damage; right?" DuPont agreed. Kolon remained silent. Trial Transcript 5270:15-18.

Here, as in Beechcraft, Kolon "waived [its] right to a jury trial by failing to object to" action taken by the district court. Id. Clearly, pursuant to Defender Indus. and Johnson v. Hugo's Skateway, the issue of punitive damages is to be decided by the jury unless that right is waived. Here, Kolon waived its right to have punitive damages assessed by the jury and agreed to have the issue submitted to the Court.

Kolon also contends that the record does not support an award of punitive damages. That argument is without merit. The jury,

10

after being fully and correctly informed held that the misappropriation of each of 149 trade secrets was malicious and willful. The evidence fully supports that finding. And, upon that finding an award of punitive damages is appropriate.

In a sur-reply, Kolon makes a passing argument that it did not waive its right to jury trial because the verdict here was returned under Rule 49(b) (general verdict with written questions) and that rule, unlike Rule 49(a), does not expressly provide for waiver. Kolon is correct that the jury returned a general verdict with responses to some questions.

However, the absence of an explicit waiver provision in Rule 49(b) does not mean that a party cannot, by its conduct, waive its right to jury trial. Kolon cites no authority that articulates such a rule. Nor could the Court locate any such authority.

Moreover, the Fourth Circuit has held that rights conferred by Rule 49(b) can be waived. See White v. Celotex Corp., 878 F.2d 144 (4th Cir. 1989) ("Proper respect for [Rule 49(b)] mandates that failure to bring any purported inconsistencies in the jury's verdict to the attention of the court prior to the release of the jury will constitute a waiver of a party's right to seek a new trial.") (collecting cases). See also Firehouse Restaurant Group, Inc. v. Scurmont LLC, 2011 WL 4943889, at *10 (D.S.C. Oct. 17, 2011) (citing White for the proposition that the plaintiff waived its objection

11

and motion under rule 49(b)). That, of course, conforms with the settled precept that a party may waive its constitutional right under the Seventh Amendment and, if one, can waive a constitutional right by its conduct, it stands to reason that a right conferred by rule also is amenable to waiver by conduct.

Finally, Kolon argues that, because the compensatory damage award was so substantial, the Court should exercise its discretion and decline to award punitive damages. That contention also is without compelling force. While the amount of the available punitive award is quite small when compared to the compensatory award, it does not follow that punitive damages should not be awarded.

The record here reflects that, knowing that DuPont's former employees were bound by confidentiality provisions, Kolon deliberately inveigled those former employees to provide confidential information about the making of Kevlar. And, the record is clear that Kolon used that information to improve its own less than adequate product, Heracron. According to the record, it simply was not important to Kolon that the information it sought and used was confidential to DuPont.

That kind of willful and malicious disregard for the property rights of others warrants punishment in its own right and to deter others from engaging in similar conduct. The fact that, under Virginia law, the punishment is artificially constrained by statute

does not warrant a finding that the punishment itself should not be imposed.

## CONCLUSION

For the foregoing reasons, PLAINTIFF E.I. du PONT de NEMOURS & COMPANY'S MOTION FOR PUNITIVE DAMAGES (Docket No. 1524) will be granted in part and denied in part. DuPont will be awarded a total punitive damage award of $350,000.00.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 22, 2011

13