**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



E.I. DU PONT DE NEMOURS
AND COMPANY,

     Plaintiff,

v.                          Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the Defendant Kolon Industries, Inc.'s ("Kolon") MOTION FOR RECUSAL AND DISQUALIFICATION (Docket No. 1875). For the reasons that follow, the motion will be denied.

### PROCEDURAL HISTORY

### 1. General Background

On February 3, 2009, E.I. du Pont Nemours and Company ("DuPont") filed a Complaint against Kolon Industries, Inc. ("Kolon") claiming, inter alia, that Kolon had "engaged in concerted and persistent actions to wrongfully obtain DuPont's trade secrets and confidential information about [DuPont's] KEVLAR [] aramid fiber." Compl. ¶ 1. DuPont also alleged claims for conspiracy, business torts, and conversion. All claims but the trade secret misappropriation claim were dismissed either

voluntarily by DuPont before trial or upon motion by Kolon before
the case was submitted to the jury. Thus, hereafter, the action
by DuPont will be referred to as the "Trade Secrets Case."

On April 20, 2009, Kolon filed its Answer and a Counterclaim
alleging that DuPont had violated section 2 of the Sherman Act,
15 U.S.C. § 2, by engaging in anticompetitive activity, attempted
monopolization and monopolization. The Counterclaim was twice
amended and twice dismissed, with leave to amend. Kolon declined
to amend its Second Amended Counterclaim ("SACC") and appealed
the dismissal to the United States Court of Appeals for the
Fourth Circuit. The Counterclaim hereafter will be referred to
as the "Antitrust Case."

Discovery in the Trade Secrets Case proceeded on schedule
while the decision to dismiss the Antitrust Case was on appeal.
In March 2011, the Court of Appeals reversed the dismissal of the
Counterclaim in the Antitrust Case and remanded the case for
further proceedings. By that time, however, the Trade Secrets
Case was nearing its final discovery and pretrial stages. The
trial of that case started on July 21, 2011 and concluded on
September 14, 2011.

The Trade Secrets Case was prompted in the first instance by
the activities of Michael Mitchell ("Mitchell"), a former DuPont
employee who had worked in sales and technical positions from
1982 until February 2006, when DuPont terminated his employment.

2

Mitchell's last position at DuPont related to sales and marketing of Kevlar, DuPont's para-aramid product. After the termination of his employment, Mitchell, in violation of DuPont internal policies and agreements between him and the company, kept numerous documents and files containing DuPont proprietary information related to Kevlar. Dec. 15, 2009 Mitchell Statement of Facts (No. 3:09cr425, Docket No. 7).

In 2005, Kolon had announced that it would enter the para-aramid fiber market with its product, Heracron. Kolón was of the view that, in certain parts of the para-aramid market, Heracron could compete directly with Kevlar. However, for several years before the 2005 announcement, Kolon had tried to develop a para-aramid product, but those efforts were largely unsuccessful. Therefore, in an effort to assure its successful entry into the para-aramid market, Kolon began actively to enlist the aid of individuals with an understanding of the technology and marketing of Kevlar. Shortly after the termination of Mitchell's employment with DuPont, Kolon approached Mitchell about the possibility of a consulting arrangement. After a year or so of negotiations, Mitchell and Kolon entered into a formal consulting arrangement in April 2007. Mitchell eventually delivered to Kolon a considerable amount of DuPont's confidential and trade secret information about the processes for making Kevlar.

3

To the same end, Kolon also engaged other former DuPont employees as consultants during the relevant time period, including Edward Schulz, George Hoover, and Atsushi Sumida. At one point, it also attempted to engage a DuPont employee who then was currently employed by DuPont.

## 2. Background of this Motion

As part of the discovery sought by Kolon in the Trade Secrets Case, on August 25, 2009, in its Second Set of Requests for Production of Documents, Kolon made a request for all pleadings, motions, settlement agreements, and other documents related to previous litigation between DuPont and one of its para-aramid competitors, Akzo, N.V. According to Kolon, DuPont and Akzo were involved in the 1980's in several trade disputes involving the manufacture and sale of para-aramid fibers and in litigation about each company's para-aramid patents. The trade disputes were in Germany, Japan and Great Britain, and the International Trade Commission. The patent litigation is said to have occurred, inter alia, in Delaware and Virginia.

In Virginia, Akzo sued DuPont in this Court in 1985 for infringement of an Akzo patent involving the manufacture of para-aramid fiber. That case, Akzo N.V. v. E.I. du Pont de Nemours and Co., 635 F. Supp. 1136 (E.D. Va. 1986), was presided over by the late Honorable Richard L. Williams who resolved the dispute

4

by holding that the Akzo patent was invalid.  That case hereafter
will be referred to as the "Akzo Case."

In the Akzo Case, DuPont was defended by the New York law
firm, Fitzpatrick, Cella, Harper & Scinto ("FitzpatrickCella")
and McGuire Woods & Battle (now "McGuireWoods").  It is public
knowledge that, in the 1980's, the presiding judge was a partner
in McGuireWoods.

In May of 2009, shortly after DuPont filed its Complaint in
the Trade Secrets Case, the clerk of court issued a notice
informing the parties that "in 1987, while a member of McGuire,
Woods, Battle & Boothe,[1] now McGuire Woods," he had become a
limited partner in Ninth & Cary Associates Limited Partnership
("NCA") (Docket No. 20).  The motion provided that "because
McGuire Woods is counsel to a party in this action," the
presiding judge believed it appropriate to disclose information
about his limited partner status, and after explaining that he
did not believe any grounds for disqualification existed on this
basis, asked the parties to file a motion within 20 days of the
date of the letter if they believed otherwise.  The parties did
not object either by virtue of the presiding judge's former

---

[1]  In 1987, McGuire, Woods & Battle became McGuire, Woods, Battle
& Boothe.

5

involvement in the limited partnership[2] or his former status as a partner in McGuireWoods.

In the Trade Secrets Case, Kolon asserted that, in the Akzo Case, Dupont had waived the confidentiality of some trade secrets at issue in the Trade Secrets Case by using information about those trade secrets without placing the information under seal and, through its counsel, by removing from some documents the confidentiality status that they had held under a protective order in the Akzo Case. Kolon pointed to letters by a former partner of the presiding judge, who represented DuPont during the Akzo Case and who played a role in the declassification of certain documents during the litigation.

When, in the Trade Secrets Case, DuPont objected to Kolon's discovery requests addressed, inter alia, to the Akzo Case, counsel for Kolon wrote DuPont a letter in March 2010. In that letter, Kolon took the view that it believed that documents related to the Akzo Case were in DuPont's possession and control in part because McGuireWoods had represented DuPont during the earlier litigation. Mem. Opp. Motion *In Limine* to Exclude Testimony of Edward Schulz and for Adverse Inferences, Exhibits 7-8. In April 2010, Kolon again requested documents relating to the Akzo Case. The request also sought documents about DuPont's trade disputes with Akzo and patent litigation between Akzo and

---

[2]   That partnership was dissolved at the end of 2010.

6

DuPont in jurisdictions other than Virginia. DuPont objected to this request, representing that it had produced all responsive documents. Then, in July, Kolon requested that DuPont designate a Rule 30(b)(6) witness to testify about the Akzo Case, and about the use and preparation of Dr. Edward Schulz as an expert witness in that case. Id., Exhibit 12.

Dr. Schulz was a consultant for Kolon, and one of DuPont's former employees, who, according to DuPont, had delivered trade secret and other confidential information to Kolon. He also had testified for DuPont (as an employee-expert) during the Akzo Case, and Kolon said that it hoped to use his testimony to establish that some of the information that DuPont alleged were trade secrets in the Trade Secrets Case had been disclosed publicly by Dr. Schulz during the Akzo Case. Id. at 1 (Kolon highlighted "Dr. Schulz's role as an expert witness in the Akzo litigation, and Dr. Schulz's ultimate knowledge that DuPont publicly disclosed its allegedly secret technology in the Akzo litigation nearly 25 years ago.").

Also in July, Kolon subpoenaed FitzpatrickCella for documents related to the Akzo Case. Id., Exhibit 13. The Court ordered McGuireWoods, DuPont and FitzpatrickCella to review the FitzpatrickCella files, to produce responsive documents, and to serve a privilege log for any privileged documents. Pursuant to that order, DuPont produced approximately 30 boxes of documents

on August 17, 2010 and, on August 27, 2010, served a privilege log.   See Status Update Regarding Akzo Litigation Documents (Docket No. 409).   One of the entries in the privilege log reflected that the presiding judge had sent Mr. Fitzpatrick of FitzpatrickCella a copy of the Complaint filed by Akzo in the Akzo Case.

In August of 2010, the parties also filed a number of motions *in limine*.   DuPont moved to preclude evidence concerning the Akzo Case.   PLAINTIFF E.I. du PONT de NEMOURS AND COMPANY'S MOTION *IN LIMINE* TO PRECUDE KOLON FROM PRESENTING EVIDENCE OR ARGUMENT AT TRIAL CONCERNING THE AKZO LITIGATION (Docket No. 431).   DuPont also moved to exclude the testimony of Dr. Schulz. PLAINTIFF E.I. DU PONT DE NEMOURS AND COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF EDWARD SCHULZ   AND FOR ADVERSE INFERENCES (filed on August 30, 2010) (Docket No. 418).   According to DuPont, Dr. Schulz had invoked the Fifth Amendment and the right to remain silent over 350 times in response to questions posed by DuPont's counsel.

Kolon later filed a motion seeking to foreclose DuPont from claiming that it had not waived secrecy in the Akzo Case.   KOLON INDUSTRIES, INC'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE CONFIDENTIALITY OF CERTAIN AKZO DOCUMENTS (Docket No. 947).   And, Kolon asserted these same arguments about the Akzo litigation in its motion for summary judgment.   KOLON INDUSTRIES, INC.'S MOTION

8

FOR SUMMARY JUDGMENT (Docket No. 379). These motions were filed, briefed, and decided during the time from August 10, 2010 to May 16, 2011.[3] The trial date was moved back several times because of discovery about Kolon's spoliation of evidence, and a hearing respecting sanctions for spoliation. Trial of the Trade Secrets Case was eventually set for July 21, 2011.

On July 20, 2011, the day before jury selection, Kolon filed its opposition memorandum to DuPont's proposed adverse inference jury instruction respecting the effect of Dr. Schulz having invoked the Fifth Amendment. (Docket No. 1247). In that memorandum, Kolon stated that it was:

> compelled to point out that there is some
> question whether Your Honor should be
> adjudicating these matters. The claim of
> privilege asserted by DuPont's counsel
> apparently is one that arises . . . in the
> 1985-86 time frame, a time when Your Honor
> was a partner in that firm
> [McGuireWoods] . . . Documents produced by
> DuPont from the files of Fitzpatrick Cella
> include at least one document indicating a
> role by Your Honor in the earliest stage of
> the Akzo litigation, although the extent of
> that role remains unknown.

---

[3] The motion *in limine* filed by DuPont to exclude evidence of the Azko Case (Docket No. 431) was granted by ORDER entered on May 16, 2011 (Docket No. 1146). The motion *in limine* filed by DuPont to exclude Dr. Schulz's testimony and for an adverse inference was granted, to the extent it sought exclusion of the testimony, by ORDER entered on May 16, 2011 (Docket No. 1150). The motion *in limine* filed by Kolon (Docket No. 947) was denied by ORDER entered on March 23, 2011 (Docket No. 961) and Kolon's motion for summary judgment (Docket No. 379) was denied by ORDERS entered on September 23, 2010 (Docket No. 607) and February 11, 2011 (Docket No. 867).

9

Id. at 8 (emphasis added).[4]

On July 22, 2011, counsel were convened in a telephone conference to discuss a number of matters about the forthcoming trial. In that conference, counsel for Kolon was asked by the Court to explain the above-quoted, terse reference in the brief filed on July 20. Kolon's counsel explained that the reference was to the May 9, 1985 letter from Mr. Fitzpatrick to the presiding judge. This was the first time the presiding judge was made aware of the FitzpatrickCella letter.

Subsequently, the documents listed in the privilege log filed on August 27, 2010 were produced. The first document was a letter dated May 9, 1985 from Mr. Fitzpatrick to the presiding judge confirming a telephone conference in which Mr. Fitzpatrick had asked the presiding judge to telecopy the Complaint filed by Akzo. That letter, in pertinent part, reads as follows:

Dear Mr. Payne:

> Confirming our telephone conversation, I would appreciate your telecopying the Complaint directly to our office, as well as to each of the following persons as soon as possible.

(3:11cv622, Docket No. 248, Exhibit 23 at 3).[5] The second document was a facsimile cover sheet to FitzpatrickCella also

---

[4] The last quoted sentence suggests that there were other such documents. However, Kolon has neither identified nor produced any such documents.

10

dated May 9, 1985 to which was attached Akzo's Complaint which had been filed May 6, 1985. Id.

During further inquiry into the matter, Kolon's counsel represented that they had reviewed all the non-privileged documents from the FitzpatrickCella files and that none of those documents reflected the name of the presiding judge. July 22, 2011 Tr. 20. DuPont's counsel represented that they had reviewed the privileged documents in the FitzpatrickCella files and that the privileged documents did not mention the presiding judge. Id. at 19.

Opening statements and presentation of evidence in the Trade Secrets Case began as scheduled on July 25. While the trial was underway, DuPont's counsel, at the Court's direction, reviewed some 588 boxes of files from the archives of FitzpatrickCella and reported that the letter from Mr. Fitzpatrick to the presiding judge was the only document in those files containing the name or initials of the presiding judge. The telecopy cover sheet forwarding the Akzo Complaint did not mention the presiding judge.

Having seen those two documents (the Fitzpatrick letter and the response telecopy), the presiding judge advised counsel that, "[h]aving reviewed those documents, I have no collection [sic] of

---

5   The remaining text supplied the names and addresses of other lawyers to whom a copy of Akzo's Complaint should be sent.

having had a conversation with Mr. Cella or Mr. Fitzpatrick. I still don't. And I have no recollection of forwarding the Complaint to him, nor does it prompt in my mind any recollection of any involvement in this litigation." July 27, 2011 Tr. 419.

Thereafter, Kolon presented nothing further on the matter. The presiding judge ruled on Kolon's objection to the adverse inference instruction proposed by DuPont. The trial proceeded, lasting approximately seven weeks. The jury returned a verdict on September 14, 2011 in favor of the Plaintiff, E.I. du Pont de Nemours and Company ("DuPont") against Kolon Industries, Inc. ("Kolon") in the amount of $919.9 million in compensatory damages. (Docket No. 1514). Thereafter, the Court ruled on several post-trial motions, including DuPont's motion for asset discovery (Docket No. 1587), DuPont's motion for punitive damages (Docket Nos. 1696 & 1697), and DuPont's motion for asset freeze (Docket No. 1714).

Several other motions were filed and briefed after the trial and are pending decision. They are: (1) DuPont's motion for permanent injunction; (2) DuPont's motion to compel discovery relating to enforcement of the judgment; (3) Kolon's motion for an evidentiary hearing; (4) Kolon's motion for a stay of execution of judgment and to excuse the putting of bond pending appeal; (5) DuPont's Motion for Attorneys' Fees, Sanctions and Costs; (6) DuPont's Application for Attorneys' Fees and Expenses

12

Related to Defendant Kolon's Spoliation of Evidence; (7) Kolon's Motion to Stay Injunction Proceedings (filed under seal); and (8) DuPont's Motion for Leave to Register the Judgment Pursuant to 28 U.S.C. § 1963.

On November 30, 2011, Kolon filed a motion for recusal in the Antitrust Case, arguing that the presiding judge should disqualify himself from deciding its counterclaim against DuPont for antitrust violations.[6] In the last sentence of its memorandum in support of recusal in the Antitrust Case, Kolon also suggested that the Court "reconsider its refusal to recuse" itself from the Trade Secrets Case, Mem. Supp. Motion for Recusal at 31 (3:11cv622, Docket No. 248), apparently referring to the oblique reference that Kolon had made in the brief it filed in the Trade Secrets Case on July 20, 2011 (Docket No. 1247) which was not a motion for recusal and was not treated as such. Indeed, notwithstanding that, and a few other, passing references to recusal in papers filed in the Trade Secrets Case,[7] Kolon did not file a recusal motion in that case.

---

[6] On September 21, 2011, for administrative convenience, and because the trade-secrets trial had concluded (post-trial motions were still pending), Kolon's Second Amended Counterclaim was severed from the Trade Secrets Case, restyled Kolon Industries, Inc. v. E.I. du Pont de Nemours and Co., and given a new civil action number (C.A. 3:11cv622). A new docket numbering system was initiated with the redesignation Order as Docket No. 1.
[7] Aside from the reference in the memorandum in opposition to DuPont's proposed adverse inference, recusal was mentioned in the following papers: Kolon's Reply in Support of its Opposition and

13

On January 24, 2012, the Court held a hearing on two of
Kolon's motions (for judgment as a matter of law and for new
trial) in the Trade Secrets Case. Kolon's counsel began argument
by stating:

> First, Your Honor, we'll move forward with
> this argument regarding judgment as a matter
> of law without prejudice, however, to our
> continued position that Your Honor should
> recuse himself . . .

The Court responded:

> I don't have anything from you in this case
> on recusal. This is a separate case from the
> other case. I have nothing from you except
> statements about what you think might be
> appropriate for a judge to do, and under the
> circumstances, since the cases are different,
> the circumstances are different, I don't
> consider I even have the issue on the table.
> If you want to put it on the table, you
> should have made a motion, but there isn't
> one.

Jan. 24, 2012 Tr. 4.

Three days later, on January 27, 2012, Kolon filed its
MOTION FOR RECUSAL AND DISQUALIFICATION (Docket No. 1875) in the
Trade Secrets Case.

---

Objection to DuPont's Proposed Schulz Adverse Inference Jury
Instruction (Docket No. 1264)(referenced to in a footnote at 2
n.1); Kolon's Memorandum in Support of its Motion to Stay
Injunction Proceedings (Docket No. 1813)(referenced to in a
sentence at 19); DuPont's Opposition to Kolon's Motion to Stay
Injunction Proceedings (Docket No. 1830) (referenced to at 26-
27); Kolon's Reply Memorandum in Support of its Motion to Stay
Injunction Proceedings (Docket No. 1843) (referenced to in one
paragraph at 19 and in a footnote at 19 n.14).

The foregoing facts form the basic context for the assessment of Kolon's motion for recusal. Other facts will be found in the discussion of the analytical component to which they relate.

## DISCUSSION

Kolon's motion relies on the provisions of 28 U.S.C. § 455(b)(2) and 28 U.S.C. § 455(a). DuPont responds to Kolon's arguments respecting § 455(b)(2) and § 455(a). DuPont also argues that Kolon's motion is untimely.

### 1. Section 455: General

The federal standards governing recusal of federal judges are found in 28 U.S.C. §§ 455 and 144.[8] In 1974, Congress amended § 455 in order to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge . . . conform generally with the . . . canons of the Code of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974). Section 455(a), in its current form, provides that: "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned." Such a circumstance

---

[8]    Section 144 applies only to district judges and requires recusal "whenever a party" in a district court "files a timely and sufficient affidavit" demonstrating that the presiding judge has a "personal bias or prejudice" against or in favor of a party.    Kolon has not moved for recusal under § 144, and that statute is not at issue here.

15

"is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 850 (1988) (affirming the Fifth Circuit's decision and interpretation in Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796 (5th Cir. 1986)).

Under 28 U.S.C. § 455(b)(2), a judge is required to recuse himself "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." And, under § 455(e), "no justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." (emphasis added).

Although the 1974 revisions to § 455 broadened the standard for recusal, Congress emphasized that those standards did not permit recusal unless the parties presented a reasonable basis for disqualification. H.R. Rep. No. 93-1453 (Oct. 9, 1974). In that regard, the report advised that "[E]ach judge must be alert

16

to the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision . . . [l]itigants . . . are not entitled to judges of their own choice." Id.

## 2. **Timeliness of the Motion**

DuPont argues first that the recusal motion should be denied because it was not timely made. Kolon takes the view that § 455(b) does not include a timeliness requirement, and that, because § 455(e) prohibits a judge from "accepting from the parties" a waiver of the grounds for disqualification, a timeliness requirement would be tantamount to a waiver.[9] Kolon

---

[9] In its Reply, Kolon also argues, for the first time, that DuPont discovered the involvement of the presiding judge in the Akzo Case long before Kolon, and that DuPont purposefully hid facts associated with that involvement from the Court and Kolon. See, e.g., Reply Mem. Supp. Motion for Recusal at 4-5. According to Kolon's Reply, even if it knew the facts relevant to recusal in August of 2010, its recusal motion should not now be barred on timeliness grounds because DuPont had access to better information at that time concerning the issue. Id. at 20.

Although Kolon devotes much of its Reply to this line of argumentation, its contentions are completely new, and DuPont has had no chance to respond to them. It would be manifestly unjust and would undermine the integrity of the judicial process if the Court were to consider these new arguments because they were presented knowing that DuPont has no opportunity to respond. See Heardrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10th Cir. 1994) (noting the unfairness to the opposing party and to the Court of allowing new arguments in a reply brief)(quoting Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992)); Carbino v. West, 168 F.3d 32, 34-35 (Fed. Cir. 1999) ("There are cogent reasons for not permitting an appellant to raise issues or arguments in a reply brief . . . [a]mong them are unfairness to the appellee who does not have an opportunity to respond and the added burden on the court that a contrary

17

did not address directly whether a motion based on § 455(a) is

subject to a timeliness requirement, but in its discussion of

Fourth Circuit decisional law on timeliness, Kolon implicitly

acknowledges that such a requirement exists with respect to §

455(a). Kolon also contends that, in any event, one of its

---

practice would entail."); Knipe v. Skinner, 999 F.2d 708, 710 (2d
Cir. 1993) ("Arguments may not be made for the first time in a
reply brief."). Thus, the Court will not consider these new
arguments.

In any event, the arguments are meritless. Kolon cannot
make its motion timely by arguing that DuPont did not timely file
a recusal motion. Kolon does not deny that, in August of 2010,
it had knowledge of what it refers to as the presiding judge's
"involvement" in the Akzo Case. Moreover, the presiding judge
was not actually "involved" in the Akzo Case at all. He answered
one telephone call in which he was asked to send the Complaint
and, in response, had that Complaint sent.

Furthermore, in the recusal motion at issue here, in the
Trade Secrets Case, Kolon essentially abandoned the argument that
the presiding judge's transmittal of a complaint by telecopy
implicated any bias on his part at all, instead arguing that his
former partners' involvement in the case warranted recusal.
Having read DuPont's responses to that argument, Kolon appears to
have changed its mind yet again as to why recusal is warranted.
The Court will not reward this type of tactical maneuvering.

Lastly, the idea that DuPont purposefully "hid" information
concerning the Akzo litigation has no evidentiary support in the
record at all. The fact that DuPont, like Kolon, was aware in
August of 2010 that the presiding judge had worked for
McGuireWoods at a time when McGuireWoods represented DuPont,
proves nothing. Similarly, the fact that DuPont decided to
search to make sure that the presiding judge was not involved in
the prior representation, establishes nothing, except perhaps
that DuPont was conducting due diligence. The results of
DuPont's search did not show that the presiding judge represented
DuPont in the earlier litigation. The search did not reveal a
potential basis for recusal. Thus, there was nothing for DuPont
to disclose.

18

grounds for recusal ripened just before it raised the issue of recusal for the first time and therefore was timely made.[10]

The language of § 455 is silent on the issue of timeliness. However, the majority of circuits, including the First, Second, Third, Fourth, Fifth, Eighth, Ninth, Eleventh, and Federal Circuits have found that timeliness is a requirement when recusal is sought under § 455. See, e.g. Ogala Sioux Tribe v. Homestake Min. Co., 722 F.2d 1407, 1414 (1st Cir. 1983) (finding that a timeliness requirement applies to both §§ 455(a) and 455(b)); In re International Business Machines Corp., 618 F.2d 923, 928, 932 (2d Cir. 1980) (noting and expressing approval of previous case law interpreting § 455 as requiring timeliness); Stone Hedge Properties v. Phoenix Capital Corp., Nos. 02-3869, 02-4032, 2003 WL 21796551, at *2-3 (3d Cir. 2003) (unpublished opinion) (finding that "settled authority" established a timeliness requirement under both §§ 455(a) and 455(b), citing to cases in the Second, Third, Fourth, Fifth, Eighth, and Ninth Circuits); United States v. Owens, 902 F.2d 1154, 1155 (4th Cir. 1990) (quoting Satterfield v. Edenton-Chowan Bd. Of Ed., 530 F.2d 567, 574-75 (4th Cir. 1975) for the proposition that "timeliness [is]

---

[10] Kolon argues that the clock should start on July 20, 2011, when, in its brief concerning DuPont's instruction on an adverse inference respecting Dr. Schulz's invocation of the Fifth Amendment, Kolon made the oblique reference that there was some question whether the presiding judge should be deciding the adverse inference issue.

required in all recusal contexts"); <u>United States v. York</u>, 888
F.2d 1050 (5th Cir. 1989) (finding a timeliness requirement under
both sections and noting that Congress understood that the
"'judicial gloss' on the former section 455 would be preserved
and that a timeliness requirement was implicit"); <u>In re Kansas
Pub. Employees Sys.</u>, 85 F.3d 1353, 1360 (8th Cir. 1996)
("[C]laims under § 455 will not be considered unless timely
made."); <u>United States v. Conforte</u>, 624 F.2d 869, 879-80 (9th
Cir. 1980) (finding a timeliness requirement in § 455); <u>Summers
v. Singletary</u>, 119 F.3d 917, 920 (11th Cir. 1997) ("[T]imeliness
is a component of § 455(b)"); <u>Polaroid Corp. v. Eastman Kodak
Co.</u>, 867 F.2d 1415, 1418 (Fed. Cir. 1989) (finding that
timeliness is one "factor" to be considered in the § 455
analysis).[11]

    Contrary to Kolon's contention, timeliness is a requirement
under § 455(b) in the Fourth Circuit. <u>United States v. Owens</u>,
902 F.2d at 1155-57. Kolon attempts to distinguish <u>Owens</u> by
arguing that it addresses only § 455(a). That argument
misapprehends <u>Owens</u> because, although the defendant in <u>Owens</u> did

---

[11] Although the opinion is unpublished, and thus not binding as
precedent, the Seventh Circuit also has acknowledged that "some
degree of timeliness is required" under § 455(b) in <u>United States
v. Lampe</u>, 1996 U.S. App. LEXIS 26177, at *9 (7th Cir.
1996)(unpublished). The <u>Lampe</u> decision, along with the other
cited decisions, provides a useful analytical tool when
evaluating the timeliness requirement.

not specify which part of § 455 required recusal, the facts that formed the basis of his recusal motion fall squarely within § 455(b)(1).[12]    Moreover, in Owens, the Fourth Circuit clearly explained that timeliness was required for all recusal motions, not just those falling under § 455(a).  902 F.2d 1154, 1155 (4th Cir. 1990).  The Court of Appeals took the view that promptness in filing recusal motions is necessary to prevent parties from holding back information relevant to recusal with the purpose of determining whether the presiding judge treats them the way that they want to be treated.    See id. at 1156 (quoting In re Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960)).  To avoid this circumstance and the corresponding waste of resources (of the parties and the judiciary) and the unfairness (to the other party) that such waste entails, the Fourth Circuit requires the movant "to raise the disqualification of the trier . . . at the earliest moment after knowledge of the facts."    Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 574 (4th Cir. 1975) (emphasis added).    That fundamental rationale applies equally to both §§ 455(a) and 455(b).[13]

_____

[12]  Section 455(b)(1) requires recusal when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

[13]  See also United States v. Taggart, 983 F.2d 1059, No. 92-6468, 1993 WL 10876, at *3-4 (4th Cir. Jan. 21, 1993) (unpublished) (holding that a recusal motion brought under both §§ 455(a) and

21

Kolon's argument concerning waiver under § 455(e) is also without merit. To begin, it is widely accepted that timeliness and waiver are two distinctly different issues. See United States v. York, 888 F.2d 1050, 1055 (5th Cir. 1989) (observing "that waiver and timeliness are distinct issues"); United States v. Bayless, 201 F.3d 116, 127 (2d Cir. 2000) ("Waiver is a renunciation . . . of the right to seek recusal . . . [u]ntimeliness, on the other hand, is merely a failure to seek recusal when it should have been sought); Summers v. Singletary, 119 F.3d 917, 921 (11th Cir. 1997) (noting the persuasiveness of York's analysis on the waiver and timeliness distinction); Stone Hedge Properties v. Phoenix Capital Corp., Nos. 02-3869, 02-4032, 2003 WL 21796551, at *2-3 (3d Cir. 2003) (same); see also United States v. Olano, 507 U.S. 725, 733 (1993) (emphasizing the difference between "forfeiting" a claim, by not timely asserting it, and "waiving" a claim, by intentionally relinquishing it and extinguishing the right to raise it). These decisions, standing alone, dispose of Kolon's theory that there is no distinction between timeliness and waiver.

That distinction, of course, is obvious from the text of § 455(e) which does not address timeliness but, instead, forecloses

_____

455(b)(1) was untimely); United States v. Sarno, 41 F. App'x 603, 608-09 (4th Cir. 2002) (unpublished)(holding that a recusal motion under § 455(b)(5)(ii) was without merit, in part because of its untimeliness). Unpublished opinions are not of precedential effect, but they can be useful analytical tools.

the ability of a judge to "accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b)," while allowing a judge to accept a waiver of a ground arising under subsection (a). Here, no party has asked the Court to waive any ground for disqualification in subsection (b) or in any other statute. Thus, by its terms, § 455(e) is not implicated here.

Moreover, Kolon's argument that the waiver prohibition forecloses a timeliness requirement ignores the statutory text of subsection (a) and the entirely different purposes served by the distinctly different concepts of the timeliness requirement and the waiver provision. To read § 455(e) as Kolon urges would frustrate the very purpose of a timeliness requirement and allow a party, with knowledge of a disqualifying circumstance, to lay in wait and spring the trap when doing so would provide a strategic advantage. Such a rule would foster great mischief. Further, the result of such a rule would lead to the waste of party and judicial resources and to prejudice and unfairness to the adverse party.

Finally, to adopt Kolon's view of § 455(e) would be to ignore the well-considered opinions that reflect the decisions of every circuit to have considered the issue and that distinguish between waiver and timeliness. The Court declines the invitation to take that course.

23

Kolon acknowledges that its first ground for recusal, the declassification and unrestricted disclosure of materials in the Akzo Case, arose long ago, and implicitly acknowledges that, if § 455(b) contains a timeliness requirement, this ground for recusal would be eliminated. See Mem. Supp. Motion for Recusal at 26.[14] According to Kolon, the issue of declassification of evidence in the Akzo Case arose in August of 2010 when DuPont filed its motion in limine concerning the same. Id. It is clear that any recusal motion on this ground is untimely.[15] Thus, the question

---

[14] The memorandum states:

> The first ground (declassification) arose in connection with DuPont's Akzo motion in limine. All the facts relevant to § 455(b)(2) were before the Court at that time and the law does not require a motion for recusal. However, even assuming there was a requirement to bring a recusal motion to address the declassification ground at that time, this would be irrelevant to whether recusal based on the second, separate ground (Dr. Schulz's understanding) was timely raised.

Id.

[15] Kolon also argues, interestingly enough, that "all of the facts regarding Your Honor's law partners' representation of DuPont in the declassification and disclosure of documents in the Akzo litigation were on the table" in September of 2010. Id. at 26-27. Nevertheless, instead of moving for recusal immediately, Kolon chose to wait until January of 2012, after months of discovery motions, a seven week jury trial, a verdict, and numerous post-trial motions had been decided. By its own admission, Kolon waited approximately 16 months before filing the motion, and during the course of those 16 months, Kolon obtained absolutely no new information to implicate any bias on the part of the presiding judge based on declassification/dis-closure of Akzo-related documents.

24

to be decided is whether Kolon's second ground for recusal is timely. It is not.

Kolon argues that the second ground for recusal became ripe in July 2011, when DuPont submitted its proposed adverse inference concerning Dr. Schulz in its proposed jury instruction. Kolon contends that this was the first occasion in which Dr. Schulz's personal understanding regarding the confidentiality of DuPont's information became an issue, and that Dr. Schulz's personal understanding was based in part on representations by McGuireWoods during the Akzo Case. However, Kolon does not explain why Dr. Schulz's personal understanding regarding confidentiality was not an issue in 2010, when DuPont first filed its motion *in limine* seeking to exclude his testimony and requesting an adverse inference. There is simply no reason why DuPont's request for an adverse inference jury instruction regarding Dr. Schulz in July of 2011 would be any different from its earlier request for such an adverse inference in August of 2010.

And, in fact, a review of Dr. Schulz's testimony reveals as much. Dr. Schulz's deposition was taken in July of 2010, before DuPont's motion *in limine* was filed. In that deposition, Dr. Schulz testified that he had received documents from attorneys and that he was told by these attorneys to retain the documents. See, e.g., Mem. Opp. DuPont's Proposed Schulz Adverse Inference

Jury Instruction, Exhibit 2, Tr. 50-51, 53, 56, 58, 63, 65, 66, 70. In Kolon's September 2010 opposition brief (Docket No. 509), Kolon argued against DuPont's adverse inference instruction, citing Dr. Schulz's testimony that, in the Akzo Case, "there was a 'complete and total disclosure of everything about the [aramid fiber manufacturing] process in agonizing detail.'" Id. at 8 (citations omitted). In other words, Kolon knew in July of 2010 the same information that it now claims forms the basis for its recusal motion. It was clear then, as it is now, that Dr. Schulz had been given documents by attorneys representing Kolon and that he believed that certain information was not confidential. And, as Kolon has acknowledged, it knew then all of the relevant information about the presiding judge's employment at McGuireWoods and about McGuireWoods' representation of DuPont. Furthermore, as of August 2010, Kolon had in its possession the privilege log entry pertaining to the presiding judge's transmittal to FitzpatrickCella.

What Kolon now claims to be its first reference to recusal did not occur until July 20, 2011, almost a year later. Even then, Kolon did not file a motion for recusal.[16] Rather, in its

---

[16] Kolon argues that mentioning recusal in its July 20, 2011 brief was enough to "raise the issue" and preserve the timeliness of its request for recusal. Because Kolon knew all the facts that form the basis of its motion for recusal in August of 2010, it did not "raise the disqualification of the trier . . . at the earliest moment after knowledge of the facts," and therefore, the

26

brief addressing DuPont's proposed jury instruction, Kolon made an oblique comment about whether the presiding judge "should be adjudicating these matters." Kolon did not articulate what it meant by that statement, but the context shows the words referred to the issue of whether an adverse inference should be drawn from the testimony of Dr. Schulz.

On July 22, 2011, when the Court asked Kolon's counsel what was meant by the reference, Kolon's counsel said that the comment was based on the entry in the privilege log, which contained the transmittal sent by the presiding judge to FitzpatrickCella with the Complaint attached. July 22, 2011 Tr. 16. Kolon's counsel, vested fully with the knowledge that the presiding judge had been a partner in McGuireWoods while the Akzo Case was pending and being aware of the perceived import of Dr. Schulz's testimony to Kolon's case, then stated that the privilege log entry indicating that the presiding judge had sent the Complaint had been received "months ago," but that counsel had not raised the issue because "getting that document was not something that, in my mind, would trigger, you know, any bias or anything like that." July 22, 2011 Tr. at 17.

---

Court need not decide whether the bare mention of potential grounds for recusal satisfies timeliness requirements in the Fourth Circuit. Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 574 (4th Cir. 1975).

Nonetheless, the Court took Kolon's oblique reference seriously and had the matter fully investigated. DuPont was directed to conduct an expedited review of the company and law firm billing records to determine if there was any other reference to the presiding judge. That was because, as the parties were told, the presiding judge has no recollection that he did any work on the Akzo Case and did not remember either a request by Mr. Fitzpatrick for the Akzo Complaint or sending a copy of Akzo's Complaint to him. But, in an abundance of caution, it was thought best to have the records reviewed to see if those recollections about a twenty-five year old case may have been in error.

The search of those records produced no new information. And, Kolon's counsel was informed by DuPont's counsel that the one document (the Fitzpatrick letter) identified earlier (Docket No. 1044 at 103, DX 5092) was the only document referring to the presiding judge. The response to that letter was a cover sheet (which did not mention the name of the presiding judge) and a copy of the Akzo Complaint. Thereafter, Kolon said no more.

The seven week jury trial went forward, and, thereafter, the Court ruled on several post-trial motions, including DuPont's motion for asset discovery (Docket No. 1587), DuPont's motion for punitive damages (Docket Nos. 1696 & 1697), and DuPont's motion for asset freeze (Docket No. 1714). And, as explained above,

28

briefing was scheduled and went forward on motions respecting an injunction, a request for stay, and Kolon's motion for judgment as a matter of law and for a new trial. All the while Kolon lay in wait.

When it did file a motion for recusal on November 30, 2011, it did so only in the Antitrust Case and even then, Kolon made only a conclusory reference suggesting recusal might also be appropriate in the Trade Secrets Case. That, on this record, is too late. And, it is a legally insufficient predicate where, as here, Kolon knew long before trial of the facts it now asserts warrant recusal, and, with that knowledge expressed that there was no basis for bias and then did not press even the passing reference it now claims to have constituted a recusal request.

The several suggestions made by Kolon in its post-verdict briefs[17] are also both too little and too late. It was not until the presiding judge explained that the two cases were different and that, of course, as a result, the circumstances in both cases were different, that, on January 27, 2012, Kolon filed its Motion for Recusal in the Trade Secrets Case.

---

[17] See Kolon's Reply in Support of its Opposition and Objection to DuPont's Proposed Schulz Adverse Inference Jury Instruction (Docket No. 1264)(referenced to in a footnote at 2 n.1); Kolon's Memorandum in Support of its Motion to Stay Injunction Proceedings (Docket No. 1813)(referenced to in a sentence at 19); Kolon's Reply Memorandum in Support of its Motion to Stay Injunction Proceedings (Docket No. 1843)(referenced to in one paragraph at 19 and in a footnote at 19 n.14).

Having concluded that the motion for recusal is untimely, it perhaps is not necessary to consider the merits of the motion. And, indeed, generally, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings. Karsten v. Kaiser Found. Health Plan of the Middle Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir. 1994). However, considering the nature of the recusal issue, it seems preferable here also to address the merits of the issue. Kolon's motion is based principally on § 455(b)(2), but it also invokes § 455(a). The points will be addressed in accord with the importance which Kolon seems to accord them.

## 3.   Section 455(b)(2)

The statute provides that a judge must recuse himself from presiding over a case "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter or such lawyer has been a material witness concerning it [the matter in controversy]." 28 U.S.C. § 455(b)(2). Kolon argues that § 455(b)(2) requires recusal here because two of the presiding judge's former law partners represented DuPont in the Akzo Case and because the presiding judge was a partner at McGuireWoods when those partners represented DuPont in that case. Kolon takes the view that evaluating whether to grant DuPont's request for an adverse

30

inference jury instruction respecting Dr. Schulz, and whether and how to allow Kolon to present rebuttal evidence to counter the adverse inference, created a § 455(b)(2) conflict. Kolon also indicates that the declassification of documents by the presiding judge's former law partners in the Akzo Case presented a separate and independent § 455(b)(2) problem.

It is Kolon's burden, as the party moving for recusal under § 455(b), to demonstrate that the presiding judge or one of his former law partners "served in the matter in controversy." See United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998) (dismissing the defendant's § 455(b) argument after noting that he had failed to show that the judge's former law partners or the judge himself served in the "matter in controversy"). Kolon has not met that burden. Thus, even if Kolon's motion were timely (which it is not), recusal would not be warranted because, under § 455(b)(2), neither the presiding judge nor his former law partners served as a lawyer concerning the same "matter in controversy."

Kolon primarily relies on In re Rodgers, 537 F.2d 1196, 1197-98 (4th Cir. 1976). In Rodgers, the defendants were charged with violating mail fraud and anti-racketeering statutes. 537 F.2d at 1197. One of the presiding judge's former law partners had represented the owners of Pimlico racetrack in formulating a position on legislation that affected operation of racetracks in

31

Maryland and in making an offer to purchase another racetrack. The judge knew nothing of the representation which continued after the judge left the firm.

In Rodgers, the record established that the presiding judge's former law firm and his client would be called to testify about events that took place before the judge left the law firm. This was said to be in aid of the defense that the defendants' conduct was no more culpable than that of the clients of the judge's former partner. The United States acknowledged that such evidence would be relevant. Holding that "matter in controversy" included the defense to be offered, the Fourth Circuit held that the record in Rodgers required recusal under § 455(b)(2).

In United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998), the Fourth Circuit again applied § 455(b)(2) and, in doing so, the Court relied, in part, on its decision in Rodgers. As in Rodgers, the Court of Appeals in DeTemple examined the facts of the specific case, and explained that the statute should be applied in perspective of the nature and extent of the connection between the judge's prior professional association and the case then before him. Id. at 284.

Then, the Court of Appeals, when identifying the matter in controversy, looked at the degree of attenuation between the prior case in which the judge's partners were involved and the case over which the judge was then presiding. Id. at 285.

And, while acknowledging that there was some overlap in the two cases, the Fourth Circuit held that: "DeTemple has failed to show that the [matter which involved the former partner] concerned the case against him in more than a tangential way."

In deciding DeTemple, the Fourth Circuit cited with approval the decision of the Eighth Circuit in Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th Cir. 1988) for the proposition that "issues in dispute must be 'sufficiently related' to constitute parts of the same matter in controversy." United States v. DeTemple, 162 F.3d at 286. In the text cited by the Fourth Circuit, the Eighth Circuit had held:

> Even if we accept appellant's argument that different cases may constitute the same "matter in controversy" . . . the question of what kinds of cases are sufficiently related for the purposes of § 455(b)(2) would remain a question of judgment and degree. We cannot say that the trial judge's former law partner's submission of an amicus brief in a case involving, to a large extent, different issues and different remedies two decades ago requires recusal under § 455(b)(2), nor do we believe that Congress intended such a result.

Little Rock Sch. Dist., 839 F.3d at 1302. Also in DeTemple, the Court of Appeals explained that the fact "that two suits might have some facts in common [is] not controlling on whether they

qualify as the same matter in controversy."   <u>United States v.</u>
<u>DeTemple</u>, 162 F.3d at 286.[18]

The instructions of the Fourth Circuit on those points guide
the inquiry to be made here.  And, those principles necessitate
the conclusion that the <u>Akzo</u> Case and this case do not involve
the same matter in controversy.  Further, deciding whether to
permit an adverse inference from a witness's repeated invocation
of the Fifth Amendment in a trade secrets misappropriation case
is not the same matter in controversy as deciding whether a
waiver occurred in the <u>Akzo</u> Case, a patent proceeding.

To begin, the cases are really quite different in nature.
In the <u>Akzo</u> Case, Akzo sued DuPont for patent infringement.  This

---

[18] See also <u>United States v. Walton</u>, 56 F.3d 551 (4th Cir. 1995)
(finding that a judge who had worked at a law firm representing
the defendant in marijuana-related cases approximately 20 years
prior to the defendant's current indictment for marijuana-use
could preside without violating §§ 455(a) or (b) because the
judge's connection to the defendant was "attenuated"); <u>United</u>
<u>States v. Cherry</u>, 330 F.3d 658, 665 (4th Cir. 2003) ("[A]
presiding judge need not recuse himself simply because he
possesses some tangential relationship to the proceedings.");
<u>Horatio Clark Ford, III v. Bank of America</u>, No. 99-2368, 2000
U.S. App. LEXIS 18109, at *5-6 (10th Cir. 2000) (unpublished
table decision)(noting that a "district judge's association with
the defendant's law firm almost twenty-five years before the
filing of this case d[id] not provide reasonable grounds to
question his impartiality" and finding no violation of either §§
455(a) or (b)); <u>Hoffenberg v. United States</u>, 333 F. Supp. 2d 166,
175 (S.D.N.Y. 2004) (noting that the "significance of the
relationship between the merits of the pending action and the
purported basis for recusal is a crucial factor in determining
whether the pending action and the allegations underlying the
recusal motion involve the same matter in controversy")(citations
omitted).

case alleges trade secret misappropriation. It cannot be disputed that the elements of patent infringement claims and trade secret misappropriation claims are quite different.[19] And deciding whether to allow an inference in the Trade Secrets Case or whether Kolon misappropriated trade secrets is a very different matter than deciding whether documents in the Akzo Case should be admitted into evidence.

Kolon argues, in the recusal briefs, that the Akzo Case and this case are the same "matter in controversy" because Dr. Schulz is a central figure in the Trade Secrets Case, and the decision on the adverse inference issue required the presiding judge to evaluate Dr. Schulz's credibility. Alternatively, Kolon argues that they constitute the same matter in controversy because certain documents were declassified in the Akzo Case that may have contained trade secrets. Kolon makes those conclusory assertions and offers neither logical nor legal support for them.

As a general proposition, a court rarely, if ever, will be permitted to evaluate the credibility of a witness in deciding whether to admit his testimony. Kolon has cited no decision that would have warranted such a process here. The Court has found no

---

[19] Kolon often uses the term "the Akzo litigation" (referring to numerous different patent cases) in places other than Richmond. Kolon, however, does not contend that McGuireWoods was involved in any way in those other cases. The § 455(b)(2) analysis does not encompass any case other than the Akzo Case filed in this Court in 1985 and presided over by another judge of this Court.

such authority. Nor did Kolon make such an argument in opposing the instruction sought by DuPont.

The instruction was requested because Dr. Schulz declined to answer questions. That issue is generally resolvable by applying legal principles; and, indeed, that is how the issue was resolved here. Kolon has not explained how any credibility determination by the presiding judge played (or could have played) any role in the decision applying the controlling legal principles which were presented by the briefs offered by Kolon and DuPont.

In any event, Kolon was allowed to present to the jury, Dr. Schulz's testimony to the effect that he thought the information that he gave to Kolon was not confidential.[20] It was not precluded from arguing as a defense that DuPont had previously disclosed the information it alleged to be trade secrets. The adverse inference did not instruct the jury on how it could consider Dr. Schulz's testimony on that point. Rather, the inference concerned only questions that Dr. Schulz did not answer. Kolon has not identified any question as to which the presiding judge assessed (or would have been required to assess)

---

[20]   The deposition of Dr. Schulz did not establish that DuPont had made all of its information public – Dr. Schulz testified that he did not "know how public th[e] final disclosure was." Mem. Opp. Motion for Recusal at 6 (citing Opp. Motion in Limine to Exclude Schulz Testimony, Docket 509, Exhibit 1, at 49-50).

Dr. Schulz's credibility in deciding whether to grant the inference instruction sought by DuPont.

Kolon's alternative theory, that the fact that certain information was declassified in the Akzo Case makes that case the same "matter in controversy" as the Trade Secrets Case also lacks merit.[21] The decision in the Akzo Case shows that the role of the attorneys in the Akzo Case was to demonstrate that DuPont had not infringed on Akzo's patents and that Akzo's patent was invalid.

The so-called "declassification issue" was whether certain communications between counsel for DuPont and counsel for Akzo in the Akzo Case constituted waiver of the confidentiality of certain documents under a protective order in the Akzo Case. The Court held that the evidence offered on that point by Kolon was inconclusive and speculative and therefore not relevant in the Trade Secrets Case. As a related matter, the Court held that any marginal relevance was substantially outweighed by the prejudicial effect of the delay and confusion and satellite litigation that would ensue should it grant admission of the

---

[21] Kolon presented no evidence that any of the information disclosed during the Akzo Case contained trade secrets, even though it was given ample opportunity to do so. The Court noted as much in its May 16, 2011 Order granting DuPont's motion to exclude evidence (filed in August of 2010) related to the Akzo Case (Docket No. 1146). Kolon offered two documents from the Akzo Case as support for its argument that trade secrets had been disclosed in that litigation. The Court examined those documents and found no support for Kolon's contentions.

inconclusive and speculative evidence offered by Kolon. May 16, 2011 Order (Docket No. 1146). In other words, the Court resolved the "waiver by declassification issue" by applying the rules of evidence.[22]

On this record, it cannot be said that the same matter in controversy was extant. The most that could be said is that there was an attenuated, tangential relationship. That, under DeTemple, is insufficient to show the same matter in controversy.

Kolon implies that the Akzo Case and the Trade Secrets Case developed into the same "matter in controversy" as the Trade Secrets Case progressed, claiming that the "matter in controversy" "is not static and may change over time." Mem. Supp. Motion for Recusal at 28. But "matter in controversy" is not an ever-changing, malleable concept as Kolon asserts. If it were so elusive, then litigants in every case would simply await the verdict, and, if that verdict was contrary to their liking, would then research a judge's connections and find some way of linking them to the case and the evidence presented in order to get a "second bite at the apple" E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1295 (9th Cir. 1992) (holding that

---

[22] In like fashion, the Court in the Trade Secrets Case was asked to decide whether Kolon could offer evidence that DuPont had waived confidentiality of certain documents by placing them in the Akzo Case record without placing them under seal. That too was an issue of the admissibility of evidence. The Court held that Kolon had failed to meet its burden to show that any trade secret fit that mold. (Docket No. 1146).

recusal was not required under § 455); see also Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011) (noting that recusal motions should not be "a form of brushback pitch for litigants to hurl at judges who do not rule in their favor").

As DeTemple teaches, the matter in controversy assessment is to be decided on the specific facts presented. The fact that two suits or issues have facts in common does not control whether they qualify as the same matter in controversy. And, some tangential, attenuated connection between two suits or issues does not make them sufficiently related to constitute the same matter in controversy. United States v. DeTemple, 162 F.3d at 285-86.

On this record, it cannot be said that Kolon has met its burden to show that recusal is called for under § 455(b)(2).[23]

**4.  Section 455(a)**

Kolon suggests that recusal under § 455(a) is warranted for two primary reasons.[24]    First, Kolon argues that determining

---

[23] Kolon also has not explained how Dr. Schulz's communications with his attorneys would be admissible evidence in light of the evidentiary rules concerning attorney-client privilege and work-product.    Again, Kolon supports its point with conclusory and vague allegations.

[24] Kolon implicitly acknowledges, in its discussion of Owens, that timeliness is required under § 455(a).    Kolon argues that Owens analysis of § 455, and the Court's decision to impose a timeliness requirement, related only to Section 455(a) and not to 455(b).

39

whether to grant an adverse inference with respect to Dr. Schulz's testimony required the Court to evaluate Dr. Schulz's credibility in light of the conduct of the presiding judge's former law partners. Reply Mem. Supp. Motion for Recusal at 15. Second, Kolon contends that adjudicating whether to admit evidence potentially proving that the presiding judge's former law firm declassified information it should not have declassified, especially in light of the presiding judge's "personal involvement" in the case where the declassification occurred, creates the appearance of impropriety. Id. at 15-16.

As explained above, neither reason warrants recusal under § 455(b)(2), and, even if it did, a reasonable person, knowing and understanding all the facts presented, could not conclude that the presiding judge knew of grounds for disqualification yet failed to recuse himself. There is no § 455(a) violation.

Section 455(a) provides that: "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned." Before it was amended in 1974, § 455(a) only required a judge to disqualify himself "in any case in which he ha[d] a substantial interest." Congress amended § 455(a) in order to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge .

. . . conform generally with the . . . canons of the Code of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974).

## A.    The Standard To Be Applied

In Liljeberg, the Supreme Court affirmed the Fifth Circuit's "construction of § 455(a)," finding that a violation of the statute "is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." Liljeberg, 486 U.S. at 850.    Thus, § 455(a) applies to those situations where a "reasonable person" would believe that the judge actually knew about the disqualifying interest at issue.[25]

"The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude." Chase Manhattan, 343 F.3d 127 (citing Liljeberg, 486 U.S. at 860-61).    The analysis assumes that a reasonable person not only knows all the relevant facts, but also understands them.    See Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985).    In weighing recusal, the trial judge must carefully weigh the policy of promoting public

---

[25]  See also Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 132 (2d Cir. 2003) (examining whether "a reasonable person would believe that the district judge knew he had a financial interest in a party to the litigation at some point before the decision on the merits" to determine whether there was a violation of § 455(a)); Davis v. Xerox, 811 F.2d 1293, 1296 (9th Cir. 1987) ("[I]f a reasonable person would conclude from all the circumstances that the judge did not have knowledge at the time he sat, his rulings stand.").

41

confidence in the judiciary against the possibility that those questioning his impartiality simply might be trying to avoid what they apprehend may be an adverse ruling. See In re United States, 666 F.2d 690, 695 (1st Cir. 1981).

The general standard set out in § 455(a) "is not intended to be an invitation for judges freely to disqualify themselves whenever their impartiality is questioned on any ground." Hauptman v. Wilentz, 555 F. Supp. 28, 31 (D. N.J. 1982). As one expert on disqualification put it in hearings on the bill that became § 455(a):

> I want to make loud and clear for purposes of this record, because I assume that this record may have importance for many, many years in the future, that this does not mean that judges are going to be casually getting off the bench or that somebody can march up to a judge and say, 'Well, I just don't feel comfortable with you. I wish you would go away. I question your impartiality.' This is not to happen at all.

Hearings on S. 1064 Before the Subcomm. On Courts, Civil Liberties, and the Administration of Justice of the House Comm. On the Judiciary, 93rd Cong., 2d Sess. 14-15 (1974) (remarks of John P. Frank, Esq., Phoenix, Arizona, author of *Disqualification of Judges: In Support of the Bayh Bill*, 35 Law & Contemp. Prob. 43 (1970); *Disqualification of Judges*, 56 Yale L.J. 605 (1949); *Commentary on Disqualification of Judges*, 1972 Utah L.Rev. 377).

Another expert observed at the same hearing:

> [T]he longer the judge is on the bench, the less the likelihood that the general standard [of Canon 3(c)(1), which became 28 U.S.C. § 455(a)] will require his disqualification because of his former association [as former partner or former associate with a lawyer appearing before him].

Hearing on S. 1064 Before the Subcomm. On Improvements in Judicial Machinery of the Senate Comm. On the Judiciary, 93rd Cong. 1st Sess. 100 (1973) (remarks of Professor E. Wayne Thode, reporter for the ABA Committee on Standards of Judicial Conduct).

To apply the standard set by Liljeberg, it is appropriate to identify the facts that would be known to, and understood by, a reasonable person. When that is done, it is clear that recusal is not called for by § 455(a).

A reasonable person would know that, more than twenty-five years ago, at a time when the presiding judge was a partner in McGuireWoods, two other partners in that firm represented DuPont in a case in which it had been sued for patent infringement and which did not involve trade secret misappropriation. The reasonable person would know that, while the presiding judge was working at McGuireWoods, FitzpatrickCella requested a copy of the complaint that Akzo had filed against DuPont, and the presiding judge responded by having the complaint sent.

The reasonable person also would know that the record confirms the presiding judge's recollection that he did not

43

participate in the Akzo Case, and that, after he learned of the facsimile sent to FitzpatrickCella, the presiding judge immediately directed DuPont and McGuireWoods to review their files and records and those of FitzpatrickCella to determine if there was any other indication that the presiding judge had participated in the Akzo Case. The reasonable person would know that the ensuing review confirmed that nothing in the files reflected any such participation.

The reasonable person would know and understand that in order to decide whether to grant the instruction sought by DuPont, the presiding judge would not be called upon to evaluate the credibility of Dr. Schulz or of the presiding judge's former partners. That person would understand that whether to grant the requested instruction depended solely upon the application of legal principles controlling the effect of invoking the Fifth Amendment.

The reasonable person would know that generalized evidence about the declassification of documents in the Akzo Case was excluded because Kolon had supported its asserted "waiver by declassification" argument only with inconclusive and speculative evidence (rendering the proffered evidence not relevant), and because, on the existing rather skimpy record on that point, any marginal relevance the evidence might have had was outweighed by

44

the prejudicial effect that the ensuing delay and confusion would have produced if the evidence had been allowed in.

The reasonable person would know and understand that, in August of 2010, Kolon had full knowledge of the facts that Kolon now says necessitate recusal, that DuPont's motion *in limine* for an adverse inference regarding Dr. Schulz's testimony and DuPont's motion *in limine* to exclude evidence related to the Akzo Case were filed in August of 2010, and that Kolon did not so much as mention whether the presiding judge should adjudicate the instruction at issue until July of 2011, just before the jury trial was to begin. The reasonable person would know that, when it made that oblique mention, Kolon did so without providing any analysis, mentioning that the presiding judge might not be qualified to "adjudicate these matters" in an off-handed way in one paragraph of an opposition brief. And, the reasonable person would know that, when asked about that off-handed reference, Kolon's counsel mentioned the presiding judge's facsimile to FitzpatrickCella.

When asked why it had not raised the issue earlier, counsel for Kolon said, that getting the letter from Mr. Fitzpatrick "was not something that, in my mind, would trigger, you know, bias or anything like that." July 22, 2011 Tr. at 17. Of course, it would be known as well that, at the time counsel made that statement, counsel was fully aware of McGuireWoods' role in

45

representing DuPont in the Akzo Case in 1985 and fully aware that, in 1985 and 1986, the presiding judge had been a partner in McGuireWoods.

Finally, the reasonable person would know that Kolon did not thereafter file a motion for recusal and that the presiding judge thereafter presided over a seven week trial of the Trade Secrets Case and over multiple post-trial motions.

A reasonable person would not be able to conclude that there was a disqualifying circumstance or, even if there was, that the presiding judge actually knew about it. Thus, there would be no basis for recusal under § 455(a).

Kolon cites no decision in which, on a record such as this, it has been held that recusal is required by § 455(a). Nor has any such authority been located by the Court. The record here would not afford the basis for a reasonable person to question the presiding judge's impartiality much less to believe that the presiding judge has at any time herein known of any basis for disqualification.[26]

---

[26] Kolon is correct to point out that, under § 455 as opposed to § 144, judges have an obligation to identify the existence of grounds for recusal themselves "rather than requiring recusal only in response to a party affidavit." See Liteky v. United States, 510 U.S. 540, 548 (1994). However, if a judge does not identify such grounds, any party with knowledge of a basis for recusal must file a timely motion asking for disqualification. See e.g., United States v. Pearson, 203 F.3d 1243, 1276 (10th Cir. 2000).

46

**CONCLUSION**

For the foregoing reasons, Defendant Kolon Industries, Inc.'s ("Kolon") MOTION FOR RECUSAL AND DISQUALIFICATION (Docket No. 1875) will be denied.

It is so ORDERED.


_____/s/_____ REP
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: February 21, 2012

---

Nor can § 455 possibly be read to require judges to identify grounds for recusal when they are unaware that such grounds exist, or where there, in fact, is no basis for recusal. Moreover, where, as here, a party obliquely raised a possible ground and it was discussed and inquired into fully, and the party did not pursue it further, a judge reasonably would conclude that no ground existed. That is especially true where the party's counsel has said – after raising the point – that he knows no basis for "bias or anything like that."