IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E.I. DU PONT DE NEMOURS
AND COMPANY,

    Plaintiff,

v.                              Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on KOLON INDUSTRIES, INC.'S MOTION FOR AN EVIDENTIARY HEARING ON INJUNCTIVE RELIEF (Docket No. 1726). For the reasons set forth below, that motion will be denied.

**BACKGROUND**

Following a seven-week trial, a jury returned a verdict in favor of the plaintiff, E.I. du Pont de Nemours and Company ("DuPont") and against the defendant, Kolon Industries, Inc. ("Kolon") in the amount of $919,900,000.00 in compensatory damages for the misappropriation of 149 trade secrets. That award was made pursuant to Va. Code Ann. § 59.1-338A, the damages provision of the Virginia Uniform Trade Secrets Act. Thereafter, the Court entered a judgment in favor of DuPont in that amount and for an award of punitive damages in the amount

of $350,000.00, a total of $920,250,000.00 (FINAL JUDGMENT ON COUNT ONE, Docket No. 1698).

On September 16, 2011, DuPont moved for entry of a permanent injunction and briefing ensued. A hearing on the permanent injunction motion was held on November 16, 2011. Neither party offered evidence at that hearing. Instead, DuPont relied upon the trial record and presented legal argument why an injunction was appropriate. Before the hearing, Kolon filed thirteen exhibits, including declarations of Jong Tae Park and Bert Jan Lommerts, its expert who had testified at trial, and additional declarations from non-parties. In a telephone conference on October 26, 2011, Kolon's counsel announced that it would not be presenting witnesses, but would rely on those declarations and exhibits. According to Kolon, the declarations and other exhibits were offered to show that Kolon had independently developed the misappropriated trade secrets and thus had not used any stolen information in its Heracron® manufacturing operations.

During the hearing on November 16, 2011, DuPont objected to the Court's consideration of the declarations of Mr. Park and Dr. Lommerts and the other exhibits because the issues of independent development and use of the misappropriated trade secrets had been litigated at trial and decided against Kolon by

2

the jury's verdict. DuPont also objected to Kolon's proffered declarations on hearsay grounds.

After the Court indicated that it likely would not consider the declarations, Kolon suggested that it might want an evidentiary hearing, a concept that was opposed by DuPont. Then, on December 5, 2011, Kolon filed the presently pending motion for an evidentiary hearing on injunctive relief. According to Kolon, it would present the testimony of Dr. Lommerts and twelve witnesses employed by Kolon, ten of whom had been listed originally on Kolon's witness list but whom Kolon did not elect to call at the trial.

Having reviewed the statements of Mr. Park and Dr. Lommerts and the briefs of Kolon, it is obvious that it was the intent of Kolon to use the proposed evidentiary hearing to again present testimony to the effect that Kolon had independently developed the very trade secrets that the jury found that Kolon had misappropriated. Also, Kolon proposed again to try to prove that it did not use the trade secrets that the jury found that it had misappropriated.

Kolon had an opportunity at trial to produce evidence of that sort by calling its own employees, and it did not call them. It elected instead to rely on the testimony of Dr. Lommerts who, using documents and reciting conversations that he had with employees of Kolon, opined that Kolon had independently

3

developed the DuPont trade secrets at issue and that it did not use DuPont's trade secrets. Those positions were presented in five days of trial testimony by Dr. Lommerts.

Kolon's view is that the jury did not decide definitively the question of use of the trade secrets or the issue of independent development, and therefore it is permitted in a hearing on the issue of injunction to develop those issues. In a related argument, Kolon takes the view that DuPont argued there were two kinds of use - production use and reference use, and that, accordingly, one cannot rely upon the jury's verdict to establish that Kolon used the trade secrets in the manufacturing process because one cannot discern whether the jury found production use or reference use.

Use of the trade secrets and the prospect of future use is, of course, the linchpin upon which DuPont asserts that it is necessary for there to be a permanent injunction against the use of the misappropriated trade secrets. DuPont takes the view that the issues of independent development and use, both production and reference use, were fully aired to the jury and necessarily decided by it and that, therefore, these topics cannot now be revisited by the Court because to do so would offend its right to jury trial under the Seventh Amendment.

## DISCUSSION

Neither of the parties contests that the Court has authority to conduct an evidentiary hearing to determine the propriety of, or the scope of, a requested permanent injunction. The issue presented here is whether it is appropriate on the facts of this case for such a hearing to be held. For several reasons, it is not.

First, DuPont presented substantial evidence in its case-in-chief and in its rebuttal case that Kolon did not independently develop the misappropriated trade secrets and that Kolon actually used the misappropriated trade secrets in the manufacture of its para-aramid product, Heracron®. That evidence came in the form of documentary evidence from Kolon's own files describing the need to incorporate the misappropriated trade secrets into its Heracron® manufacturing operation. Further evidence came from the testimony of DuPont employees who visited the Kolon production facility and found, in virtually every area of the production line, significant similarities between the misappropriated trade secrets and Kolon's production processes and operations. The testimony of DuPont's expert who examined documents of Kolon, as well as those of DuPont, and who examined Kolon's production facility, as well as the production facility of DuPont, further explained how and where Kolon had used the misappropriated trade secrets in the manufacture of

5

Heracron®. Based on this evidence, the jury reasonably found not only that Kolon had misappropriated DuPont's trade secrets, but also that it used them. Indeed, it made that finding as to each trade secret that was at issue, trade secret by trade secret.

When the jury made those findings, it was aware of the documents offered by Kolon, the testimony of Dr. Lommerts, Kolon's expert, and counsel's arguments that Kolon had independently developed all of the trade secrets that it had allegedly misappropriated and that Kolon did not use the misappropriated trade secrets in making Heracron®. At the trial, Kolon could have presented, but chose not to present, testimony of its own employees on those topics for consideration by the jury in resolving the issues of misappropriation and use. Kolon deliberately chose not to do that, relying instead upon the decision to use such documents as it was able to use and the testimony of Dr. Lommerts.

It is no surprise that the jury rejected the testimony of Dr. Lommerts and the evidence upon which he said that he relied to form his opinions of independent development and non-use. Dr. Lommerts was not a credible witness on those matters because his testimony was at odds with the physical facts respecting the nature of the manufacturing operations of both DuPont and Kolon and the other evidence that compared those operations. His

6

evidence also was at odds with the contents of Kolon's own documents in many instances.[1] In any event, it certainly cannot be said that Kolon, through Dr. Lommerts and the documents on which he relied, did not present a full case on the issues of independent development of the trade secrets at issue and their use in the manufacture of Heracron®. Kolon, in fact, thoroughly developed its case on both points. The jury simply rejected Kolon's positions. And, the jury certainly was entitled to do so based upon the quality and the extent of the evidence to the contrary offered by DuPont in its case-in-chief as well as its rebuttal case and in its cross-examination of Dr. Lommerts.

What is clear from Kolon's moving papers is that, in the evidentiary hearing it now proposes, Kolon intends again fully to relitigate the issues of independent development of the trade secrets at issue and their use in the manufacture of Heracron®. It is not entitled to do that.

Indeed, to allow that to happen would be to ignore basic principles of collateral estoppel. It is settled that "[a]ny actual issues necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court." Fowler v. Land Mgmt. Groupe, Inc., 978 F.2d 158, 163 (4th Cir. 1992). The

---

[1] Dr. Lommerts' credibility also was undermined by the fact that he came across more as an adversarial advocate than as the independent expert that Kolon argued him to be.

7

declarations of Messrs. Park and Lommerts and the descriptions of the testimony of the other witnesses listed by Kolon for its proposed evidentiary hearing show clearly that the topics it intends to address seek to contradict the jury's findings on the issues of independent development and use of the misappropriated trade secrets. Indeed, in several instances, Kolon's subject matter description[2] for the proposed testimony openly states that the testimony will be an attempt to rebut the testimony presented by DuPont at trial.

The jury considered testimony on those issues, and the jury rejected that testimony, and the Court may not now revisit the decisions made by the jury. Collateral estoppel applies where: (1) the issue sought to be precluded is identical to the one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. Collins v. Pond Creek Mining Co., 468 F.3d 213, 217-18 (4th Cir. 2006). Here, the jury returned a verdict that Kolon had misappropriated and then used each of DuPont's trade secrets. At the same time,

---

[2] The Court required Kolon to file with its motion for evidentiary hearing a description of what its witnesses would address.

8

it necessarily rejected Kolon's defense that it had independently developed those trade secrets and that Kolon had not used those trade secrets in making Heracron®.

The manner in which both parties tried, and argued, this case put squarely to the jury the question whether Kolon used the stolen trade secrets in the making of Heracron®. That, indeed, was what the case was all about. It is true that, in his rebuttal closing, DuPont's counsel also mentioned that Kolon also had used the stolen trade secrets by referring to them (what Kolon now calls "reference use") and had put some of them in a vault. That was not a separate use but was a use that was part of the process of incorporating the stolen trade secrets into the Heracron® manufacturing process. Thus, Kolon's recent argument that the jury, in deciding the issue of use, could have meant that Kolon only referred to the trade secrets is simply at odds with all the evidence, and with the way the parties tried and argued the case. The Court therefore rejects Kolon's so-called "reference use" theory as without merit.

In order to reach a finding of misappropriation, the jury had to decide that the trade secrets misappropriated had not been independently developed. And, the jury actually decided the question of use in the verdict form. Indeed, Kolon requested a modification to the verdict form to include an inquiry respecting use, noting that the jury's determination on

use "would be binding, so rather than have to go through the procedure where it's being redone in front of this Court with findings of fact and conclusions of law and use and all that kind of thing for each trade secret, it just makes more sense to have this interrogatory to know what the jury found." (Trial Tr. 5276:10-18.) Kolon's requested modifications to the verdict form were made for that very purpose.

On this record, the issues of non-use and independent development were a critical and necessary part of the decision in the trial on liability. That judgment is final and valid. And, Kolon had a full and fair opportunity to litigate the issues at trial. Considering those factors and the identity of the issues, Kolon is collaterally estopped from litigating any of them in any subsequent evidentiary hearing. Because that is the only purpose of the evidentiary hearing, it is unnecessary to have one and, indeed, to do so would run afoul of the basic principles of collateral estoppel.

Also, DuPont argues that Kolon has waived its right to present testimony of its own company witnesses at an evidentiary hearing on the injunction. DuPont correctly points out that Kolon listed ten of the twelve witnesses it now proposes to call in the evidentiary hearing as witnesses to be called at trial but chose instead not to do so. Also, DuPont correctly points out that Kolon was offered the opportunity to present witnesses

10

at the November 16 hearing but deliberately chose to rely only on the declarations of Mr. Park and Dr. Lommerts, and the declarations of others. Those were tactical decisions that Kolon was entitled to make, but it cannot now escape the consequences of those tactical decisions made at trial and at the November 16 hearing. Indeed, "having made those tactical decisions, it must live with the consequences. It is not entitled to another trial [or to an evidentiary hearing] where it can try a different strategy." Bartlett v. Mut. Pharm. Co., 759 F. Supp. 2d 171, 180 (D.N.H. 2010). See also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971)(noting that "[w]hatever [the defendant's] reasons for not offering its . . . defenses during trial, however, the trial court would not have erred in concluding that they were waived").

Nor is the Court persuaded by Kolon's argument that the evidence it intends to offer at the proposed evidentiary hearing is to show that DuPont's trade secrets were not inextricably intertwined with its manufacturing processes, a factor of significance in deciding what kind of injunction to issue (use injunction or production injunction). An examination of the papers submitted by Kolon illustrates that it will be Kolon's position that DuPont's trade secrets are not inextricably intertwined with Kolon's process for making para-aramid fiber because, as shown in the declarations of Mr. Park and Dr.

11

Lommerts, Kolon does not use the misappropriated trade secrets, having independently developed its own para-aramid process. That, of course, is, in other garb, the independent development and non-use defense that was fully litigated at trial and decided against Kolon by the jury.

Also, Kolon asserts that it intends to use the evidentiary hearing to address the eBay factors. Kolon had that right on November 16 and chose not to present evidence on those topics. As is made clear in the opinion granting DuPont's request for an injunction, the eBay factors do not strictly apply in deciding whether to issue an injunction in this state law claim. See Memorandum Opinion on Motion for Permanent Injunction issued August 30, 2012. But it also is true that some of those same factors are pertinent in the analysis that must be made under appropriate Virginia law. Whatever the circumstance, Kolon had an opportunity to present evidence on those points on November 16 and it chose not to do so. It cannot now be heard to argue that it should be given another opportunity to that end.

DuPont also objected to Kolon's use of declarations to support opposition to the injunction. That objection is well-taken.

It is well-settled that: "[T]o meet its burden [when seeking a preliminary injunction], the plaintiff may rely on affidavits and hearsay materials that would not be admissible as

evidence for the entry of a permanent injunction." <u>Complete Angler, LLC v. City of Clearwater</u>, 607 F. Supp. 2d 1326, 1330 (M.D. Fl. 2009)(citing <u>Levi Strauss & Co. v. Sunrise Int'l Trading Inc.</u>, 51 F.3d 982, 985 (11th Cir. 1995)). See also <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 718 (3d Cir. 2004)(noting that "[i]t is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and avidence that is less complete than in a trial on the merits'" and that "affidavits and other hearsay materials are often received in preliminary injunction proceedings")(internal citations omitted)(collecting cases).

However, the proceeding at issue was not a motion for a preliminary injunction. Rather, it was a proceeding in a civil action in which a party sought a permanent injunction. Thus, under Fed. R. Evid. 101, the Rules of Evidence, including the hearsay rules, are applicable. That seems also to be the result of applying Fed. R. Evid. 1101. For example, in <u>In re: Oil Spill by Amoco Cadiz</u>, 954 F.2d 1279, 1304-05 (7th Cir. 1992), the Seventh Circuit held that in the damages phase of a bench trial, the rules of evidence, specifically the hearsay provisions, applied in "all trials – jury and bench, big and small."

Considering Rule 101 and Rule 1101 together, the Court concludes that a hearing on a permanent injunction is a

proceeding in a civil case to which the Rules of Evidence apply. While the rules provide many examples of preliminary and other proceedings to which they do not apply, nothing in the rules exempts a permanent injunction hearing from their reach. Nor should such proceedings be exempt from them.

Like a trial on the merits, a hearing on a permanent injunction (and unlike a preliminary injunction) is a final disposition of critically important and often hotly contested issues. That certainly is the case here.

To prove its entitlement to the permanent injunction, DuPont relied on trial testimony and trial exhibits. Kolon chose to present its points by reliance on hearsay declarations. The points therein made were not subject to cross-examination. And, where critical issues are to be decided finally (not preliminarily), the Rules of Evidence are necessary to assure that the issues are decided on the basis of reliable proofs. That, indeed, is the purpose of the Rules of Evidence, and none more than the hearsay rules. Thus, DuPont's hearing objection is well-taken.

**CONCLUSION**

For the foregoing reasons, KOLON INDUSTRIES, INC.'S MOTION FOR AN EVIDENTIARY HEARING ON INJUNCTIVE RELIEF (Docket No. 1726) is denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 30, 2012