IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



E.I. DUPONT DE NEMOURS
AND COMPANY,

    Plaintiff,

v.                                  Civil Action No. 3:09cv058

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the APPLICATION FOR ATTORNEYS' FEES AND EXPENSES RELATED TO DEFENDANT KOLON'S SPOLIATION OF EVIDENCE (Docket No. 1612)("Application") filed by E.I. DuPont de Nemours and Company ("DuPont"). For the reasons below, the Application will be granted. The issues are adequately briefed and oral argument will not aid the decisional process.

## BACKGROUND

For the reasons set forth in the Memorandum Opinion of July 21, 2011 (Docket No. 1249) ("July 21 Opinion") the Court granted PLAINTIFF E.I. du PONT de NEMOURS AND COMPANY'S MOTION FOR SANCTIONS RELATING [sic] KOLON'S SPOLIATION OF EVIDENCE (Docket No. 393). As explained therein, DuPont was found to be entitled to "recompense for the consequences of that violation [of

Kolon's obligation not to spoliate evidence] in the form of an award of expenses, costs and attorneys' fees," including "attorneys' fees, investigative expense, and the expense of a hearing and briefing." (July 21 Opinion at 88.) In the application, DuPont seeks $4,497,047.50[1] in "expenses, costs and attorneys' fees" from the defendant, Kolon Industries, Inc. ("Kolon").

## DISCUSSION

### 1. Summary of Relevant Facts

The relevant facts are set forth in the July 21 Opinion and are hereby incorporated by reference. As set forth in that opinion, DuPont's investigation and litigation of Kolon's spoliation was "a long, and oftentimes tortuous, journey on the part of DuPont to get to the bottom of the alleged deletion of files and email items by key Kolon employees," a task that "was complicated by the numerous objections (many of which lacked substantive merit) lodged by Kolon and by its overall obfuscatory conduct throughout the ensuing proceedings." (July 21 Opinion at 5-6.) Further, "DuPont has suffered other types of prejudice, namely the substantial costs that it incurred in

---

[1] DuPont originally sought $4,400,980.30 in connection with this application but, having supplemented its costs and fees, it revised the amount to $4,497,047.50 in its Reply.

investigating and determining the extent of the spoliation, delay of the trial while the sanctions issue was sorted through by the parties and the Court, and delay in production of many of the preserved records," and "[t]hese other forms of prejudice have impacted DuPont, the Court, and the judicial process." (July 21 Opinion at 86.) The July 21 Opinion also concluded that Kolon's spoliation had compromised and limited DuPont's ability to present its case. (July 21 Opinion at 87.)

Finally, the July 21 Opinion outlined and considered the possible sanctions, including the request for default judgment sought by DuPont, and concluded that an adverse inference instruction and "recompense . . . in the form of an award of expenses, costs and attorneys' fees" were the appropriate sanctions for Kolon's violation of its obligation not to spoliate evidence. (Id. at 88.) Hence, DuPont was instructed to submit an application outlining the fees and expenses it had incurred in proving spoliation by Kolon.

2. **Attorneys and Vendors Providing Support**

The application shows that attorneys from both Crowell & Moring and McGuireWoods were involved in the spoliation litigation on behalf of DuPont. In addition, three companies provided support to DuPont's counsel during its investigation and litigation of Kolon's spoliation. Those companies were:

3

Stroz Friedberg, which provided extensive computer forensics analysis services and expert testimony; Kelly Law Services, which provided contract attorneys to, among other tasks, review and analyze documents produced to and from DuPont; and Geotext Translations, which prepared certified translations of more than 120 documents.

### 3. Preliminary Issues

Notwithstanding the previous determination that both an adverse inference instruction and an award of fees and expenses were the appropriate sanctions, Kolon now argues that DuPont's Application should "be denied, or, in the alternative, significantly reduced" because Kolon has been adequately sanction by "the adverse inference instruction and the verdict already obtained." (Kolon's Resp. at 2.) Thus, says Kolon, the Court should "exercise its discretion not to grant DuPont the additional award of fees and expenses." (Id.)

That argument is simply a motion for reconsideration of the previous determination of appropriate sanctions. It will be rejected because Kolon has not made the necessary showing for reconsideration under Fed. R. Civ. P. 60. Pursuant to Rule 60(b):

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding

> for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic, misrepresentation, or misconduct by an opposing party; the judgment is void; the judgment has been satisfied, released or discharged; it is based on an earlier judgment htat has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Kolon has shown none of the predicates for reconsideration.

4. **Legal Standard**

The fee-applicant has the burden of demonstrating the reasonableness of the fee requested. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Reasonableness is the touchstone of any award of attorneys' fees and expenses. That is true whether the award is made as the consequence of a fee-shifting statute or as a sanction. McAfee v. Boczar, ___ F. Supp. 2d ___, 2012 WL 5398807, at *3 (E.D. Va. Nov. 2, 2012); Brubaker v. City of Richmond, 943 F.2d 1363, 1387 (4th Cir. 1991); Fed. R. Civ. P. 11(c). Most of the authorities addressing themselves to the issue of reasonableness, however, have come in the context of awards made under fee-shifting statutes. Nonetheless, those

decisions provide the soundest instruction in how to measure the reasonableness of a requested fee.

The Supreme Court's most recent guidance came in Perdue v. Kenny A., ___ U.S. ___, 130 S. Ct. 1662 (2010). As explained in McAfee, at *3, the Supreme Court in Perdue signaled a preference for determining reasonableness with reference to what is well-known as "the lodestar approach." As outlined in McAfee, the lodestar calculation presumptively yields a reasonable fee:

> The "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984); see also Perdue v. Kenny A., __U.S.__, 130 S. Ct. 1662 (2010)(noting that this approach, the "lodestar approach," has "achieved dominance in the federal courts")(citations and quotations omitted). Hours that were not "reasonably expended" must necessarily be excluded. Hensley, 461 U.S. at 434. "Counsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. And, time devoted to any claims on which the applicant did not prevail must be excluded from the calculation.
> There is a "strong presumption that the lodestar figure . . . represents a reasonable rate." Pennsylvania v. Delaware Valley Citizen's Council for Clean Air, 478 U.S. 546, 565 (1986). Indeed, in Perdue, the Supreme Court made clear that the strong presumption for the reasonableness of a lodestar fee figure can only rarely be overcome, 130 S. Ct. at 1673, and then only

6

> in "extraordinary cases" which will be presented in the "rarest of circumstances." Id. at 1677 (Kennedy, J., concurring); see also id. at 1678 (Thomas, Jr., concurring).

McAfee, at *3. The explanation continues: "The [Supreme] Court's preference for the lodestar figure as a reasonable fee was explained in perspective of two alternatives: (1) the twelve-factor test devised by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); and (2) the lodestar method pioneered by the Third Circuit in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (1973); appeal after remand 540 F.2d 102 (1976)." McAfee, at *3. And, as to the Johnson twelve-factor test, the Supreme Court concluded that:

> This method, however, gave very little actual guidance to district courts. Setting attorney's fees by reference to sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.

Perdue, 130 S. Ct. at 1672 (internal quotation and citation omitted). The Supreme Court then explained its preference for the lodestar method of determining a reasonable fee.

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community. Developed after the practice of hourly billing had become

7

> widespread, the lodestar method produces an award <u>roughly</u> approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the <u>Johnson</u> approach, the lodestar calculation is 'objective,' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

<u>Id.</u> (internal quotations and citations omitted, emphasis in original).

For those reasons, the Supreme Court "relegated [the <u>Johnson</u> approach] to the sidelines in fee analysis." <u>McAfee</u>, at *5. However, as explained in <u>McAfee</u>, although <u>Perdue</u> forecloses use of most of the <u>Johnson</u> factors because they are subsumed in the lodestar analysis, the rationale of <u>Perdue</u> leaves room for using in the reasonableness calculus four of the <u>Johnson</u> factors that are not subsumed in the lodestar calculation if the facts of a particular case make it appropriate to consider them.[2] Here, none of the potentially relevant remaining <u>Johnson</u> factors is called into play. Hence, the analytical framework for use in determining the amount and reasonableness of DuPont's spoliation

---

[2] They are: the amount in controversy and the results obtained (<u>Johnson</u> Factor 8); the undesirability of the case (<u>Johnson</u> Factor 10); the nature and length of the relationship between the claiming firm and the client (<u>Johnson</u> Factor 11); and awards in similar cases (<u>Johnson</u> Factor 12).

8

fee request is the lodestar calculus. That then is the task at hand.

## 5. Assessment of DuPont's Application for Reasonableness

DuPont seeks a total of $4,497,047.50 in attorneys' fees and expenses. This total is based on the following amounts:

| | |
|---|---|
| Crowell & Moring Attorneys' Fees | $1,653,264.70 |
| Crowell & Moring Expenses | $ 9,110.71 |
| McGuireWoods Attorneys' Fees | $ 716,608.00 |
| McGuireWoods Expenses | $ 51,467.39 |
| Stroz Friedberg | $ 877,085.73 |
| Kelly Law Services | $ 973,698.42 |
| Geotext Translations | $ 119,745.35 |
| **Original Total** | **$4,400,980.30** |
| Additional Crowell & Moring Fees | $ 51,049.00 |
| Additional McGuire Woods Fees | $ 7,812.20 |
| Additional Expenses[3] | $ 37,206.00 |
| **Latest Total** | **$4,497,047.50** |

(Application, at 30, amended by DuPont's Reply, at 11.)

### a. Rates

As <u>Perdue</u> explained, the first component of a reasonable fee is a reasonable rate for the services provided. DuPont's counsel pose Richmond, Virginia hourly rates for McGuireWoods and Washington, D.C. hourly rates for Crowell & Moring.[4] Kolon

---

[3] This amount represents an invoice from Mayer Brown LLP for work performed by Michael E. Lackey on his declaration in support of DuPont's Application.

[4] During the litigation, DuPont and Crowell & Moring abandoned the original hourly billing arrangement and agreed to an alternate fee method. This is not an issue calling for assessment because the fees sought for Crowell & Moring are

9

makes no challenge to the rates used by DuPont to calculate its fee request. Therefore, the Court will use the rates proposed by DuPont, notwithstanding that ordinarily fees are to be measured by rates prevailing in the forum.[5]

### b. Reasonableness of the Hours Expended

Perdue next instructs that the number of hours for which compensation is sought also must be reasonable. DuPont is asking for attorneys' fees to cover a total of 4715.15 hours of work by Crowell & Moring and a total of 2201.90 hours of work by McGuireWoods. These totals reflect most, but not all, of the hours expended by the two firms on the spoliation litigation and investigation. DuPont voluntarily omitted certain Crowell & Moring entries entirely, including time billed for overall case supervision and coordination by partners Kent Gardiner and Terence Ross and time billed by associates and paralegals who assisted on a spot basis. The total value of the time excluded approximately $100,000. Other work was excluded by both firms, such as certain depositions, even though they dealt with spoliation to some extent. The value of all of the voluntary

---

based on hourly rates multiplied by time spent, not the more lucrative alternate fee arrangement.

[5] McAfee, at *6-*7; E. I. DuPont de Nemours and Co. v. Kolon Industries, Inc., ___ F. Supp. 2d ___, 2012 WL 6540072, at *16 (E.D. Va. Dec. 13, 2012)(discussing Virginia standard).

reductions is approximately $390,000, or about 20% of the fees claimed.

Kolon contends that, given "the wasteful and inefficient approach taken by DuPont," the Court should, at a minimum, apply "a 75 percent negative multiplier . . . as a means of 'trimming the fat from [DuPont's] excessive fee application.'" (Kolon's Resp. at 17, citing Field Day, LLC v. County of Suffolk, 2010 WL 5491025, at *6 (E.D.N.Y. Sept. 9, 2010).) At base, Kolon's challenge to the number of hours expended in resolving the spoliation issue is that DuPont was "recklessly inefficient" in the way in which it sought to establish that Kolon had spoliated documents. (Kolon's Resp. at 14-19.) Therefore, says Kolon, DuPont spent needless hours in proving Kolon's spoliation. That argument is without merit.

The linchpin of Kolon's claim of "reckless inefficiency" is that the list of search terms used by DuPont to conduct the search of the computers of several Kolon employees and of Kolon's produced documents for evidence of spoliation. (Kolon's Resp. at 16-17.) Of course, in the current world of litigation, where so many documents are stored and, hence, produced, electronically, the selection of search terms is an important decision because it, in turn, drives the subsequent document discovery, production and review.

11

Here, the list of search terms was broad, but necessarily so, because the ensuing search was to examine the files of many document custodians and was to scour a considerable volume of documents in the files of many document custodians who had deleted files from their computers. Those search terms were taken largely from data (so-called "screen shots" which were images from the screens of Kolon's computers) that actually reflected the deletion of electronic files by several Kolon employees who were central to Kolon's efforts to produce para-aramid fibers. Those screen shots gave evidence that the deleted information likely was important to issues in the case. Many of the deletions occurred within a few days after the employees had learned that DuPont had filed this action. Information on those screen shots was used to create the search terms to be used by DuPont's experts in computer forensics.

The Court heard expert testimony about the search process, about the extent of the deletion known to have occurred by several important Kolon employees, and about the importance of the kind of information known to have been deleted when the search criteria were determined. On the record made at the spoliation hearing and in the exhibits used therein, the Court has no difficulty concluding that DuPont acted reasonably in identifying the search terms, taking into account both the need

to narrow the scope of the documents that must be reviewed and the risk of omitting relevant evidence. DuPont's counsel and its forensic experts struck a reasonable balance which cannot be dismissed as "reckless inefficiency."

In a related argument, Kolon argues that DuPont unreasonably devoted time to study and development of the spoliation issue before DuPont alerted Kolon to the fact that DuPont had discovered evidence of Kolon's spoliation. (Kolon's Resp. at 17-18.) That contention lacks merit because DuPont was entitled to perform a careful analysis (or due diligence) of the facts before charging Kolon with spoliation, a quite serious allegation. Indeed, DuPont was obligated to carefully examine the facts before bringing such a charge to the attention of Kolon.

In any event, as DuPont correctly argues, there is no reason to believe that the process of establishing Kolon's spoliation would have taken less effort if DuPont had raised the issue with Kolon's counsel earlier than was done. For example, Kolon knew of the spoliation that prompted DuPont's concerns in April 2009 and did not inform DuPont's counsel of that knowledge. And, Kolon ignored DuPont's inquiry on the subject in July 2010. (July 21 Opinion, Docket No. 1249.) Also, Kolon's Rule 30(b)(6) witness on spoliation was evasive (Id.).

Moreover, Kolon raised numerous objections to the spoliation discovery and dragged its heels throughout the proceedings that were pursued to determine the nature and extent of Kolon's spoliation. Given Kolon's treatment of the spoliation issue after it knew that the spoliation had occurred and throughout the process of uncovering and defining the scope of the spoliation, the Court cannot conclude that Kolon would have cooperated to reduce the scope of the spoliation inquiry if DuPont had told Kolon earlier than was done that DuPont had discovered Kolon's spoliation.

The other predicate for Kolon's "reckless inefficiency" argument is that, at trial, DuPont used as an exhibit only one of the deleted documents that the spoliation procedures recovered. That is true, but it hardly establishes that DuPont's conduct was recklessly inefficient. To begin, the argument ignores the fact that DuPont's process established that many deleted documents simply were not recoverable at all (and hence were not recovered). However, evidence that was recovered indicated that much of the deleted information was of probative value. Having been deprived of that evidence by Kolon's

spoliation, it was reasonable of DuPont to ask for an adverse inference instruction, and that request was granted.[6]

As Kolon contends, DuPont, indeed, devoted a large amount of attorney time to proving Kolon's spoliation of documents. However, Kolon amplified the time that was required for that process by its contentious opposition to the reasonable, sensible spoliation discovery pursued by DuPont. Considering the vital importance of this litigation to DuPont in protecting its trade secrets, the pervasively contentious approach to the spoliation issue mounted by Kolon, the fact that those who deleted the information were employees who were centrally involved both in Kolon's para-aramid process and in the misappropriation, and taking into account the fact that DuPont had proof that pointed to the probative value of the deleted electronic information in proving the misappropriation case, the Court finds that the time devoted to the spoliation issue by DuPont's counsel was reasonably and necessarily spent.

---

[6] Kolon argues that the adverse inference instruction resulted in the verdict in DuPont's favor. Of course, it is not possible to say definitely why the jury decided as it did. We, of course, must presume that the jury considered the instruction, but the overwhelming evidence of Kolon's misappropriation and Kolon's use of the proven trade secrets was the key to the verdict.

15

### c. The Lodestar Fee

The product of applying a reasonable hourly rate to the number of hours reasonably expended yields a lodestar fee figure of $2,428,733.90. Under Perdue, there is a strong presumption that the lodestar calculation produces a reasonable and sufficient fee. 130 S. Ct. at 1673. In this case, it does just that.[7]

### d. Expenses

DuPont asks for a total of $2,068,313.60 in expenses incurred in connection with the spoliation issue. First, as to expenses, it asks for $9,110.71 in expenses incurred by Crowell & Moring and $51,467.39 in expenses incurred by McGuireWoods, for a total of $60,578.10 in expenses incurred as a result of the investigation and litigation of the spoliation.

DuPont also asks for an additional $37,206.00 in expenses which represents the fees charged by Michael Lackey of Mayer

---

[7] Kolon contends also that "[g]iven the size of the unjust enrichment damages, the Court should refuse to further augment DuPont's damages award as a matter of discretion." (Kolon's Resp. at 18.) This, says Kolon, is appropriate because it is appropriate to consider an offender's "ability to pay [sanctions]." (Id. at 18-19.)
To begin, Kolon simply has not proved the financial impecunity on which it bases this argument. And, the record made in the collection component of this case rather persuasively shows that Kolon is not financially impecunious.

Brown LLP for his work and declaration in support of DuPont's Application. This figure reflects a 10% discount.

DuPont also seeks reimbursement for the expenses paid to three outside vendors who performed necessary tasks: Stroz Friedberg billed DuPont and DuPont paid a total of $877,085.73 for extensive computer forensics analysis services and expert testimony; Kelly Law Services billed DuPont and DuPont paid a total of $973,698.42 for providing contract attorneys to, among other tasks, review and analyze documents produced to and from DuPont; and Geotext Translations billed DuPont and DuPont paid a total of $119,745.35 for the preparation of certified translations of more than 120 documents.

Kolon has articulated no objection to these expenses. Hence, it is not necessary to discuss them in detail. Kolon's objection to DuPont's alleged "reckless inefficiency" may somehow be intended to encompass the expense aspect of the Application. If so, that issue has been resolved earlier in this opinion. In any event, the affidavits submitted by DuPont are sufficient to show that the expenses were reasonably and necessarily incurred and were reasonable in amount.

## CONCLUSION

For the foregoing reasons, the Court grants DuPont's Application. The Court awards DuPont attorneys' fees in the amount of $2,428,733.90 and costs in the amount of $2,068,313.60.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 6, 2013