

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E.I. du PONT de NEMOURS
AND COMPANY,

    Plaintiff,

v.                      Civil Action No. 3:09cv58

KOLON INDUSTRIES, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF E.I. DU PONT DE NEMOURS AND COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, SANCTIONS AND COSTS (Docket Nos. 2228 and 2230). For the reasons set forth below, PLAINTIFF E.I. DU PONT DE NEMOURS AND COMPANY'S MOTION FOR ATTORNEYS' FEES, SANCTIONS AND COSTS (Docket No. 1593) is granted in part and denied in part.

## BACKGROUND

In this action, E.I. du Pont de Nemours and Company ("DuPont") sued Kolon Industries, Inc. ("Kolon"), for misappropriation of trade secrets. The jury concluded that Kolon had willfully and maliciously misappropriated and used 149 DuPont trade secrets and returned a verdict for compensatory

damages in the amount of $919,900,000.00 (Docket No. 1514) on DuPont's claim under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code Ann. §§ 59.1-336 - 59.1-343.   Thereafter, acting pursuant to Va. Code Ann. § 59.1-338B, the Court assessed punitive damages in the amount of $350,000.00 (Docket Nos. 1696 and 1697).   On a schedule set by the Court, DuPont filed its MOTION FOR ATTORNEYS' FEES, SANCTIONS AND COSTS (Docket No. 1593) and that motion was granted in part and denied in part as described in a MEMORANDUM OPINION (Docket No. 2208) and implementing ORDER (Docket No. 2209) (the "Original Fee Opinion").   For the reasons, and to the extent, outlined in the Original Fee Opinion, DuPont was required to make supplemental showings on certain aspects of its claim and to brief its claim under Virginia law.   Supplemental briefing has been received from both sides, and the matter is ripe for disposition.[1]

In sum, the Original Fee Opinion denied DuPont's request for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority, and it denied DuPont's request for non-taxable costs

---

[1] Because the matter was pending on appeal in the United States Court of Appeals for the Fourth Circuit, the Court advised the parties that it planned to await a decision on the merits of the claim before finalizing the attorneys' fee order.   However, the Court recently has learned that the parties have advised the Court of Appeals (without advising this Court) that they were awaiting a further decision finalizing the decision on attorneys' fees.   In view of that circumstance, and the Court's recent acquisition of that knowledge, it seems appropriate to conclude the process now, notwithstanding that the matter is still pending before the Court of Appeals.

under the VUTSA.    However, the Original Fee Opinion overruled Kolon's objections to an award of fees under the VUTSA and held that DuPont was entitled to an award of fees, subject to further assessment about the amount of the fees.

The findings of entitlement to attorneys' fees and the standard for measuring attorneys' fees and the arguments in opposition to attorneys' fees all were addressed in the Original Fee Opinion (Docket No. 2208) which, in the interest of brevity, will be incorporated here by reference.    Hence, this Memorandum Opinion will deal with the components of DuPont's fee requests as to which additional briefing was required.

In  the  Original  Fee  Opinion  addressing  the  motion originally filed by DuPont, the Court concluded that the proper calculus for assessing attorneys' fees under the VUTSA was found in the substantive law of Virginia as outlined by the Supreme Court of Virginia.    (Original Fee Opinion at 33-47.)    Under Virginia law, when "deciding whether a party has shown the reasonableness of the fees, the fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate."    Schlegel v. Bank of Am., N.A., 628

3

S.E.2d 362, 369 (Va. 2006); West Square LLC v. Communication Technologies, Inc., 649 S.E.2d 698, 702 (Va. 2007). Not all factors apply in every case and certain factors may have added or lessened significance depending on the circumstances of the particular case. West Square LLC v. Communication Technologies, Inc., 649 S.E.2d at 703. These principles, which have been addressed fully in the supplemental briefing, inform the resolution of what remains to be determined of DuPont's request for attorneys' fees.

1. **The Undisputed Issues: Reasonable Rates; Results Obtained; Complexity of the Services Required; and the Typicality of the Services**

There is no dispute respecting whether the hourly rates on which DuPont bases its fee request are "consistent with those generally charged for similar services." Indeed, Kolon did not object to the hourly rates which form the base for DuPont's fee request. (Original Fee Opinion at 49.) And, Kolon concedes that "the complexity of the case, the value to the client of the services, and the favorable results obtained warrant a substantial award of fees." DEFENDANT KOLON INDUSTRIES, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO E.I. DUPONT DE NEMOURS AND COMPANY'S MOTION FOR ATTORNEYS' FEES, SANCTIONS AND COSTS (Docket Nos. 2234 and 2237) ("Kolon Supp. Br."), at 4-5. Nor has Kolon disputed that the kinds of

4

services rendered were typical for this kind of litigation. Hence, these four factors require no further assessment.

Instead, Kolon has chosen to focus its attack on DuPont's fee request solely on whether the time and effort expended by DuPont's counsel were reasonable or necessary. As Kolon has framed the issue:

> Kolon does not contest that the complexity of the case, the value to the client of the services, and the favorable results obtained warrant a substantial award of fees. However, in some respects DuPont has failed to show that "the time and effort expended by the attorney[s]" were reasonable or that certain "services were necessary and appropriate," and accordingly a partial reduction of DuPont's fee request is proper.

(Kolon Supp. Br. at 4-5) (emphasis added).[2]

These two grounds of objection substantially overlap, and Kolon has not identified which of its nine specific complaints fall within which ground of objection. Moreover, of the nine specifically articulated arguments made in support of these two objections, three actually fit neither ground of objection; and,

---

[2] DuPont seeks fees in the amount of $18,379,809.81. PLAINTIFF E.I. DU PONT DE NEMOURS AND COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, SANCTIONS AND COSTS (Docket Nos. 2228 and 2230)("DuPont Supp. Br."), at 6. By the Court's calculations, adding the reductions sought in paragraphs A through H, Kolon proposes reductions amounting to $13,119,494.19. Kolon states that the "total proposed reduction, unadjusted for the overlap [in Kolon's proposed bases for exclusion], is $13,119,394.10." (Kolon Supp. Br. at 2.) The Court presumes that this difference of $100.09 is a calculation error. Given the Court's rulings herein, it is not necessary to address the overlap.

5

instead, take the view that certain aspects of the requested fees simply are not recoverable. Thus, it is best to consider Kolon's nine points in turn. In headings A through I, Kolon's contentions are set out verbatim to frame the issue.

**A.    DuPont's Attorneys' Fees Award Should be Reduced Because the High Amount of its Fees Resulted From DuPont's Deliberate Litigation Strategy.**

**Reduction Sought: $4,187,290.88**

The gravamen of this objection is that DuPont's delay in specifying the trade secrets that were stolen made it necessary for Kolon to pose broad discovery requests and to produce a great number of documents. This argument is but a recast version of a contention that Kolon raised on several occasions in different guises, and each time it was rejected as without merit.

In fact, the record shows that DuPont actually identified relatively early in the litigation (see Second Supplemental Interrogatory Response in March 2010 and expert reports in May and August of 2010) the stolen trade secrets of which it was aware. That is particularly significant here because it was not until February and March of 2010 that Kolon finally produced the overwhelming majority of documents that it did produce in the case, including most of the documents that identified the trade

secrets that Kolon had stolen.[3]   Thus, within sixty to ninety days of Kolon's identification of what it had stolen, DuPont produced a relatively complete list of trade secrets that were the subject of the misappropriation claim.   As the litigation progressed, the Court required DuPont to provide greater specificity of the particular trade secrets that were to be tried and, in part due to the Court's urging, DuPont chose to try far fewer trade secrets than the total number stolen by Kolon.[4]   Thus, Kolon's argument fails for lack of a predicate.

Moreover, it was actually Kolon's litigation strategy that increased the fees incurred in this case.   As noted in the Original Fee Opinion, Kolon objected to most of DuPont's discovery requests, and a considerable number of those requests were fought by Kolon until the Court held that the discovery must be provided.   And, when Kolon finally complied, it produced

---

[3] Kolon's mode of operation was to secure highly desired trade secrets from former DuPont employees who, by virtue of contractual provisions, were not free to disclose the information that Kolon so desperately wanted.   Thus, although DuPont was aware before filing this action that Kolon had stolen trade secrets, it was not until Kolon was forced to disgorge (over its objections) documents disclosing what had been stolen that DuPont was able to know the scope of the theft.

[4] The belated discovery by Kolon disclosed that it had acquired more than 200 of DuPont's trade secrets, many which were quite complex.   The Court pressed DuPont to focus the trial on the secrets that could be most easily presented to, and grasped by, a jury.   DuPont did that.

a great volume of documents, one production alone exceeding a million documents.

The discovery phase of the case was not the only place in which Kolon engaged in conduct or took positions that made it necessary for DuPont to file motions. Indeed, the case involved the most extensive motions practice that the Court has witnessed in twenty-five years of practice and twenty years on the bench. Largely, that was because Kolon's obvious strategy was to litigate virtually every issue to the hilt. The matter of litigation tactics is one aspect of the test for entitlement to fees under the VUTSA. The discussion of that topic in the Original Fee Opinion (pp. 14-24) fully explained the nature of Kolon's tactics.

As explained in the Original Fee Opinion, a party may choose to mount this kind of defense, but it must also bear the financial consequence of so doing if the prevailing party is entitled to a fee award. Thus, it does not lie in the mouth of Kolon to say now that it was DuPont's strategy that increased the fees incurred.

In sum, DuPont specified the stolen trade secrets as soon as it reasonably could have, given that it did not know at the outset of the case the magnitude of the theft and considering that Kolon's approach to discovery delayed production of the documents in its possession that evinced the scope of the

8

misappropriation.  And, then DuPont provided greater specificity as to the trade secrets that were to be tried as it refined the case that was to be presented to the jury.   Thus, it was Kolon's, not DuPont's, strategy that hindered the identification process, and even then, Kolon had ample notice of what matters were claimed to be trade secrets and what trade secrets were to be tried.[5]

Thus, Kolon's objection on Ground A is overruled and the requested reduction of $4,187,290.88 is denied.

**B.   DuPont's Attorneys' Fees Award Should be Reduced Because a Portion of Dupont's Litigation Fees is Attributable to Dismissed Trade Secrets.**

**Reduction Sought:  $4,738,033.00**

This proposed reduction is based on the fact that DuPont elected not to try to verdict all of the trade secrets that were originally identified in discovery as misappropriated trade secrets.   In sum, Kolon equates the trade secrets that were not presented at trial with dismissed claims.   But the fact of the matter is that DuPont had only one misappropriation claim, and it asserted therein that there were a number of trade secrets that were stolen.   As trial preparation proceeded, DuPont, acting at the strong urging of the Court, reduced the number of trade secrets to be tried in an effort to present a concise case

---

[5]   Kolon's lengthy expert report about the trade secrets illustrates clearly that it knew what was at issue.

9

that could be understood by a jury.  It is logically incorrect, under these circumstances, to treat as dismissed claims the trade secrets that were not tried to verdict.  And, Kolon has cited no authority by which the Court could proceed as it suggests.  Nor could the Court find such authority.

More importantly, as Dupont correctly argues, most of the pretrial work had to be accomplished whether there were 149 trade secrets or 200 trade secrets.  Nowhere is that more evident than in the fees incurred and the time spent to respond to Kolon's aggressive, high-volume motions practice and to deal with Kolon's obstructive discovery conduct.  Moreover, much of the discovery was related to how the theft was accomplished. All of that work would have been necessary without regard to the number of trade secrets that Kolon misappropriated.  On this record, the Court cannot find that there is any correlation between the volume of pretrial activities and the number of trade secrets not presented at trial.  Thus, Kolon's objection on Ground B will be overruled, and the requested deduction of $4,738,033.00 is denied.

**C.  DuPont's Attorneys' Fee Award Should be Reduced Because Costs of Paralegal and Staff Services are not Recoverable as Part of Attorneys' Fees.**

**Reduction Sought:  $2,250,223.85**

Kolon next seeks a reduction because, according to it, the time of paralegal and staff services are not recoverable under

10

Virginia law. Kolon relies on two Virginia trial court decisions for the theory that those kinds of services are not compensable. However, the Supreme Court of Virginia has upheld judgments that have awarded both attorney and paralegal fees. Shepherd v. Davis, 574 S.E.2d 514, 519, n.5 (Va. 2003). So too has the Court of Appeals of Virginia. See, e.g., Va. Birth-Related Neurological Injury Comp. Prog. v. Nguyen, 2005 WL 2847315, at *3 (Ct. App. Va. Nov. 1, 2005). That approach is consistent with the approach taken by the Supreme Court of the United States in Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 581 (2008)(holding that prevailing party in Equal Access to Justice Act (EAJA) action could recover paralegal fees at prevailing market rates). See also Priestley v. Astrue, 651 F.3d 410, 416 (4th Cir. 2011)(noting that the EAJA authorizes reimbursement of attorneys' fees, which includes paralegals doing "tasks traditionally performed by an attorney and for which the attorney would customarily charge the client")(quoting Hyatt v. Barnhart, 315 F.3d 239, 255 (4th Cir. 2002)).

Moreover, the use of paralegals and staff to perform tasks that ought not be performed by lawyers serves to reduce, rather than increase, legal fees, a fact that is recognized throughout the nation. A law firm ought not to be penalized for using, where it is possible to do so, paralegal and staff services instead of allowing lawyers to do that work and then billing for

11

the lawyers' time.    If the work needs to be done, it is important to have it done at the level where it can be done most inexpensively.    That counsels in favor of the approach reflected in the Supreme Court of Virginia's decision and that of the Supreme Court of the United States.[6]  As noted by the National Federation of Paralegal Associations, Inc., "[c]ourts awarding fees for paralegal services consistently point out that if the work had not been done by paralegals, charging fees based upon attorneys' rates would have been necessary." National Federation of Paralegal Associations, Inc., "Paralegal Responsibilities," www.paralegals.org/associations/2270/files/Paralegal Responsibilities v.pdf (1996).

> **D.   Dupont's Attorneys' Fee Award Should be Reduced Because of Dupont's Excessive Use of High-Billing Senior Attorneys.**
>
> **Reduction Sought:   $1,258,236.75**

Kolon is correct that it is the obligation of counsel to use good judgment and to staff work at the level commensurate with the skill required for that job and correspondingly not to employ the services of higher-charging lawyers where that is not necessary.    However, the method by which Kolon reaches the

---

[6] It is appropriate to note that the practice of delegating tasks that need to be done to handle discovery, to ready a case for trial, and to try cases is widespread.    Based on observation during hearings and at trial, the Court notes that Kolon followed this practice by using many paralegal assistants and staff to do the same things.

conclusion that DuPont engaged in the practice of using high-billing senior attorneys where that was not warranted is perplexing, indeed, not really understandable.   But, that makes no real difference because an examination of the records provided by counsel for DuPont shows that staffing levels were reasonable.

First, it is appropriate to note that Kolon's argument is based in part on the assumption that a lawyer who is called "counsel" in the billing records is a senior partner (and thus a high biller).   However, in both firms representing DuPont, the designation "counsel" refers to a lawyer whose seniority and billing rate is between those of associates and partners.   This alone materially skews Kolon's analysis.   Second, Kolon focuses its analysis on the quantum of the fees billed by so-called "senior attorneys," rather than on the time that those lawyers actually worked.   In so doing, Kolon's analysis creates the misleading impression that these so-called "senior attorneys" were used for a disproportionately large portion of the work. DuPont has shown that the senior lawyers (counsel and partners) actually performed less than half of the work (time) attributed to them by Kolon, and the partners performed less than thirty percent (30%) of the work attributed to them by Kolon.   This, of course, substantially undercuts Kolon's argument.

13

Moreover, the aggressive and contentious tactics adopted by Kolon in defending this case made it fully appropriate, if not necessary, that Dupont rely on experienced lawyers in the discovery phase, in the motions practice, in the pretrial phase, and at trial. That is because seasoned lawyers have more experience dealing with difficult problems and contentious adversaries, and generally are better equipped to adequately represent the client's interest in such circumstances. Kolon cannot now be heard to complain that senior lawyers were heavily involved in all phases of the case, especially the trial. The case was of great significance to both sides, but especially to DuPont. Also, it is important to realize that Kolon itself used highly experienced lawyers at every stage of the proceedings. Considering the record as a whole, the deduction sought for so-called "high-billing" lawyers is not appropriate. Thus, the objection in Ground D will be overruled, and the requested reduction of $1,258,236.75 is denied.

**E.    DuPont's Attorneys' Fee Award Should be Reduced Because of Excessive and Duplicative Coordination Between Crowell & Moring and McGuireWoods.**

**Reduction Sought:  $41,504.50**

The representation of Dupont was shared between Crowell & Moring, which was in charge of the technical aspects of the case, and McGuireWoods, which was in charge of the discovery and which led the trial preparation, and trial.    The firms also

14

shared assignments in many areas. In a case of this magnitude, it was reasonable to use two firms and to share the work. And, it is certainly not an unusual arrangement in litigation of this importance. And, it was clear from telephone conferences, pleadings, and hearings that the resources of both firms were necessary to meet the heavy discovery, pretrial, and trial responsibilities presented in view of Kolon's aggressive defense and its obstructive conduct in discovery.

Having reviewed the records and having presided over the trial and the motions proceedings for the duration of the case, and understanding the complexities of the technical issues and the difficulties associated with the discovery process, the motions practice, the pretrial preparation, and trial, the Court is confident that there was reasonable and necessary coordination between law firms to make sure that the work was properly staffed at the right level and to make sure that the client's interest was protected. The coordinating time represents a small fraction of the time devoted to the case, and, without coordination, the case would not have been handled as efficiently as it was. Thus, the objection in Ground E will be overruled and the requested reduction of $41,504.50 is denied.

**F.    DuPont's Attorneys' Fee Award Should be Reduced Because of Excessive Management and Internal Communications.**

**Reduction Sought:  $157,805.39**

Kolon objects to fees that it says are attributable to "Case Management/Internal Communications" in the amount of 1,013.10 hours for McGuireWoods ($394,516.10) and 3,013.75 hours for Crowell & Moring ($1,183,537.75), for a total of 4,026.85 hours attributable to case strategy and management, amounting to a total of $1,578,053.86.  The objection is not well-taken for several reasons.

To begin, Kolon has misdescribed the category.  As defined by DuPont, the category was "Case Strategy/Internal Communication."  Second, DuPont has shown that much of the requested reduction is for time spent devising litigation strategy, an aspect of communication about which Kolon does not complain.  The actual internal communications and management time entries amount to 1,479.45 hours, less than six hours per week per firm for the duration of the litigation.  That is reasonable in a case of this importance and complexity, especially in perspective of the aggressive litigation approach taken by the adversary.  Finally, in a case of this size, it is entirely appropriate, and indeed necessary, for lawyers to meet and confer about logistical matters, to coordinate their activities, and to think through and develop the strategies and

16

tactics to be used in the case. That is particularly true where, as here, virtually every day presented the need to deal with some decision occasioned by the strategies and tactics employed by Kolon in furtherance of its aggressive litigation posture.

The Court certainly has an obligation to make sure that the internal and management communications are not excessive. Mindful of that duty, and considering the nature of the litigation and the nature of the legal issues presented by the facts of the case and by the conduct of Kolon, the Court finds that the requested reduction is inappropriate.

For these reasons, the objection in Ground F will be overruled and the requested reduction of $157,805.39 is denied.

### G. DuPont's Attorneys' Fees Award Should Be Further Reduced Because it Continues to Include Time Attributable to Unrelated Claims.

#### Reduction Sought: $418,718.65

This contention is comprised of reductions sought on account of four discreetly unrelated areas: (1) "dismissed" claims; (2) antitrust counterclaim; (3) DOJ criminal investigation; and (4) settlement efforts. Each will be considered *seriatim*.

#### (1) "Dismissed" Claims

Originally, DuPont asserted six claims. All but the claim for misappropriation were dismissed by the Court or voluntarily

17

by DuPont.  DuPont was instructed not to seek fees attributable to the claims dismissed, whether voluntarily or by the Court. DuPont says that it has followed that instruction.  Kolon acknowledges that generally to be the case, but says that DuPont's revised fee request still seeks fees for the dismissed claims.

Kolon contends that 75 entries in the Crowell & Moring records relate to "dismissed" claims.  Of those 75 entries, 34 had no time claimed because DuPont had previously identified the time as subject to deduction.  Twenty other entries were included within time that was subject to block billing that has been discounted.  Two of the entries appear to be a misapprehension on the part of Kolon and are, in fact, recoverable.  Nineteen entries, however, should have been deducted.  The total value of that time is $14,565.10.

In the McGuireWoods time entries, Kolon has identified two entries related to "dismissed" claims.  In both instances, Kolon misapprehends the nature of the entry.  In fact, it appears that the entries were mischaracterized because of the computer word search used by Kolon to check the time records.

DuPont suggests that the fees attributable to the 19 correctly identified entries by Kolon as relating to dismissed claims are encompassed within DuPont's voluntary ten percent (10%) reduction of fees.  However, that is not an appropriate

18

resolution because, if the time was inappropriately included, it should not be included in the base against which a deduction is taken.   Accordingly, the fees will be reduced in the amount of $14,565.10.

### (2)   Antitrust Counterclaim

Kolon filed an antitrust counterclaim, but it was severed after it was returned to this Court following an interlocutory appeal.   That claim was thereafter treated as a separate action. DuPont recognized that none of the time recorded before the severance can be claimed under the VUTSA fee recovery provision. Kolon contends that, nonetheless, the fee application contains entries for work done on the antitrust counterclaim.

Kolon has identified six entries that relate to work by Crowell & Moring on the antitrust counterclaim.   For three of those entries, the fee requests claim no time.   The other three entries, according to DuPont, should have been deleted but were not.   The total for those entries is $895.00.

Kolon identified three entries from McGuireWoods that related to the antitrust counterclaim.   DuPont has shown that two of those entries are recoverable.   A third entry includes the notation "conference with client regarding antitrust brief." The entire amount of that particular entry is $2,449.00.

Again, DuPont argues that the erroneously claimed fees are covered by its voluntary reduction and that thus the objection

should be overruled. For the reasons expressed above, that theory is in error. The fee will be reduced by the sum of $3,344.00.

### (3) DOJ Criminal Investigation

Both Crowell & Moring and McGuireWoods represented DuPont in respect of the criminal investigation conducted by the Department of Justice into the theft of DuPont's trade secrets. Kolon takes the view that none of the time devoted to the criminal investigation conducted by the Department of Justice should be the subject of a fee award in this case. According to Kolon, the deduction should be in the amount of $31,544.45.

Kolon identified 22 time entries by Crowell & Moring and 27 entries by McGuireWoods that it says should be deducted from an award in this case. Eleven of the entries by Crowell & Moring are not the subject of a fee claim, having been previously removed. Of the eleven remaining entries, an examination of the entries reflects that the entries are related to the civil litigation and therefore are recoverable. As to the 27 McGuireWoods entries, DuPont has explained that one of those entries is clearly related to the civil case and represents a misunderstanding of the time entry by Kolon. The other McGuireWoods entries amount to a total of $27,725.30. DuPont has not carried the burden of showing how those entries actually were related to the civil litigation or how, if at all, they

were relevant to the civil litigation. Accordingly, the fee will be reduced by $27,725.30.[7]

### (4) Settlement Efforts

### Reduction Sought:  $286,534.30

As is true in all cases assigned to the presiding judge, the parties are required to engage in settlement discussions, either under the auspices of one of the Court's magistrate judges or through private mediation, if the parties prefer. Pursuant to that instruction, the parties engaged in extensive settlement negotiations that were ultimately unsuccessful. Some of the negotiations were held overseas at Kolon's request.

Requiring parties to attempt to settle their differences is part and parcel of all litigation. In Brinn v. Tidewater Transp. Dist. Comm'n, 105 F. Supp. 2d 500 (E.D. Va. 2000), the Court previously held that "the recovery of a prevailing party is not limited to reasonable attorney's fees incurred during the course of formal litigation, but may also include 'costs and fees incurred . . . in attempting to negotiate' a settlement prior to filing suit." Id. at 505 (quoting Sharpe v. United States, 607 F. Supp. 4, 7 (E.D. Va. 1984)).

---

[7] Here too DuPont contends that its ten percent (10%) fee reduction includes this sum. However, for the reasons previously stated, that rationale is not valid.

The theory for allowing fees incurred in connection with settlement negotiations is that the failure to allow such fees would have the effect of discouraging lawyers from pursuing settlement. Estiverne v. Esernio-Jenssen, 908 F. Supp. 2d 305, 310 (E.D.N.Y. May 23, 2012). See also Nature Conservancy, Inc. v. Sims, 2013 WL 1332445, at *1 (E.D. Ky. 2013) (same); Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartel, 782 F. Supp. 22, 25 (S.D.N.Y. 1992) (same).

The Court is persuaded by the logic and reason of those decisions that allowing fees for attempting to negotiate a proper settlement is a proper component of a fee recovery. Kolon makes no challenge to the reasonableness of the fees incurred in this process.[8] Thus, the objection is overruled and the requested reduction of $286,434.30 is denied.

For the foregoing reasons, the objections in Ground G are sustained in part and overruled in part, and the requested fee will be reduced by $45,634.40.

---

[8] In support of its view, DuPont also argues that Kolon did not engage in settlement discussions in good faith. And, in fact, the Court has found that Kolon conducted the litigation with no view to settlement. (Original Fee Opinion at 19.) Those assertions must be viewed in perspective of the fact that the evidence against Kolon was extremely strong and that there was, therefore, a logical and cogent reason to settle. However, the Court is not sufficiently informed to make a judgment that Kolon's failure to settle was the result of participating in settlement efforts in other than good faith. Accordingly, the Court disregards this aspect of DuPont's position.

### H.   DuPont's Attorneys' Fee Award May Not Include Work Done Prior to the Filing of the Complaint That is Too Remote in Time.

**Reduction Sought:  $67,681.17**

The record in this case indicates that, when DuPont learned of efforts to pirate its trade secrets, it reported the matter to the Department of Justice.   The Department of Justice undertook an investigation and, in so doing, became aware that DuPont was preparing a civil case against Kolon.   The government asked DuPont to delay filing a civil action until after the conclusion of the criminal investigation as to Michael Mitchell, a former DuPont employee who actually provided trade secrets to Kolon unlawfully and who pleaded guilty to so doing.

Kolon contends that the deduction it seeks is for investigation and legal services that were too remote in time to the filing of the Complaint in this action on February 3, 2009. That argument lacks merit.   The record is clear that, after DuPont learned of a possible trade secret theft, it immediately retained counsel, conducted its own internal investigation, and began preparing a complaint.   Previously in the case, the Court found that DuPont anticipated litigation by May 21, 2007, at the latest. Once the government concluded its criminal investigation into Michael Mitchell, DuPont was free to file the case, and it did so just a few weeks after having been freed from the government's request.

23

That delay was not unreasonable. There is no doubt that had that work, the preliminary investigation and the preparing of a complaint, occurred in the absence of the hiatus required by the government, the sums would be recoverable so long as they were related to the litigation. And, DuPont has shown, to the contrary, that its work in the early stages was important to the prosecution of the case and the development of the complaint. Kolon has not argued that the work performed was itself unreasonable or unnecessary. Thus, the objection in Ground H will be overruled, and the requested reduction of $67,681.17 is denied.

I.  **DuPont's Attorneys' Fee Award May Not Exceed the Amount of Its Voluntarily Negotiated Flat-Fee Arrangement Where DuPont Presented no Evidence Concerning The Overall Fee Amount it Actually Paid.**

Part way through the litigation, DuPont altered its fee arrangement with Crowell & Moring from the traditional hourly fee arrangement to a monthly flat-fee arrangement with a success fee add-on in the event of a successful outcome. As noted in the Original Fee Opinion, Kolon made no objection to that mode of compensation in its original objections to the fee petition. And, it is not appropriate for Kolon now to make that objection. It will be overruled on that basis alone.

Even if Kolon had not forfeited the right to make the objection, it would be ill taken. The fee arrangement makes

clear that the "success fee" is tied to the amount of damages collected by DuPont, and the record is clear that, to date, DuPont has collected only a small fraction of the judgment.

The law in this district is that contingent fee arrangements are not relevant in determining what is a reasonable fee. Job Am. Mgmt. Exp. Imp. - N. Carolina, Ltd. v. Kaltone Petroleum, No. 99cv24, 1999 WL 33228367, at *7 (E.D. Va. Dec. 10, 1999) (citing Mullins v. Richlands Nat'l Bank, 403 S.E.2d 334 (Va. 1991); Airlines Reporting Corp. v. Sarrion Travel, Inc., 824 F. Supp. 2d 533, 536-41 (E.D. Va. 2012). Moreover, the Supreme Court of the United States, in Blanchard v. Bergeron, 489 U.S. 87, 92-94 (1989), held that an "attorney's fee provided for in a contingent fee agreement is not a ceiling upon the fees recoverable," a decision that is contrary to Kolon's view that the contingent fee arrangement represents a cap on the amount of attorneys' fees awardable in situations such as this. See also Porzig v. Dresdner, Kleinwort, Benson, N.Am. LLC, 497 F.3d 133, 142 (2d Cir. 2007); Goodwin v. Metts, 973 F.2d 378, 386 (4th Cir. 1992)(quoting Blanchard v. Bergeron for the proposition that a contingent fee agreement may not operate as a limitation on a court's award of fees).

### OVERVIEW ANALYSIS

The time devoted to this complex and lengthy case was extensive, and the records offered to support the fee request were voluminous. Accordingly, the Court instructed DuPont to develop categories that accurately summarize the services provided and to set forth the amount of time that was devoted to a particular category. That information is as follows:

| | Category | Time (hours) |
|---|---|---|
| 1. | Initial Case Analysis | 665.70 |
| 2. | Paper Discovery | 1,479.50 |
| 3. | Document Production and Review | 8,289.95 |
| 4. | Depositions | 5,383.45 |
| 5. | Motions | 6,916.60 |
| 6. | Experts | 5,460.70 |
| 7. | Trial Preparation | 14,320.35 |
| 8. | Trial | 9,378.55 |
| 9. | Case Management and Strategy | 4,026.85 |
| 9. | Correspondence | 553.85 |

Having considerable familiarity with complex litigation generally and with this case, the Court concludes that the categories reasonably reflect the kinds of services that are usually provided in complex litigation and that were provided in this case. Then, mindful of the particulars of this case, the

Court assessed each category of service for reasonableness and necessity.

The assessment was made in perspective of the demonstrated truth that, although the elements of the claims and defenses in this case were not complex, the collection of evidence and the resolution of the many issues presented by that evidence, along with the aggressive litigation strategy pursued by Kolon, made this an exceedingly complex litigation.  The docket sheet, for example, contains over 2,100 entries during the time frame used for the calculation of attorneys' fees.

Also, the subject matter of the trade secrets at issue involved quite complex, technical, and operational information. There were extensive and detailed business, manufacturing, and operational records that needed to be reviewed.  Discovery took place over a period somewhat greater than a year, and often was pursued on several tracks simultaneously.  Because Kolon is located in Korea and a considerable amount of discovery was conducted in Korea, lawyers were required to travel to Korea, for example in conducting inspection of Kolon's facilities and, in some instances, the taking of depositions.  Many depositions had to be taken with the aid of translators.

Taking the work of both law firms together, the document production and examination phase of this litigation amounted to

27

8,289.95 hours.    For  a  case  of  this  size  and  complexity involving  a  foreign  language  and  a  foreign  defendant,  that effort was both necessary and reasonable.

The   motions   practice   in   this   case   was   virtually unprecedented.    DuPont's  law  firms  together  devoted  6,916.6 hours in motions practice.   The record reflects that, for the most part, it was Kolon that filed motions, or that made it necessary  to  file  motions,  by  virtue  of  its  aggressive litigation strategy.   The time spent in this aspect of the case was necessary and the amount of time was reasonable.

Trial  preparation  for  both  firms  amounted  to  14,320.35 hours and trial hours were 9,378.55.   The trial lasted seven weeks.   Work during the trial went on night and day with both sides  employing  night  shifts  who  were  tasked  with  revising witness    examinations,    revising    deposition    designations, preparing for coming trial sessions, and addressing (and often briefing) the many evidentiary and legal issues that arose, or were expected to arise, in the courtroom.   Lawyers worked seven days a week, often working ten or more hours.   The filing of motions and briefs continued throughout the trial.   Both sides had multi-lawyer trial teams in the courtroom and multi-lawyer backroom  teams.     Thus,  although  the  total  trial  hours  are substantial,  the  time  expended  is  not  surprising  and  was

reasonable considering what was at stake and the complex issues that were being litigated.

Nor is the pretrial preparation time surprising. For example, DuPont's lawyers had to review a proposed exhibit list filed by Kolon that contained some 6,000 exhibits, and they had to address Kolon's objections to virtually all the exhibits proposed by DuPont. The task of addressing lengthy deposition and other discovery designations was likewise onerous. The first pretrial conference, where most of these motions were addressed, lasted several days. Fully aware of the nature and extent of the pretrial preparation and the trial work, the Court finds that the time and effort devoted thereto was necessary and reasonable.

Having reviewed each category of service and the documentation respecting those services, the Court concludes that, excepting the reductions previously discussed, the amounts claimed in each category are reasonable and that the time and effort devoted to the various tasks is reasonable as claimed by DuPont.

## CONCLUSION

For the foregoing reasons, PLAINTIFF E.I. DU PONT DE NEMOURS AND COMPANY'S MOTION FOR ATTORNESY' FEES, SANCTIONS AND COSTS (Docket No. 1593) is granted in part and denied in part. DuPont will be awarded a fee of $18,334,175.41.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:   February 25, 2014